UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| RILEY JOHANNESSOHN; DANIEL C. BADILLA; JAMES KELLY; RONALD KRANS; KEVIN R. WONDERS; WILLIAM BATES; and JAMES PINION, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>POLARIS INDUSTRIES, INC.,<br><br>Defendant. | Case No. 16-CV-3348 (PJS/LIB)<br><br>ORDER |

Douglas J. McNamara, Theodore J. Leopold, and Andrew N. Friedman, COHEN MILSTEIN SELLERS & TOLL PLLC; Karen Hanson Riebel and Kate M. Baxter-Kauf, LOCKRIDGE GRINDAL NAUEN PLLP; Steven Calamusa and Robert E. Gordon, GORDON & DONER, for plaintiffs.

Robert L. Wise, Nathan J. Marcusen, Paul G. Cereghini, and Isaac W. Messmore, BOWMAN AND BROOKE LLP, for defendant.

This case arises out of an alleged design defect in four-wheel all-terrain vehicles ("ATVs") manufactured by defendant Polaris Industries, Inc. ("Polaris"). Plaintiffs bring this action on behalf of themselves and a putative class of purchasers, asserting various consumer-protection claims and a claim for breach of the implied warranty of merchantability.

This matter is before the Court on Polaris's motion to dismiss plaintiffs' consumer-protection claims and demand for punitive damages. For the reasons that follow, the motion is granted in part and denied in part. Specifically, the Court dismisses Count I to the extent that it asserts a claim under Minn. Stat. § 325F.67; Count II to the extent that it asserts a claim of fraud under Cal. Bus. & Prof. Code § 17200; Count III in its entirety; Count V in its entirety; and plaintiffs' demand for punitive damages. The motion is denied in all other respects.

I. BACKGROUND

Polaris is a manufacturer of boats, snowmobiles, and recreational ATVs. Am. Compl. ¶ 19. Polaris makes several different models of ATVs sold under the name "Sportsman." Am. Compl. ¶ 20. Polaris has 1,800 dealers in North America. Am. Compl. ¶ 19. In 2015, Polaris had overall sales of $4.7 billion and net profit of $455 million. Am. Compl. ¶ 19.

Plaintiffs are seven individuals living, respectively, in Minnesota, California, Florida, Illinois, Missouri, New York, and North Carolina. Am. Compl. ¶¶ 8-14. Plaintiffs allege that they purchased new Sportsman ATVs in 2015 and 2016, and that their ATVs were manufactured between 2009 and 2016. Am. Compl. ¶¶ 1, 8-14. Plaintiffs allege that their Sportsman ATVs are defectively designed because the exhaust pipe is routed next to the rider's leg and then directly under the rider's seat

toward the right rear tire.  Am. Compl. ¶ 2.  As a result, plaintiffs say, riders are exposed to temperatures of up to nearly 250 degrees Fahrenheit.  Am. Compl. ¶¶ 2, 24.  According to plaintiffs, the heat not only can cause injury to the rider, but also can cause components such as the seat, seat base, fender, foot well, and side covers to melt.  Am. Compl. ¶ 2, 26.

Plaintiffs seek to represent a nationwide class of consumers who purchased Sportsman ATVs between October 4, 2010 and October 4, 2016.  Am. Compl. ¶ 64.  Alternatively, if the Court finds that Minnesota law does not apply to all purchases of Sportsman ATVs in the United States, plaintiffs seek to represent seven subclasses of Sportsman purchasers, one for each of their states of residence.  Am. Compl. ¶ 65.  Plaintiffs assert claims under the consumer-protection laws of their states[1] as well as a

---

[1]Specifically, plaintiffs bring claims under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.; California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750; the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201–.213; the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 et seq.; the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 et seq.; New York General Business Law § 349 et seq.; and the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1(a).

