# EXHIBIT 22

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| RILEY JOHANNESSOHN, DANIEL C. BADILLA, JAMES KELLEY, RONALD KRANS, KEVIN R. WONDERS, WILLIAM BATES, JAMES PINION, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>POLARIS INDUSTRIES, INC.,<br><br>Defendant. | **CLASS ACTION**<br><br>CASE NO. 16-cv-03348<br><br>**PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS** |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs request that within thirty (30) days of the Rule 26(f) conference that Defendant POLARIS INDUSTRIES, INC., provide responses to the following requests at the offices of Cohen Milstein Sellers & Toll, PLLC, 1100 New York Avenue, NW, Suite 500, Washington, DC 20005.

## DEFINITIONS

1. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these interrogatories all responses that might otherwise be construed to be outside of its scope.

2. "Any" shall include and encompass the words "each" and "all."

3. "Communication" shall mean any conversation, discussion or meeting, or any written, verbal, electronic or other presentation, disclosure, receipt, transfer, transmittal, or exchange of facts, ideas, information, inquiries, or opinions,

1

however affected.

4. "Concerning" shall mean relating to, referring to, describing, evidencing, or constituting.

5. "Document" shall be construed in its broadest sense and shall include, but not be limited to, any and all tangible things, whether handwritten, printed, typed, or otherwise visually reproduced, electronically recorded or orally recorded, including all originals, drafts, revisions, copies, non-identical copies, and markups of drafts. The term "document" specifically includes, but is not limited to: agreements, communications, including intra-company communications, letters, facsimile transmissions, telegrams, telephone bills and records, cables, records, books, summaries or records of personal conversations or interviews, presentations with attachments; meeting agenda's, meeting attendance sheets, forecasts, statistical statements, accountants' work papers, brochures, pamphlets, circulars, press releases, contracts, telephone messages, slips and logs, diary entries, electronic mail, calendars, reports, evaluations, assessments, analyses, test results, correspondence, memoranda, notes, videotapes, video cartridges, audio tapes, electronic recordings of any kind, drawings, graphics, graphs, maps, diagrams, charts, photographs, computer diskettes and disks, tables, indices, recordings, tapes, microfilms, minutes or records of meetings, reports of investigations, opinions or reports of consultants, and any other data compilation from which information can be obtained and translated through detection devices into reasonably usable form.

6. "Concerning" shall mean relating to, referring to, describing,

evidencing, or constituting.

7. Electronic documents shall be produces pursuant to an ESI protocol agreed to by the parties.

8. "Exhaust Heat Defect" or "Exhaust heat issues" shall mean issues related to the exhaust pipes on the Sportsman ATV as discussed in the operative Complaint. This includes but is not limited to excessive heat; exhaust pipes glowing or becoming hot; fenders, seats, seat brackets or other components melting, deforming, or requiring replacement; and complaints from riders of excess heat or burns.

9. "Footwells" is intended to mean the place where a rider places his or her foot when riding the Sportsman ATV.

10. "Heat Shield Kit" refers to the parts provided by Polaris for increasing shielding of the Sportsman ATV exhaust system, including but not limited to part # 2876773.

11. "Left Side Body Panels" is intended to mean all body panels affixed to the Sportsman ATV which are attached left of the centerline of the ATV as the operator sits on same.

12. "Parts Guide" refers to any guide created by Polaris that lists replacement parts for the Sportsman ATVs.

13. "Polaris" shall include Polaris Industries, Inc., and all of its subsidiaries, divisions and affiliates, and any of their directors, officers, employees, consultants, agents, representatives and attorneys therefore, and/or any other persons

or entities purporting to act on behalf of Polaris and/or under any or all of Polaris' control.

14. "Right Side Body Panels" is intended to mean all body panels affixed to the Sportsman ATV which are attached right of the centerline of the ATV as the operator sits on same.

15. "Seat Retention Kit" refers to the parts provided by Polaris to repair or replace seats on the Sportsman ATV seat, including, but not limited to part #2204682.

16. "Sportsman ATV" shall mean any ATV sold by Polaris under the brand name Sportsman.

17. "Trouble Shooting Guide" shall refer to any manual describing or identifying problems with their Sportsman ATV.

18. "Warranty Data" refers to any claims made under the Sportsman ATV express warranty, whether or not Polaris accepted the cost of repair.

19. "You" or "Your" shall mean the party or parties to whom this Request for Production is addressed, including its divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, and all other persons acting or purporting to act on its behalf.

## INSTRUCTIONS

1. Where a claim of privilege is asserted in objecting to any interrogatory or document demand, or sub-part thereof, and an answer is not provided on the basis of such assertion:

    a. Identify the nature of the privilege (including work product) which is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked; and

    b. Provide the following information in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged information: (1) the type of document; (2) general subject matter of the document; (3) the date of the document; (4) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author and addressee to each other.

  2. Unless otherwise specified, the time period applicable to each interrogatory below is from January 1, 2008, to the present.

## **DOCUMENT REQUESTS**

**A. Sales and Marketing**

 1. Produce documents sufficient to show total sales of the Polaris Sportsman ATVs from January 2010 to December 31, 2016.

 2. Produce documents sufficient to demonstrate the sales of the following parts:

  a. Seat Retention Kit

  b. Heat Shield Kit

  c. Right Side Body panels

    d. Left Side Body Panels

    e. Footwells

  3. Produce documents sufficient to demonstrate the marketing and/or promotional documents for Sportsman ATVs, including but not limited to (a) published advertising, (b) sales presentations, and (c) training and guidelines provided to dealers or sales representative.

