# EXHIBIT 24

Theodore Leopold
(561) 515-1400
tleopold@cohenmilstein.com

October 19, 2017

**VIA EMAIL**

Paul G. Cereghini
Bowman and Brooke, LLP
2901 North Central Avenue
Suite 1600
Phoenix, AZ 85012

  Re: *Johannessohn et al, v. Polaris Industries Inc.*

Dear Paul:

  We are in receipt of your discovery responses. This is an attempt to meet and confer. We wish to have a telephonic meet and confer on Monday, October 23rd. Please advise as to your availability or if you are not available someone in your group who could handle the meet and confer.

**I. PRELIMINARY STATEMENT AND OBJECTIONS IN YOUR RESPONSES**

  In the preliminary statement and objections, Polaris complains that certain terms are vague and ambiguous including "footwells", "heat shield kits", "left side body panels," "parts guides", "right side body panels", "seat retention kits", "trouble shooting guides" and "warranty data". Some of these terms are right off of Polaris documents, such as "seat retention kits" and "heat shield kits." Plaintiffs' definition even provided parts numbers on some of these items. *See, e.g.,* Pls.' 1st Rogs at 3 ("11. 'Heat Shield Kit' refers to the parts provided by Polaris for increasing shielding of the Sportsman ATV exhaust system, including but not limited to part # 2876773."). Polaris has produced documents that discuss a "Right Hand Side Panel Close Off Kit." (POL_SPT_RJ_00000256). Other terms are common-sense description of vehicle parts. IN addition, with respect to "warranty data", Plaintiffs defined this as "refers to any claims made under the Sportsman ATV express warranty, whether or not Polaris accepted the cost of repair." Please state exactly what ambiguity you find with any definition or disclose to us the terms that Polaris uses to describe the parts at issue.

CASE 0:16-cv-03348-PJS-LIB   Document 104   Filed 12/04/17   Page 3 of 10

*Johannessohn v. Polaris Indus. Inc.,*
Letter re Defendant's discovery responses
Page **2** of **9**

## II.     INTERROGATORIES

### Interrogatory No. 1

Plaintiffs asked Polaris to "state how many Sportsman ATVs you have manufactured, sold, the number of customers, and the total sales per year per state" from January 1, 2010 to December 31, 2016. Polaris responded by reference to POL_SPT_RJ00000124.001. That document does not indicate the number of sales by state. Unless Polaris wishes to concede application of Minnesota law applies to all purchasers of the Sportsman ATVs, Plaintiffs require state-specific data to determine the number of purchasers in those states. Polaris cites to that information being within the network of dealers it works with, but does not state whether obtaining that information presents any burden. Please produce state-specific information.

### Interrogatory No. 2

Plaintiffs asked Polaris to "identify by part number and date of initial production all service kits you created that address the Exhaust Heat Defect, including but not limited to Seat Retention Kits, Heat Shield Kits, Right Side Body Panels, and Footwells. State how many of these kits and replacement parts you have sold per year or provided per year. State the price for the kits and parts, as well as the part numbers." Polaris referred Plaintiffs to the previously produced documents that provide some information about the kits, but the documents fail to provide the prices charged, or the volume sold per year. The prices charged may indicate the cost of repair, and is relevant to damages. The volume of purchasing these kits is relevant to the scope of the alleged Exhaust Heat Defect, and when Polaris should have been aware of a problem. Polaris also wrongly complains about the vagueness of the different parts (see "preliminary statement and objections" above).

Polaris has not identified a burden justifying the failure to provide all of the information requested in the interrogatory. If such a "burden" in fact exists, please explain. Otherwise, please supplement your response with an appropriate affidavit within one week.

### Interrogatory No. 3

Plaintiffs asked for warranty claims regarding exhaust heat issues, including the total number of warranty inquiries for the Sportsman ATVs, the total number of warranty claims honored for the Sportsman ATVs; and the total cost to You regarding those warranty repairs." Polaris referred Plaintiffs to a table that does not identify how many warranty inquiries were made and honored or denied. Plaintiffs request that data within one week.

