# EXHIBIT 25

| | |
|---|---|
| **From:** | Douglas J. McNamara <DMcNamara@cohenmilstein.com> |
| **Sent:** | Monday, November 13, 2017 10:49 PM |
| **To:** | Mary Novacheck |
| **Cc:** | Theodore Leopold; Eric Kafka; kmbaxter-kauf@locklaw.com; 'Riebel, Karen Hanson'; 'Steve Calamusa'; Nathan Marcusen; Ike Messmore; Paul Cereghini; Robert Wise |
| **Subject:** | Johannessohn v. Polaris Indus Inc - Nov. 13 meet and confer |

Mary, thanks for taking the time to meet and confer about this case. Here are my notes as to what was discussed and agreed to.

First, we agreed to go forward with a 30b6 of Polaris on the topics included in Plaintiffs' notice on 12/19 at the Bowman & Brooke offices in Minneapolis. We will get back to you regarding dates to depose the Plaintiffs after they respond to discovery, aiming to start those in December dates.

1. INT 2/ INT 10/ RFP 2 – these relate to gathering information about sales, installations, warranty coverage for various parts and kits:

    a. I agreed to request a report on the seat upgrade kit applicable to the MY 2014 and 2015 570s, which are P/N 2881014 (1-Ups) and 2881015 (Touring).

    b. I asked plaintiffs to search other information we have produced for other specific part numbers of components plaintiffs seek. Given the 106 different models in the proposed class, having plaintiffs' direction here will significantly improve our ability to run reports on parts you are most interested in.

    c. We discussed plaintiffs' identification of a part number in their written definition of "heat shield kit":

    > 10. "Heat Shield Kit" refers to the parts provided by Polaris for increasing shielding of the Sportsman ATV exhaust system, including but not limited to part # 2876773.

    <u>I have an update for you on that today</u>. I looked into this and determined that <u>part # 2876773 was a heat shield kit applicable to 2005 to 2008 Sportsman models</u>. (It applies to vehicles outside the proposed class.)

    To keep moving forward on this, rather than search for information on sales of P/N 2876773, which I don't think you are looking for, I will ask the client for reports on the heat shield kits identified in the March 27, 2017 TSBs. These will include the following kit part numbers:

    1. A-17-01-A -- P/N 2207033
    2. A-17-01-B -- P/N 2207195
    3. A-17-01-C -- P/N 2207196
    4. A-17-01-D and A-17-01-E -- P/N 2207269

1

<u>NOTE</u> there are other part numbers referenced in those bulletins, such as the exhaust spring retrofit kit, 2206202 (which is completed under A-17-01-E on vehicles that have not had that correction completed earlier under ATV-15-02A).  You may want to review the TSBs in addition to the warranty claims report we produced as Bates 459, and let me know if you are interested in reports on any other parts.

Note further I will ask if Polaris' data includes *refunds* on the sales of parts, and if so, I will ask that it be included in these reports.

You stated that the part Plaintiffs cited in the rogs/rfps was a pre-2009 model. You agreed that Polaris will run a search on the seat kits for the 570, 850, and 1000s and provide a report on 12/12. Plaintiffs would provide any additional part numbers related to this request by 12/5.

2. INT 4 persons responsible

    a. We will discuss identification of persons responsible for the 850/1000 and 570 market actions with the client, and the design of Sportsman ATV exhaust systems.
    b. Plaintiffs served a 30(b)(6) notice yesterday, we will discuss this with the client.
    c. We will speak with you in one week to discuss this further.

You mentioned two names – Rob Stroot (design engineer for exhaust system) and Ryan Bigot, who communicated with the CPSC about the March 2017 recall. You noted these names were on the documents produced. You noted some of the names of persons responsible for the topics noted in Rog 4 could be supplied at the 12/19 deposition. We find this unsatisfactory. By not knowing the names of personnel that impedes investigation, discovery efforts – such as searches of custodial files – and future depositions.  You again agreed to ask Polaris for some names. I asked for a deadline so the "iterative" process does not become interminable. You noted that this is possibly where the magistrate could help. Please provide an updated answer to identify persons as requested in Interrogatory 4 by Friday.