In addition, plaintiffs state that they are bringing a claim under the Minnesota Consumer Fraud Act, which is codified at Minn. Stat. § 325F.69.  Confusingly, however, plaintiffs cite Minn. Stat. § 325F.67, which is a citation to the Minnesota False Statement in Advertising Act.  *See, e.g.*, *Miller v. Toxicology Lab., Inc.*, 688 F.3d 928, 932 (8th Cir. 2012) (referring to § 325F.69 as the "Consumer Fraud Act" and § 325F.67 as the "False Statement in Advertising Act").  As discussed below, assuming that plaintiffs mean to assert a claim under § 325F.67, they have failed to state a claim because they have not
(continued...)

claim for breach of the implied warranty of merchantability. Plaintiffs' consumer-protection claims are largely premised on their allegation that Polaris failed to disclose the defect.

## II. ANALYSIS

### A. Standard of Review

In reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.

Ordinarily, if the parties present, and the court considers, matters outside of the pleadings, a Rule 12(b)(6) motion must be treated as a motion for summary judgment. Fed. R. Civ. P. 12(d). But the court may consider materials that are necessarily embraced by the complaint as well as any exhibits attached to the complaint without converting the motion into one for summary judgment. *Mattes v. ABC Plastics, Inc.*, 323

---

[1](...continued)
identified any advertisements or similar matter containing an untrue, deceptive, or misleading statement.

F.3d 695, 697 n.4 (8th Cir. 2003). In this case, the parties have submitted materials outside of the pleadings, but the Court has not considered those materials, and thus the Court will not convert the motion into one for summary judgment.

## B. Sufficiency of Allegations

### 1. Knowledge

Polaris first argues that all of plaintiffs' consumer-protection claims fail because plaintiffs have not plausibly pleaded that Polaris knew of the alleged defect before plaintiffs purchased their ATVs. To support its argument, Polaris cites Fed. R. Civ. P. 9(b), which requires that fraud be pleaded with particularity.

Rule 9(b) does not apply to allegations of knowledge, however. Instead, Rule 9(b) explicitly exempts knowledge and other states of mind from its ambit: "Malice, intent, *knowledge*, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b) (emphasis added). As a result, allegations of knowledge are subject only to the pleading standards of Rule 8(a)(2) as interpreted in *Twombly*. *See OmegaGenesis Corp. v. Mayo Found. for Med. Educ. & Research*, 851 F.3d 800, 804 (8th Cir. 2017).

Plaintiffs allege that Polaris received a number of complaints concerning heat from the exhaust system. Am. Compl. ¶¶ 27-33. It is true, as Polaris argues, that several of these complaints do not predate plaintiffs' 2015 and 2016 purchases. But in

-5-

2014, Polaris acknowledged that it had "received reports of some Sportsman 570's experiencing localized deformation, and in some instances, melting of the right side lower seat base supports." Am. Compl. ¶ 33. That same year, Polaris developed a repair kit to address the "deformation" and "melting" problem. *Id.* The fact that Polaris acknowledged a problem and developed a repair kit by 2014—combined with plaintiffs' allegation that Polaris received some heat-related complaints before 2015—is sufficient to render plausible plaintiffs' allegation that Polaris was aware of a defect before plaintiffs purchased their ATVs in 2015 and 2016. *See Twombly*, 550 U.S. at 556 ("a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely" (citation and quotations omitted)).

2. Reliance and Causation

As noted, plaintiffs' consumer-protection claims are mostly premised on their allegation that Polaris failed to disclose the alleged exhaust defect.[2] Plaintiffs allege that, had they known of the defect, they would not have purchased their ATVs. Polaris argues that, with respect to plaintiffs' claims under the consumer-protection statutes of

---

[2]Under at least some consumer-protection statutes, omissions are not actionable unless the defendant had an affirmative duty to disclose. *See, e.g., Graphic Commc'ns Local 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682, 696 (Minn. 2014) (to state a claim under Minn. Stat. § 325F.69 for failure to disclose, a plaintiff must plead and prove special circumstances that trigger a duty to disclose). Polaris does not seek dismissal on the basis that it lacked such a duty, however.