  4. Produce documents sufficient to show the operative manuals used by Polaris for its Sportsman ATVS, including the Owners and Maintenance Manuals, the Parts Manuals, and the Disassembly and Assembly manuals.

  **B.** **Design of the Sportsman ATVs**

  5. Produce copies of all patents or patent applications, prepared, owned, held or licensed by Polaris for components of the Sportsman ATV exhaust system.

  6. Produce all documents, summaries, and analysis related to any Failure Mode and Effects Analysis (FMEA), Design Failure Mode Analysis (DFMA) or other similar analysis performed on the design and assembly of the exhaust system of the Sportsman ATVs.

  7. Produce all documents, including all developmental testing data, testing indexes, reviews, analyses, presentations, and memoranda regarding all pre-production testing and validation of Sportsman ATVs' exhaust system.

  8. Produce documents sufficient to show the engineering drawings of all components of the Sportsman ATVs that involve the seat, side panels, exhaust system, and heat shields. This should include layout drawings that show the

relationship of the exhaust system's assembly to the body of the engine, seat, heat shields, and surrounding areas.

9. Produce all documents related to alternative designs for the Sportsman ATV exhaust system that were considered but not used for the Sportsman ATVs.

### C. Customer Complaints

10. With regards to customer complaints for exhaust heat related issues, produce all call notes, emails, or communications from customers or dealers to you regarding exhaust heat related complaints with the Sportsman.

11. Produce "AskPolaris" documents or sufficient to demonstrate 1) the total number of customer communications regarding exhaust heat issues; 2) all notes regarding those communications; 3) any recordings of those communications; 4) any communication between Polaris and its dealers regarding exhaust heat issues.

12. Produce a copy of any scripts, guides, FAQs, instructions, or other materials provided to customer support personnel, whether at Polaris or Calabrio, to address customer or dealer communications about exhaust heat related issues.

   a. Produce all communications with any consumer websites or forums regarding Sportsman ATV exhaust heat issues, including but not limited to, www.BBB.org; www.saferproducts.gov; www.consumersaffairs.com; http://atvconnection.com/forums/polaris/; http://forum.highlifter.com/; www.polarisatvforums.com/forums/polaris-sportsman.com; and www.atvconnection.com/forums/polaris/.

13.     Produce all communications with third-party organizations regarding Sportsman ATV exhaust heat issues, including but not limited to the Consumer Product Safety Commission, the Better Business Bureau, and any state or local agencies.

14.     Produce any documents previously produced in any lawsuits related to exhaust heat issues and Sportsman ATVs.

15.     Produce all documents referring or relating to any communication with the Named Plaintiffs, including all documents referring or relating to any purchase by the named Plaintiffs.

**D.     Warranty Claims**

16.     Produce documents sufficient to disclose all warranty claims related to exhaust heat issues on the Sportsman ATVs. This production should also include all data transmitted to Polaris as part of the warranty claim, and any analysis or investigation of individual warranty claims.

17.     Produce any warranty repair facility directives, policies, procedures, technical service bulletins, troubleshooting guides, warranty description codes, or instructions for work to be performed on the exhaust system of Sportsman ATVs.

18.     Produce documents sufficient to show the different warranties sold with Polaris Sportsman ATVs during the relevant time period.

19.     Produce all agreements between You and any third-party regarding warranty reimbursement or indemnification for the Sportsman ATVs during the relevant time period.

### E.    Recall/Goodwill Programs

20.    Produce all documents regarding the March 2017 recall of your MY2015 and MY2016 Sportsman 850 and 1000 Sportsman ATVs. This request includes but is not limited to engineering analyses, customer complaints, discussions with third-parties and outside agencies, the cost of the recall, the parts including in the recall, and the rationale for selecting those models as opposed to other Sportsman ATVs.

21.    Produce all documents related to any other recalls, field campaigns, goodwill programs, or owner notification programs, related to problems and concerns with the Exhaust System of the Polaris Sportsman ATV from January 1, 2008 to the present. This should include documents regarding the goodwill program cited by Polaris in response to CPSC Report # 20120831-3EB9B-2147464186.

### F.    Corporate Structure

22.    Produce a copy of Your organizational charts for any department or division of Polaris involved in the design, testing, performance, marketing, sale, or warranty of the Sportsman ATVs.

23.    Produce copies of Your document retention policies in effect from 2010 to the present.

DATED this 18th day of July, 2017.

Respectfully submitted,

/s/ Douglas McNamara

Karen Hanson Riebel (MN Bar No. 219770)

9

Kate M. Baxter-Kauf (MN Bar No. 392037)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
Telephone: 612-596-4097
Facsimile: 612-339-0981


Theodore J. Leopold (admitted pro hac vice)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL  33410
Telephone:  (561) 515-1400
Facsimile:   (561) 515-1401

Andrew N. Friedman (admitted pro hac vice)
Douglas J. McNamara (admitted pro hac vice)
Eric A. Kafka (admitted pro hac vice)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW
East Tower, 5th Floor
Washington, DC  20005
Telephone:  (202) 408-4600
Facsimile:   (202) 408-4699


Steve Calamusa (admitted pro hac vice)
Robert Gordon  (admitted pro hac vice)
**GORDON & DONER**
4114 Northlake Blvd.,
Palm Beach Gardens, FL  33410
Telephone: (561) 799-5070
Facsimile: (561) 799-4050

**Attorneys for Plaintiffs**