CASE 0:16-cv-03348-PJS-LIB   Document 104   Filed 12/04/17   Page 4 of 10

*Johannessohn v. Polaris Indus. Inc.,*
Letter re Defendant's discovery responses
Page **3** of **9**

### Interrogatory No. 4

Plaintiffs asked for "the name of the persons responsible" for various aspects of the Sportsman ATVs, including design, marketing, warranty fulfillment, customer communications, designing and validating certain kits, and for posting on certain websites. Polaris cited back to documents, but failed to identify a single person. This compounds the defective initial disclosures. In response to Rule 26(a)(1)(i)'s requirement that Polaris supply, "The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses," Polaris completely evaded its obligations:

> 15. Polaris Industries Inc.
> Given the early stage of these proceedings, Polaris has not yet identified which employee or employees are likely to have information that Polaris may use to support its defenses. Polaris anticipates that it will rely on one or more company witnesses to discuss issues such as design, testing, manufacturing, market actions, and the plaintiffs' ATVs, including any Polaris records of customer interactions regarding those ATVs, whether through dealers or otherwise.

Both the initial disclosure and interrogatory response regarding the identity of witnesses are insufficient. Plaintiffs need names for purposes of identifying custodians to for custodial searches of ESI, and to identify potential personnel for depositions. Plaintiffs cannot guess responsibilities or names. Polaris has had sufficient time to identify these personnel. Please identify personnel, their job titles, and their responsibilities for these tasks within one week.

### Interrogatory No. 5

Plaintiffs asked for alternative designs considered for Sportsman exhaust systems. Polaris referred back to the now 254 documents produced. While a few documents discuss kits created to address thermal issues in some models, the documents do not describe alternative designs considered for the Sportsman ATVs. Please supplement this response to fully answer the interrogatory within one week.

### Interrogatory No. 6

Plaintiffs requested that Polaris identify all modifications to the Sportsman ATV exhaust system, and state when those changes occurred. Polaris referred Plaintiffs to previously produced documents, but does not provide a timeline for any modifications to the exhaust systems. These systems are mass produced. There will be timelines with

CASE 0:16-cv-03348-PJS-LIB Document 104 Filed 12/04/17 Page 5 of 10

*Johannessohn v. Polaris Indus. Inc.*,
Letter re Defendant's discovery responses
Page **4** of **9**

changes. Indeed, the drawings of parts that Polaris has provided have dates on them. Please respond to the request and state for each model, what was changed and when to the emission systems within one week.

### Interrogatory No. 7

Plaintiffs requested that Polaris, "describe any recalls, goodwill programs, or other special refund or rebate programs you had any Polaris Sportsman ATVs related to melting components or exhaust heat issues." Plaintiffs specified the information that should be included in the response. Rather than give a narrative, Polaris referred Plaintiffs back to the previously produced documents. These documents did not even address "goodwill" programs mentioned on the CPSC website dating back to 2008. *See, e.g.,* SAC at ¶35; http://www.saferproducts.gov/ViewIncident/1269864. Please supplement this response within one week.

### Interrogatory No. 9

Plaintiffs asked that Polaris, "List any previous lawsuits related to exhaust heat related claims." Polaris has refused, inexplicably denying that any such suits can be relevant. Whether and when Polaris was sued for burns, fires, melted components, or other thermal issues discussed in the SAC can bear obvious relevance on issues such as the existence of an exhaust defect, its scope, and Polaris's presale notice of it. Polaris seems to answer that if any such cases exist (which it does not admit), it would overly burdensome to sort through this imaginary list to identify those with exhaust heat issues. Please answer the interrogatory within one week.

### Interrogatory No. 10

Plaintiffs asked for "warranty, repair, return and refund rate for each model, and how each such rate was calculated. This should include, among other things, the right side body panel replacements; seat replacement, and foot well replacement." Polaris interpreted this as "provid[ing] completion rates" for "market actions" on certain 580 and 850/1000 models. That was not the request. Plaintiffs wish to assess whether there was a thermal defect with the Polaris Sportsman ATVs: Polaris has opted to pick solely those it is willing to admit might have such a defect, and provide data on those. Plaintiffs require the warranty data, return and refund data (which surely Polaris must obtain from dealers) that could yield information of whether certain components are melting due to thermal problems with the ATV. Plaintiffs specified some of those components most likely to deform from the asserted thermal defect. Please respond to the interrogatory as written within one week.