3. INT 6 timing of modifications

    a. I agreed to ask the client if timelines for modifications to exhaust systems are created, and if so, I will request them for 2009 to 2016 Sportsman ATVs.

You confirmed no such list of modifications exist. Please confirm via a supplemental discovery response.

4. INT 7 goodwill "programs"

    a. We had a discussion about this as Polaris believes it provided a sufficient description of goodwill coverage of repairs (i.e., there are no specific programs entitled "goodwill program" but goodwill coverage is provided to pay for repairs not covered under warranty that Polaris wants to cover).
    b. We discussed saferproducts.gov/ViewIncident/1269864.
    c. I looked at this after our call, and have the following observation.  While it doesn't mention a goodwill "program" it does say something similar to what we have discussed, namely:

    > Polaris does offer a heat shield kit for machines such as the one the consumer owns to reduce the possibility of heat related damage to plastic components for machines that are used in conditions that can create additional heat. Polaris also extended goodwill coverage for these machines until December 31st of 2008 if a machine experienced this issue during the extended time period. This effectively gave this consumer eighteen months of coverage for this issue.

> This makes sense to me given Polaris' desire to pay for such repairs when they are not covered under warranty, this is what we have discussed. I note further the time frame of this communication -- 2008. This appears to relate to part number 2876773 which I discussed above.

You confirmed there was no separate "goodwill" program beyond what is offered from time to time. Please confirm via supplemental Rog response.

5. INT 9 / RFP 14 prior lawsuits and documents produced in prior lawsuits

   a. We will ask for a list of lawsuits related to exhaust heat claims for 2009 to 2016 Sportsman models for production to plaintiffs.
   b. We will ask the client if its records indicate whether documents were produced in any of those lawsuits, and if so, are they able to determine what records were produced.
      i. After we have the answer to those questions, you and I will discuss it further.

You stated that there were three lawsuits and will provide this list. You stated that there were no documents produced in those cases. Please supplement RFP 14 and Interrog. 9 to confirm.

6. RFP 13 BBB

   a. We will follow up with the client about who corresponded with the BBB about claims such as the one identified in Para. 28 of plaintiffs' First Amended Complaint and Polaris's response on a 2015 Sportsman 1000

You had no update on this interrogatory. You asked how responsiveness to BBB complaints might be relevant to class. I noted comments regarding the exhaust defect can be relevant to notice and the timing of that notice can affect class definition.
   You shared that Polaris would like our consent to discovery plan that bifurcates discovery and merits, with class discovery ending sometime in 2018 and then class certification. I stated that Plaintiffs will not agree to any such plan: Plaintiffs have maintained since the initial conference an opposition to bifurcating discovery. Part of the problem with bifurcation was apparent by the fact that Polaris may view notice of defect as only a "merits" issue. Moreover, the Magistrate Judge did not require it. Plaintiffs see no reason to instill into the discovery process the inefficient ambiguity of what is class v. merits discovery.

7. RFP 19 dealer agreements

   a. I agreed to ask the client for a current sample dealer agreement
   b. I will confirm with the client that vendors who are not authorized Polaris dealers do not provide warranty repair work to customer vehicles

You stated that you had a current sample contract to produce. We await its production.

8. RFPs 20/21 persons involved in the March 2017 recall

   a. I agree to ask the client about persons involved in the March 2017 recall, we will discuss that with you further next week
   b. I note that this topic is covered in plaintiff's 30(b)(6) notice, and we will work on responding

You identified Ryan Bigot as the person on this topic. I noted they had not answered the RFP – specifically about other programs and the CPSC report cited in the SAC and RFP 21. You stated that because the ATV there preceded 2009, it was not relevant. We believe this is wrong. That report showed that in 2012, a customer was told the following: I contacted the manufacture they stated that for a short time they were providing a new exhaust but are no longer offering the

upgraded exhaust. I could not find any information online regarding any recall regarding overheated exhaust for this product.