Minnesota, California, Illinois, New York, and North Carolina, these allegations are insufficient to show either reliance or causation. Instead, Polaris argues, to show either reliance or causation, plaintiffs must plead some pre-sale contact or communication between Polaris and plaintiffs in order to show that, had Polaris disclosed the defect, plaintiffs would have seen or heard that disclosure.

The Court agrees with Polaris that plaintiffs have failed to adequately plead failure-to-disclose claims under California and Illinois law.[3] Under the consumer-protection laws of those states, a plaintiff must plead and prove that, had a disclosure been made, she would have seen or heard it. *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1226-27 (9th Cir. 2015) (to survive summary judgment, plaintiffs had to show that they would have been aware of a disclosure if one had been made); *Myers v. BMW of N. Am., LLC*, No. 16-CV-0412, 2016 WL 5897740, at *6 (N.D. Cal. Oct. 11, 2016) (granting motion to dismiss because plaintiff failed to plead any facts showing that, had a disclosure been made, she would have been aware of it); *De Bouse v. Bayer*, 922 N.E.2d 309, 314-16 (Ill.

---

[3]California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, prohibits business practices that are "unlawful, unfair or fraudulent . . . ." Each of these is a separate and distinct theory of liability. *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009). Reliance is not necessarily an element of "unlawful" or "unfair" claims, *In re Tobacco II Cases*, 207 P.3d 20, 39 n.17 (Cal. 2009), and Polaris did not respond to plaintiffs' argument that their "unlawful" and "unfair" claims are sufficiently pleaded. The Court therefore grants Polaris's motion to dismiss only as to plaintiffs' "fraudulent" claim under the Unfair Competition Law and denies it as to plaintiffs' "unlawful" and "unfair" claims under that statute.

2009) (to maintain a failure-to-disclose claim, a plaintiff must have seen or heard a statement from which the information was omitted).[4] The Court therefore grants Polaris's motion to dismiss these claims (with the exception of plaintiffs' "unlawful" and "unfair" claims under California's Unfair Competition Law).

Having reviewed the cases on which Polaris relies, however, the Court sees little indication that courts in Minnesota, New York, or North Carolina impose a similar pleading requirement. True, in each of those states, a plaintiff must plead reliance, causation, or both. *Graphic Commc'ns Local 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682, 693 (Minn. 2014) ("To recover damages under the Private AG Statute for a violation of the [Consumer Fraud Act], . . . the plaintiff must plead and prove a causal relationship between the alleged injury and the wrongful conduct that

---

[4]*De Bouse* went on to address the question whether the act of offering a product for sale is itself a "statement" that the product is reasonably safe for its intended use. 922 N.E.2d at 317-18. As the court noted, the answer to that question "may depend on the nature of the product being sold." *Id.* at 317. The court accordingly confined itself to a discussion of the product at issue—prescription drugs—and held that offering prescription drugs for sale did not constitute an implicit statement regarding safety. *Id.* at 318.

Plaintiffs do not cite *De Bouse* or argue that offering an ATV for sale is an implicit statement that the vehicle is reasonably safe. Accordingly, the Court does not consider whether this implicit-statement exception applies. *Cf. Schiesser v. Ford Motor Co.*, No. 16-C-730, 2017 WL 1283499, at *6 (N.D. Ill. Apr. 6, 2017) (dismissing Illinois consumer-fraud claim arising out of undisclosed vehicle defect because plaintiff failed to plead a pre-sale communication); *Kesse v. Ford Motor Co.*, No. 14-C-6265, 2015 WL 920960, at *4 (N.D. Ill. Mar. 2, 2015) (same).

violates the statute."); *Bumpers v. Cmty. Bank of N. Va.*, 747 S.E.2d 220, 226-27 (N.C. 2013) (claim for unfair or deceptive trade practice requires showing of actual, subjective reliance to establish proximate cause); *Gale v. Int'l Bus. Mach. Corp.*, 781 N.Y.S.2d 45, 46 (N.Y. App. Div. 2004) (affirming dismissal of claim because plaintiff did not plead that he ever saw any of the allegedly misleading statements).