CASE 0:16-cv-03348-PJS-LIB Document 104 Filed 12/04/17 Page 6 of 10

*Johannessohn v. Polaris Indus. Inc.,*
Letter re Defendant's discovery responses
Page **5** of **9**

## III. REQUESTS FOR PRODUCTION

### Request No. 2

Plaintiffs requested that Polaris produce documents "sufficient to demonstrate the sales of the following parts: Seat Retention Kit, Heat Shield Kit, Right Side Body panels, Left Side Body Panels, Footwells." These are parts that Plaintiffs have a good-faith basis to believe would melt or deform due to thermal problems with the Sportsman ATVs. Polaris only agreed to produce "repair rates for the market actions identified in Polaris' Technical Service Bulletins" cited in Polaris response to Interrog. No. 2. This is insufficient. Plaintiffs wish to reach their own conclusions, and not solely rely on what Polaris concedes was/is a thermal problem. Data on the sales of the frequency of replacing these parts is likely to yield relevant evidence of the existence and scope of an exhaust system defect. While a replacement of these parts may not alone show knowledge of, the existence of, or the scope of a design defect, high sales of replacement parts can be useful: for example, if the right side body panels are replaced far more often than the left side, that may be indicative that the exhaust system (running along the right side) is to blame. Plaintiffs note that these parts have part numbers and the data is kept electronically. Therefore, there is no meritorious argument about the burden of production. Please respond to the request within one week.

### Request No. 4

Plaintiffs requested the operative manuals used by Polaris for its Sportsman ATVs, "including the Owners and Maintenance Manuals, the Parts Manuals, and the Disassembly and Assembly manuals." Polaris agreed to produce these documents, cited to Plaintiffs where these specific manuals can be found on Polaris' website, but then oddly asserted that these terms were ambiguous. This response is confusing. Please state whether there are operative manuals regarding the ATVs that were not covered by the request within one week.

### Request No. 6.

Plaintiffs asked that Polaris, "Produce all documents, summaries, and analysis related to any Failure Mode and Effects Analysis (FMEA), Design Failure Mode Analysis (DFMA) or other similar analysis performed on the design and assembly of the exhaust system of the Sportsman ATVs." Polaris cited to recent documents concerning the 2015-2016 Sportsman 850/1000 model, and promised to produce engineering analysis "presentations related to the 2014-2017 Sportsman 570 ATV heat-management issues." First, the fact that Polaris itself seems to have an understanding of what "heat-management issues" covers undercuts the objections that "exhaust heat issues" and "exhaust heat defect" are too vague. RFP Resp. at 2, ¶2. Second, this response is too narrow, both in terms of the models covered and the timing. Testing done before introduction to the market on the thermal profile of these ATVs presumably occurred.

CASE 0:16-cv-03348-PJS-LIB   Document 104   Filed 12/04/17   Page 7 of 10

*Johannessohn v. Polaris Indus. Inc.,*
Letter re Defendant's discovery responses
Page **6** of **9**

Further, the SAC cites to complaints about exhaust causing melted componentry and burns well before 2017. Plaintiffs seek all documents pertinent to these issues, and if none exist, confirmation of that within one week.

### Request No. 7

Plaintiffs requested that Polaris, "Produce all documents, including all developmental testing data, testing indexes, reviews, analyses, presentations, and memoranda regarding all pre- production testing and validation of Sportsman ATVs' exhaust system." Polaris cited Plaintiffs to exhaust system reports at POL_SPT_RJ_00000125 -141, and sound and spark arrestors test reports at POL_SPT_RJ_00000142-253. Plaintiffs have reviewed these documents, none of which included thermal testing of the exhaust system. Polaris states it will produce more documents if they are located. Please provide a specific timeframe for when we can expect to hear from you regarding an update on the status of location and production of additional documents. Please keep us updated.