First, the requests assumed the relevant time period was 2008 to present. Second, the communication at issue was in 2012 – not before 2009 – so your purported temporal relevance objection lacks merit. Finally, notice of the asserted defect is here **especially** if it precedes the 2010-2016 class period. Plaintiffs allege there has long been an exhaust heat problem with Polaris has ignored or took care of quietly via goodwill programs, seat kits, heat shield kits, etc. Knowledge of these problems, and what if anything Polaris did about them, before 2010 will certainly be relevant. Please provide responsive documents to RFP 21.

9. RFPs 22 and 23 org charts and document retention policies

    a. I agreed to ask the client about what exists, and will confer further with you when I know the answers.

You stated that Polaris is producing the current document retention policy. You stated that Polaris denies any organizational charts besides what is on the website as to the corporate structure. I asked for confirmation in the response.

10. On the ESI protocol and other issues, such as production of custodial files, we agreed that when we identify witnesses who are responsible, or who will be deposed, I will ask if they maintain a relevant "custodial file" not previously produced.  Once I learn the answer to that question, depending on the volume, we can confer about review and production of non-privileged files.  I will ask the client about emails, and we will further confer about how to manage such discovery in a proportional way.  This may well be an area where we need to involve Magistrate Judge Brisbois, but we first need to identify precisely where our disagreements lie.  We are not there yet but I will work with you on narrowing and focusing the issues for the court.  Quite possibly the parties will be able to agree on next steps, but whatever the outcome, we will continue to communicate with you in a cooperative way.

You requested that Plaintiffs revisit the ESI protocol previously send in August, and convert into a Rule 34 request as to what Plaintiffs actually want via ESI. I reiterated that Plaintiffs seek the custodial emails of those persons who have relevant information on the already existing Rule 34 requests. Nevertheless I agreed to review the ESI protocol to see if some narrowing could occur. I will do so, but Plaintiffs position remains 1) a search of the ESI as to custodians with responsive information to our requests is required – and cannot be sidestepped because Polaris does not wish it; and 2) if Polaris refuses to agree to a protocol, we will ask the Court to select one via a motion. Plaintiffs will send a revised ESI by Wednesday.

**Mary T. Novacheck**
Partner
Direct: 1.612.672.3276 | Mobile: 1.612.414.4706
Email: Mary.Novacheck@bowmanandbrooke.com



150 South Fifth Street, Suite 3000 | Minneapolis, MN  55402

---

**From:** Douglas J. McNamara [mailto:DMcNamara@cohenmilstein.com]
**Sent:** Tuesday, October 31, 2017 5:08 PM
**To:** Mary Novacheck <Mary.Novacheck@bowmanandbrooke.com>

**Cc:** Theodore Leopold <tleopold@cohenmilstein.com>; 'kmbaxter-kauf@locklaw.com' <kmbaxter-kauf@locklaw.com>; Andrew N. Friedman <AFriedman@cohenmilstein.com>; 'Steve Calamusa' <SCalamusa@fortheinjured.com>; Eric Kafka <EKafka@cohenmilstein.com>; 'Riebel, Karen Hanson' <khriebel@locklaw.com>; 'TColunga@fortheinjured.com' <TColunga@fortheinjured.com>; 'ibasterrechea@casepoint.com' <ibasterrechea@casepoint.com>; Paul Cereghini <Paul.Cereghini@bowmanandbrooke.com>; Nathan Marcusen <Nathan.Marcusen@bowmanandbrooke.com>; Robert Wise <Rob.Wise@bowmanandbrooke.com>; Ike Messmore <Ike.Messmore@bowmanandbrooke.com>; Val Ferrian <Valerie.Ferrian@bowmanandbrooke.com>
**Subject:** RE: Johannessohn v. Polaris Indus Inc

Mary, Rob, and Ike: thanks for your time today on the call. I will send you my notes of the call tomorrow. As discussed, here is our 30b6 notice. Please advise as to time and place by next week so we can plan accordingly. Thank you for your cooperation.