But the case law does not establish that, when a plaintiff alleges a failure to disclose, the plaintiff must also identify a particular pre-sale contact in which a disclosure could have been (but was not) made. In fact, case law in New York seems to be to the contrary. *See Stutman v. Chem. Bank*, 731 N.E.2d 608, 612-13 (N.Y. 2000) (plaintiffs did not have to allege that, had the disputed fee been disclosed, they would not have entered into the transaction); *Tomassini v. FCA U.S. LLC*, No. 14-1226, 2015 WL 3868343, at *8-9 (N.D.N.Y. June 23, 2015) (plaintiff sufficiently alleged causal connection between failure to disclose and damages by identifying repair costs that plaintiff had incurred that should have been borne by defendant).[5]

As for Minnesota and North Carolina, the cases on which Polaris relies do not establish that a plaintiff must plead pre-sale contact in a failure-to-disclose case. In

---

[5]Polaris cites *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467 (S.D.N.Y. 2014) for the proposition that New York requires a plaintiff in a failure-to-disclose case to allege that he has seen or heard a misleading statement. *Goldemberg*, however, involved allegations of affirmative misrepresentations. *See id.* at 478-80 (holding that the phrase "Active Naturals" in defendant's labels and advertising could be misleading to a reasonable consumer).

*Graphic Communications*, the Minnesota Supreme Court noted that causation is an element, but did not address how causation must be pleaded. Instead, the court held that the plaintiffs' claim failed because the defendant did not have a duty to disclose. 850 N.W.2d at 696-97. As noted, Polaris does not argue that it lacks a duty to disclose, and *Graphic Communications* is therefore not relevant.

In *Arnesen v. Rivers Edge Golf Club & Plantation, Inc.*, 781 S.E.2d 1 (N.C. 2015), investors in real estate sued their lender and its appraiser for, among other things, failing to disclose allegedly inflated appraisals that the lender had obtained for internal use. *Id.* at 3-5. The North Carolina Supreme Court affirmed the dismissal of the plaintiffs' claims, holding, among other things, that the plaintiffs had not relied on the faulty appraisals. *Id.* at 7, 9-11. Although framed as a failure to disclose, *Arnesen* is unlike cases such as this in which a manufacturer allegedly fails to disclose a product defect. The lender in *Arnesen* did not fail to disclose a defect in the property; instead, it failed to disclose a misrepresentation about the value of the property. The court held that, because the plaintiffs were not exposed to that misrepresentation, they could not have relied on or been harmed by it. Thus, *Arnesen* more closely resembles cases involving affirmative misrepresentations in which the plaintiffs cannot show reliance or causation because they were never exposed to the misrepresentation. For that reason,

the Court does not read *Arnesen* to require a plaintiff in a failure-to-disclose case to plead pre-sale contact.

To the extent that Polaris moves to dismiss plaintiffs' Minnesota, New York, and North Carolina consumer-protection claims for failure to plead causation or reliance, therefore, Polaris's motion is denied. That said, as noted above, plaintiffs seem to have pleaded a claim not only under the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69, but also under the Minnesota False Statement in Advertisement Act, Minn. Stat. § 325F.67. The plain language of the latter requires proof of an untrue, deceptive, or misleading statement in an advertisement. Minn. Stat. § 325F.67; *LensCrafters, Inc. v. Vision World, Inc.*, 943 F. Supp. 1481, 1491 (D. Minn. 1996) (elements of claim under § 325F.67 include publication of a false or misleading advertisement). In their briefing, plaintiffs make clear that "this is not a misrepresentation case premised upon false advertisements," but that instead their case is premised on Polaris's failure to disclose the alleged defect. Plfs.' Opp. at 10-12 [ECF No. 37]. Because plaintiffs have not identified any false or misleading advertisement, they cannot state a claim under § 325F.67. Accordingly, to the extent that plaintiffs intended to plead such a claim, that claim is dismissed.