### Request No. 10 and 11

With regards to customer complaints for exhaust heat related issues, produce all call notes, emails, or communications from customers or dealers to you regarding exhaust heat related complaints with the Sportsman. Similarly, Request No. 11 asked Polaris to "Produce 'AskPolaris' documents or sufficient to demonstrate 1) the total number of customer communications regarding exhaust heat issues; 2) all notes regarding those communications; 3) any recordings of those communications; 4) any communication between Polaris and its dealers regarding exhaust heat issues." Polaris referred Plaintiffs back to a table that tallied the "complaints" based upon search terms Polaris picked. Polaris has not produced the "call notes, emails, or communications" or the "Ask Polaris" database. Requests for customer databases is commonplace, and it is not unduly burdensome. Produce the CRM data or any other database that contains the actual communications requested within one week.

### Request No. 12 and 12a

Plaintiffs requested Polaris to "Produce a copy of any scripts, guides, FAQs, instructions, or other materials provided to customer support personnel, whether at Polaris or Calabrio, to address customer or dealer communications about exhaust heat related issues." Number 12a requested communications Polaris personnel had on certain websites and customer forums. Polaris cited Plaintiffs to three documents at POL-PPT_RJ_00000254-256. Polaris also declared that any other scripts, guides, etc. that are "beyond the market actions" that Polaris has self-identified are not relevant. That is not your job. You have identified no burden to identifying scripts, guides or other consumer-directed materials regarding heat-related issues with Sportsman ATVs. Indeed, if located on a CRM, such scripts or guidance materials should be easy to locate. Please produce

CASE 0:16-cv-03348-PJS-LIB Document 104 Filed 12/04/17 Page 8 of 10

*Johannessohn v. Polaris Indus. Inc.,*
Letter re Defendant's discovery responses
Page 7 of 9

those materials. If no additional materials exist, declare as much. Please produce and or so advise within one week.

As to "12a", Polaris claims it does not host any forums and documents are not in their possession. Plaintiffs requested that Polaris identify those personnel that might have communicated on those websites. Interrog. No. 4(f). Once these persons have been identified, Plaintiffs request that Polaris review the files of those custodians to determine if there are responsive documents.

### Request No. 13
Plaintiffs asked that Polaris, "Produce all communications with third-party organizations regarding Sportsman ATV exhaust heat issues, including but not limited to the Consumer Product Safety Commission, the Better Business Bureau, and any state or local agencies." Plaintiffs' SAC identified some of these communications. Polaris cited to documents regarding the 850 and 1000 models that were previously produced. Plaintiffs' SAC identified other CPSC communications and those with the BBB. Those have not been produced. Likewise, Polaris has not stated whether any other communications exist. Produce them or declare whether no such documents exist within one week.

As noted above, Plaintiffs requested that Polaris identify those personnel that might have communicated on those websites. Interrog. No. 4(f). Once these persons have been identified, Plaintiffs request that Polaris review the files of those custodians to determine if there are responsive documents

### Request No. 14
Plaintiffs asked Polaris to "Produce any documents previously produced in any lawsuits related to exhaust heat issues and Sportsman ATVs." Polaris refused, as it did with the interrogatory requesting a list of such lawsuits. This is a commonplace request for a discrete production of materials that Polaris would have already identified as responsive to a lawsuit regarding burns, fires, or other exhaust heat related issues. If no such suits, occurred, declare that. Otherwise, produce those materials. Please update the response and/or produce documents within one week.

### Request No. 15
Plaintiffs requested that Polaris, "Produce all documents referring or relating to any communication with the Named Plaintiffs, including all documents referring or relating to any purchase by the named Plaintiffs." Polaris has agreed to try to locate and produce such documents. Please give us an update on your efforts and an approximation on production within one week.

### Request No. 16

CASE 0:16-cv-03348-PJS-LIB   Document 104   Filed 12/04/17   Page 9 of 10

*Johannessohn v. Polaris Indus. Inc.*,
Letter re Defendant's discovery responses
Page **8** of **9**

   Plaintiffs requested that Polaris, "Produce documents sufficient to disclose all warranty claims related to exhaust heat issues on the Sportsman ATVs. This production should also include all data transmitted to Polaris as part of the warranty claim, and any analysis or investigation of individual warranty claims." Polaris responded by referring to the table and chart tallying up the "claims". That is not sufficient to respond to this request. Plaintiffs request the actual data regarding exhaust heat issues – and not just the raw number of complaints or claims. Polaris has failed to identify any burden in producing this data. Please respond to this request within one week.