**Douglas J. McNamara**
Of Counsel



**Cohen Milstein Sellers & Toll PLLC**
1100 New York Ave. NW  | Fifth Floor
Washington, DC 20005

phone 202.408.4600
fax 202.408.4699

website  | map

**Powerful Advocates. Meaningful Results.**

*This e-mail was sent from Cohen Milstein Sellers & Toll PLLC. It may contain information that is privileged and confidential. If you suspect that you were not intended to receive it, please delete it and notify us as soon as possible.*

---

**From:** Mary Novacheck [mailto:Mary.Novacheck@bowmanandbrooke.com]
**Sent:** Thursday, October 26, 2017 3:48 PM
**To:** Douglas J. McNamara
**Cc:** Theodore Leopold; 'kmbaxter-kauf@locklaw.com'; Andrew N. Friedman ; 'Steve Calamusa'; Eric Kafka; 'Riebel, Karen Hanson'; 'TColunga@fortheinjured.com'; 'ibasterrechea@casepoint.com'; Paul Cereghini; Nathan Marcusen; Robert Wise; Ike Messmore; Val Ferrian
**Subject:** RE: Johannessohn v. Polaris Indus Inc

Hi Doug, the time we had available tomorrow morning has closed, can we schedule this for early next week?

Rob and I both plan to be on the call, he has meetings all day Monday and Tuesday morning on the west coast.  But he can be available Tuesday at noon PT, which would be 3:00 ET on Tuesday afternoon.  Will that work for this call?

Thank you, Mary


**Mary T. Novacheck**
Bowman and Brooke LLP
Direct: 1.612.672.3276 | Mobile: 1.612.414.4706

---

**From:** Mary Novacheck
**Sent:** Wednesday, October 25, 2017 4:47 PM
**To:** Douglas J. McNamara <DMcNamara@cohenmilstein.com>
**Cc:** Theodore Leopold <tleopold@cohenmilstein.com>; kmbaxter-kauf@locklaw.com; Andrew N. Friedman <AFriedman@cohenmilstein.com>; Steve Calamusa <SCalamusa@fortheinjured.com>; Eric Kafka <EKafka@cohenmilstein.com>; Riebel, Karen Hanson <khriebel@locklaw.com>; TColunga@fortheinjured.com; ibasterrechea@casepoint.com; Paul Cereghini <Paul.Cereghini@bowmanandbrooke.com>; Nathan Marcusen <Nathan.Marcusen@bowmanandbrooke.com>; Robert Wise <Rob.Wise@bowmanandbrooke.com>; Ike Messmore

<Ike.Messmore@bowmanandbrooke.com>; Val Ferrian <Valerie.Ferrian@bowmanandbrooke.com>
**Subject:** RE: Johannessohn v. Polaris Indus Inc

Doug, the only time we have available for a call on Friday is 10:00 a.m. ET.  Does that work for plaintiffs?

If not, what is your availability Monday morning?


**Mary T. Novacheck**
Bowman and Brooke LLP
Direct: 1.612.672.3276 | Mobile: 1.612.414.4706

---

**From:** Mary Novacheck
**Sent:** Wednesday, October 25, 2017 8:25 AM
**To:** Douglas J. McNamara <DMcNamara@cohenmilstein.com>
**Cc:** Theodore Leopold <tleopold@cohenmilstein.com>; kmbaxter-kauf@locklaw.com; Andrew N. Friedman <AFriedman@cohenmilstein.com>; Steve Calamusa <SCalamusa@fortheinjured.com>; Eric Kafka <EKafka@cohenmilstein.com>; Riebel, Karen Hanson <khriebel@locklaw.com>; TColunga@fortheinjured.com; ibasterrechea@casepoint.com; Paul Cereghini <Paul.Cereghini@bowmanandbrooke.com>; Nathan Marcusen <Nathan.Marcusen@bowmanandbrooke.com>; Robert Wise <Rob.Wise@bowmanandbrooke.com>; Ike Messmore <Ike.Messmore@bowmanandbrooke.com>; Val Ferrian <Valerie.Ferrian@bowmanandbrooke.com>; Michelle LaRoche <Michelle.LaRoche@bowmanandbrooke.com>; Brian Dahlquist <Brian.Dahlquist@bowmanandbrooke.com>
**Subject:** Re: Johannessohn v. Polaris Indus Inc