*C. Standing to Represent Purchasers of Other Models and Model Years*

Polaris next argues that plaintiffs do not have Article III standing to represent purchasers of Sportsman ATVs whose models or model years differ from the models or model years of the Sportsman ATVs purchased by plaintiffs. At oral argument, Polaris admitted that immaterial differences among models or model years would not preclude plaintiffs from representing those purchasers. But Polaris argues that there are material differences between the models purchased by plaintiffs and the models purchased by other putative class members—and, according to Polaris, those material differences deprive plaintiffs of standing to represent all purchasers of Sportsman ATVs. Polaris contends, for example, that the models materially differ in weight, engine size, fuel-system type, and type of engine-cooling system.

The Court tends to agree with those courts that have found that, in the context of a putative class action, the question whether a named plaintiff may represent class members who purchased products that differed in some respect from the product purchased by the named plaintiff is not an issue of standing, but rather an issue to be resolved at the class-certification stage. *See, e.g.*, *Forcallati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1161-62 (C.D. Cal. 2012); *cf. Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) ("Once [the plaintiff's own] standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members,

depends solely on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure."). After all, the class-action device is an exception to the normal rules of standing because it permits a named plaintiff to pursue recovery on behalf of others. Once the named plaintiff has established that he has standing to pursue his own claim—something that the named plaintiffs in this case have done—the fact-intensive question into whether the named plaintiff should be permitted to pursue claims on behalf of others is governed by Fed. R. Civ. P. 23.

Even if this is an issue of standing, however, plaintiffs have adequately pleaded standing by alleging that the entire Sportsman line shares the same design defect—the routing of high-temperature exhaust next to the rider's leg and under the rider's seat. Am. Compl. ¶¶ 2, 20, 23; *see Glenn v. Hyundai Motor Am.*, No. 15-2052, 2016 WL 3621280, at *15-16 (C.D. Cal. June 24, 2016) (holding that plaintiffs can establish standing to represent purchasers of other products if they allege sufficient similarities between the product lines). The Court therefore denies Polaris's motion to dismiss insofar as it is based on plaintiffs' alleged lack of standing to represent class members who purchased other Sportsman models or model years.

### D. Standing to Seek Injunctive Relief

Polaris next argues that plaintiffs lack standing to seek injunctive relief because, as plaintiffs themselves acknowledge in their amended complaint, Polaris has changed

the design of its exhaust system beginning with the 2017 model year. Am. Compl. ¶ 35. As a result, Polaris argues, plaintiffs cannot plausibly allege a likelihood of future irreparable harm. *See Meuir v. Greene Cty. Jail Emps.*, 487 F.3d 1115, 1119-20 (8th Cir. 2007) (plaintiff lacked standing to seek injunction concerning medical care at the jail where he was no longer in custody).

The Court disagrees. As noted, plaintiffs allege that Polaris has failed to notify the public about a design defect that renders certain Sportsman ATVs dangerous. It is plausible to infer that many of these ATVs will be used by unsuspecting members of the public, including unsuspecting members of the putative class. An injunction could prevent harm to those who remain unaware of the design defect. Whether plaintiffs are entitled to such injunctive relief goes to the merits, not to standing. Moreover, given that plaintiffs will be pursuing claims for monetary relief, the question whether injunctive relief is also available can be addressed at a later time. Dismissal of plaintiffs' request for injunctive relief would not narrow the scope of discovery in any material way. Thus, to the extent that Polaris seeks dismissal of plaintiffs' claims for injunctive relief, Polaris's motion is denied.