### Request No. 17
   Plaintiffs requested that Polaris, "Produce any warranty repair facility directives, policies, procedures, technical service bulletins, troubleshooting guides, warranty description codes, or instructions for work to be performed on the exhaust system of Sportsman ATVs." Polaris listed responsive documents as to a number of models. Please confirm that no other responsive documents to other Sportsman models exist.

### Request No. 19
   Plaintiffs asked that Polaris, "Produce all agreements between You and any third-party regarding warranty reimbursement or indemnification for the Sportsman ATVs during the relevant time period." Polaris objected, claiming any information beyond the TSB is overbroad, and would require the dealership agreements with all Polaris dealers. First, Polaris should produce a sample dealership agreement that includes coverage of warranty claims for Sporstman ATVs. To the extent there are other third-parties that have contracted with Polaris to do warranty work that includes heat-related issues, Polaris should identify those parties, and produce a sample of the agreement with those parties.

### Requests No. 20 and 21
   Plaintiffs asked Polaris to, "Produce all documents regarding the March 2017 recall of your MY2015 and MY2016 Sportsman 850 and 1000 Sportsman ATVs. This request includes but is not limited to engineering analyses, customer complaints, discussions with third-parties and outside agencies, the cost of the recall, the parts including in the recall, and the rationale for selecting those models as opposed to other Sportsman ATVs." Request No. 21 asked for similar documents related to other programs or campaigns before the 2017 recall.

   Polaris claims it has already responded to similar requests, and any further production is not relevant or proportional. This objection lacks merit. Polaris has not identified the personnel involved in either the 2017 recall of the 850 and 1000 models, or other heat-related programs (such as the 2017 program for the 2014-2017 570 models). Polaris has not met and conferred with Plaintiffs' counsel over search terms to search their custodial files. To date, Polaris has only produced a small subset of TSBs and

CASE 0:16-cv-03348-PJS-LIB   Document 104   Filed 12/04/17   Page 10 of 10

*Johannessohn v. Polaris Indus. Inc.,*
Letter re Defendant's discovery responses
Page **9** of **9**

communications with the CPSC. All told, the number of documents is a few dozen. Polaris must have documents regarding how Polaris decided to recall these models, how it assessed the supposed fix, and the success/failure of the fix. Polaris has not explained why it is not proportionate to produce such documents. Polaris does not deny a safety recall for 19,000 ATVs, and other programs to address heat issues in thousands of 570 models. Non-custodial documents clearly exist regarding the March 2017 recall, the creation of the three kits identified to date. Produce those documents. Also, Please let us know when Polaris will identify those persons responsible for the 2017 recall, and conduct the custodial searches, and produce their responsive documents.

### Request No. 22 and No. 23

Plaintiffs requested that Polaris, "Produce a copy of Your organizational charts for any department or division of Polaris involved in the design, testing, performance, marketing, sale, or warranty of the Sportsman ATVs." Request No. 23 asked for "copies of Your document retention policies in effect from 2010 to the present." Polaris refuses to produce any responsive documents to these two basic requests that are common in most litigation. The organizational chart provides Plaintiffs the names of personnel for purposes of identifying custodians with potentially responsive ESI; with understanding the identity and role of personnel who send or receive communications; and for selecting witnesses for deposition. The production of organizational charts is commonplace in litigation, and not unduly burdensome. Similar, a document retention policy for Polaris could not conceivably be burdensome produce (it should be available to all employees), and would inform the Plaintiffs what materials should have been kept by Polaris and its format. Please produce the organizational charts and retention policies within a week.

### IV.   ESI PROTOCOL

The parties have not agreed on an ESI protocol. Plaintiffs have no information on how if at all Polaris plans to identify and search document. Polaris never sent back edits to Plaintiffs proposed ESI protocol. Please provide your edits and return to us by Monday or Plaintiffs will simply ask the Court to enter Plaintiffs' proposed ESI protocol.

Thank you for your time and consideration in this matter.

Very truly yours,

Theodore Leopold