Hi Doug, I am working on a time for a call with plaintiffs on Friday afternoon. I will send you an email at the end of the day today with a suggested time.

Thank you, Mary

Sent from my iPhone

On Oct 23, 2017, at 6:02 PM, Douglas J. McNamara <DMcNamara@cohenmilstein.com> wrote:

> Thanks, Mary. We will look through these items. While we recognize this may address some concerns from our meet and confer letter, we would still like to address some other matters in that letter. Can you speak on Friday afternoon?
>
> **Douglas J. McNamara**
> Of Counsel
>
> <image003.jpg>
>
> **Cohen Milstein Sellers & Toll PLLC**
> 1100 New York Ave. NW  | Fifth Floor
> Washington, DC 20005
> phone 202.408.4600
> fax 202.408.4699
> website  | map
> **Powerful Advocates. Meaningful Results.**
>
> This e-mail was sent from Cohen Milstein Sellers & Toll PLLC. It may contain information that is privileged and confidential. If you suspect that you were not intended to receive it, please delete it and notify us as soon as possible.
>
> ---
>
> **From:** Mary Novacheck [mailto:Mary.Novacheck@bowmanandbrooke.com]
> **Sent:** Monday, October 23, 2017 5:54 PM

6

**To:** Theodore Leopold; Douglas J. McNamara; kmbaxter-kauf@locklaw.com; Andrew N. Friedman ; Steve Calamusa; Eric Kafka; Riebel, Karen Hanson; TColunga@fortheinjured.com; ibasterrechea@casepoint.com
**Cc:** Paul Cereghini; Nathan Marcusen; Robert Wise; Ike Messmore; Val Ferrian; Michelle LaRoche; Brian Dahlquist
**Subject:** RE: Johannessohn v. Polaris Indus Inc

Dear Counsel:

As previously promised, today Polaris is producing additional documents in response to Plaintiffs' Requests for Production and Interrogatories.

We are utilizing the same method previously used for our productions.  I am copying Brian Dahlquist, who will send you a link to the documents and the load file.

The password for retrieving the production is 7zYm4u2Q.  Please let me know if you have any issues downloading the documents.

Also as promised, I attach our privilege redactions log.  We identified privileged information in 16 of the 4232 lines of CRM claims that we are producing in POL_SPT_RJ_00000459.

POL_SPT_RJ_00000459 lists by VIN the responsive CRM and warranty claims identified previously in the table "2009–2016 model year Sportsman Vehicles manufactured, sold, and registered in the U.S." (previously produced as POL_SPT_RJ_00000124.0001) and the graph "Polaris Sportsman 2009–2016 Percentage of U.S. Vehicles with a Responsive CRM or Warranty Record" (previously produced as POL_SPT_RJ_00000125.0001).   The new document gives you lines of information containing text fields as well as other data fields related to the CRM and warranty claims.

We redacted only the privileged communications themselves -- not the entirety of the text entries for the 16 CRM claims in question.

Sincerely, Mary


**Mary T. Novacheck**
Partner
Direct: 1.612.672.3276 | Mobile: 1.612.414.4706
Email: Mary.Novacheck@bowmanandbrooke.com

<image005.jpg>
150 South Fifth Street, Suite 3000 | Minneapolis, MN  55402

---

Note: This electronic mail is intended to be received and read only by certain individuals. It may contain information that is attorney-client privileged or protected from disclosure by law. If it has been misdirected, or if you suspect you have received this in error, please notify me by replying and then delete both the message and reply. Thank you.