*E. Public Benefit*

Polaris next argues that plaintiffs have failed to show that their consumer-fraud claims under Minnesota law would benefit the public. Under Minnesota's Private

Attorney General statute, Minn. Stat. § 8.31, subd. 3a, private parties may bring claims under certain consumer-protection statutes (including § 325F.69), but only if their claim would benefit the public. *Curtis v. Altria Grp., Inc.*, 813 N.W.2d 891, 899-900 (Minn. 2012). Polaris argues that because plaintiffs are not seeking injunctive relief in connection with their claim under § 325F.69, that claim necessarily does not benefit the public.

In response, plaintiffs point out that they are, in fact, seeking "all other relief as appropriate"—including injunctive relief—under § 325F.69. Am. Compl. ¶ 89. Setting that aside, there is no requirement that plaintiffs seek injunctive relief in order to satisfy the public-benefit requirement. *See Collins v. Minn. Sch. of Bus.*, 655 N.W.2d 320, 329-30 (Minn. 2003) (public-benefit requirement satisfied even though defendant had ceased making the alleged misrepresentations and plaintiffs obtained only monetary relief);[6] *In re Levaquin Prods. Liab. Litig.*, 752 F. Supp. 2d 1071, 1077 (D. Minn. 2010) ("the fact that a plaintiff requests no injunctive relief does not preclude either party from satisfying the public benefit requirement" (citation and quotations omitted)). Instead, a plaintiff can satisfy the public-benefit requirement by establishing that the defendant made

---

[6]At oral argument, Polaris contended that *Collins* is distinguishable because the defendant ceased making the alleged misrepresentations as a result of the lawsuit. In finding that the plaintiffs satisfied the public-benefit requirement, however, the Minnesota Supreme Court did not rely on any connection between the lawsuit and the defendant's cessation of its allegedly fraudulent conduct. *See Collins*, 655 N.W.2d at 329-30.

misrepresentations to the public at large. *See Collins*, 655 N.W.2d at 330; *see also Khoday v. Symantec Corp.*, 858 F. Supp. 2d 1004, 1017 (D. Minn. 2012) ("plaintiffs can establish a public benefit by challenging misrepresentations made to a significant segment of the public").

Plaintiffs do not allege affirmative misrepresentations to the public, but plaintiffs are nevertheless pursuing relief that would benefit the public. Plaintiffs allege that Polaris—which has hundreds of dealers across the country and sells billions of dollars' worth of products each year—failed to disclose a defect that renders its Sportsman ATVs dangerous to those who use them. By seeking to rectify this omission, plaintiffs are seeking relief that will benefit the public. The Court therefore denies Polaris's motion to the extent that it seeks dismissal of plaintiffs' § 325F.69 claim for failing to allege a public benefit.

### F. Punitive Damages

Finally, Polaris argues that plaintiffs cannot seek punitive damages without following the procedures set forth in Minn. Stat. § 549.191. Under those procedures, a plaintiff cannot include a demand for punitive damages in a complaint without first seeking and receiving the permission of the court. Plaintiffs concede that they must comply with § 549.191 and that they should not have demanded punitive damages in their complaint; plaintiffs state that they will later seek the Court's permission to pursue

punitive damages. Accordingly, the Court grants Polaris's motion to dismiss plaintiffs' demand for punitive damages.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant's motion to dismiss [ECF No. 30] is GRANTED IN PART and DENIED IN PART.

2. The motion is GRANTED with respect to the following claims, and they are DISMISSED WITHOUT PREJUDICE:

   a. Count I to the extent that it pleads a claim under Minn. Stat. § 325F.67. Plaintiffs' claim under Minn. Stat. § 325F.69 remains pending.

   b. Count II to the extent that it pleads a "fraudulent" business practice. Plaintiffs' claims for "unlawful" and "unfair" business practices remain pending.

   c. Counts III and V.

   d. Plaintiffs' demand for punitive damages.

3. The motion is DENIED in all other respects.

Dated: June 27, 2017                      s/Patrick J. Schiltz
                                                     Patrick J. Schiltz
                                                     United States District Judge