## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| RILEY JOHANNESSOHN, DANIEL C. BADILLA, JAMES KELLEY, RONALD KRANS, KEVIN R. WONDERS, WILLIAM BATES, JAMES PINION, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>POLARIS INDUSTRIES INC.,<br><br>Defendant. | Case No.: 16-CV-3348-PJS-LIB |

## POLARIS INDUSTRIES INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

## REDACTED

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................0

I. PLAINTIFFS SEEK DOCUMENTS POLARIS AGREED TO PRODUCE
AND RAISE ISSUES NEVER ADDRESSED IN A MEET AND
CONFER. ....................................................................................................0

    A. Polaris Has Agreed to Produce Requested Non-Privileged Testing
and Data and Supplement its CRM/Warranty Data Production...................1

    B. Polaris Has Produced Many of the Challenged Privilege Log
Documents...................................................................................................4

    C. Plaintiffs' Motion Raises Issues and Arguments that Plaintiffs Never
Raised in the Parties' Meet and Confer.......................................................5

II. PLAINTIFFS INAPPROPRIATELY SEEK TO INVADE THE
ATTORNEY CLIENT PRIVILEGE AND WORK PRODUCT
PROTECTION. ............................................................................................9

    A. Polaris Has Properly Withheld Only Privileged Documents ......................10

    B. Polaris's Privilege Log Entries More Than Satisfy FRCP 26(b)(5). ..........16

    C. Polaris Has Not Claimed Privilege over "Business Advice" ......................18

    D. Documents Created in Connection with the CPSC Investigation Are
Protected Under The Attorney Work Product Doctrine..............................20

    E. Plaintiffs Have Not Shown a Substantial Need for Polaris' Work
Product........................................................................................................21

III. THE FOUR INCIDENT REPORTS REGARDING REDESIGNED PRE-
PRODUCTION VEHICLES ARE IRRELEVANT...............................................23

CONCLUSION ..............................................................................................27

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apsley v. Boeing Co.*,
  2008 WL 5211001 (D. Kan. Dec. 9, 2008) ................................................................. 18

*Baptiste v. Cushman & Wakefield, Inc.*,
  2004 WL 330235 (S.D.N.Y. Feb. 20, 2004) ............................................................... 19

*Bituminous Cas. Corp. v. Tonka Corp.*,
  140 F.R.D. 381 (D. Minn. 1992) .............................................................. 22, 27, 28

*Bowne of N.Y. City, Inc. v. AmBase Corp.*,
  150 F.R.D. 465 (S.D.N.Y. 1993) ............................................................................. 12

*BreathableBaby, LLC v. Crown Crafts, Inc.*,
  2013 WL 3350594 (D. Minn. May 31, 2013) ..................................................... 12, 24

*Bredemus v. Int'l Paper Co.*,
  252 F.R.D. 529 (D. Minn. 2008) .............................................................................. 30

*Cardenas v. Prudential Ins. Co. v. Am.*,
  2004 WL 234404 (D. Minn. Jan. 30, 2004) ............................................................. 25

*Cf. Bartholomew v. Avalon Capital Grp., Inc.*,
  278 F.R.D. 441, 447 (D. Minn. 2011) ...................................................................... 24

*Clark v. Unum Life Ins. Co. of Am.*,
  799 F. Supp. 2d 527 (D. Md. 2011) ......................................................................... 23

*Columbia Ins. Co. v. Tibbott*,
  2012 WL 13027067 (D. Minn. June 21, 2012) ........................................................ 16

*Damgaard v. Avera Health*,
  2015 WL 1608209 (D. Minn. Apr. 10, 2015) ............................................................. 9

*Diversified Indus., Inc. v. Meredith*,
  572 F.2d 596 (8th Cir. 1977) (en banc) ...................................................... 15, 17, 18

*Escamilla v. SMS Holdings Corp.*,
  2011 WL 13243580 (D. Minn. June 28, 2011) .............................................. 19, 20, 22

**Page(s)**

*F.T.C. v. GlaxoSmithKline*,
   294 F.3d 141 (D.C. Cir. 2002) ....................................................................... 20

*Franklin for Estate of Franklin v. Peterson*,
   2015 WL 13484483 (D. Minn., Aug. 21, 2015) ............................................. 7

*In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*,
   357 F.3d 900 (9th Cir. 2004) ......................................................................... 26

*High Point SARL*, 2012 WL 234024 (D. Kan. May 4, 2012) ........................... 20

*Hofer v. Mack Trucks, Inc.*,
   981 F.2d 377 (8th Cir. 1992) .................................................................. 30, 31

*Holland v. Island Creek Corp.*,
   885 F. Supp. 4 (D.D.C. 1995) ........................................................................ 21

*Icenhower v. Total Auto., Inc.*,
   2014 WL 4055784 (D. Minn. Aug. 15, 2014) ............................................ 6, 7

*Johnson v. Ford Motor Co.*,
   2016 WL 1241538 (S.D. W. Va. Mar. 28, 2016) .......................................... 23

*Kobluk v. Univ. of Minnesota*,
   574 N.W.2d 436 (Minn. 1998)....................................................................... 17

*Kramer v. Raymond Corp.*,
   1992 WL 122856 (E.D. Pa. 1992) ................................................................. 25

*Leer v. Chi. Milwaukee, St. Paul & Pac. Ry. Co.*,
   308 N.W.2d 305 (Minn. 1981)....................................................................... 17

*Lintz v. American General Finance, Inc.*,
   1999 WL 450197 (D. Kan. June 24, 1999)..................................................... 22

*Luminara Worldwide LLC v. Liown Electronics Co. Ltd.*,
   2015 WL 9861106 (D. Minn. Oct. 2, 2015) .................................................. 14

*Marvin Lumber and Cedar Co. v. PPG Ind. Inc.*,
   168 F.R.D. 641 (D. Minn. 1996)..................................................................... 17

*Mission Nat'l Ins. Co. v. Lilly*,
   112 F.R.D. 160 (D. Minn. 1986)..................................................................... 19

*In re Murphy*,
   560 F.2d 326 (8th Cir. 1977) ......................................................................... 16

*N. Valley Commc'ns, L.L.C. v. Qwest Commc'ns Corp.*,
2010 WL 3672233 (D.S.D. Sept. 10, 2010)......................................... 20

*Nat'l Credit Union Admin. Bd. v. CUMIS Ins. Soc'y, Inc.*,
2017 WL 4898500 (D. Minn. Sept. 28, 2017) ..................................... 13, 14

*In re New York Renu with Moistureloc Prod. Liab. Litig.*,
2008 WL 2338552 (D. S.C. May 8, 2008).............................................. 21

*NLRB v. Interbake Foods, LLC*,
637 F.3d 492 (4th Cir. 2011) ................................................................. 23

*Othon v. Bon-ton Dep't Stores, Inc.*,
2013 WL 12085170 (S.D. Iowa Apr. 3, 2013). ................................... 26, 28

*Othon v. The Bon-Ton Dep't Stores, Inc.*,
2013 WL 12085467 (S.D. Iowa June 14, 2013) ....................................... 26

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
2018 WL 1162552 (E.D.N.Y. Feb. 26, 2018)........................................... 21

*Peerless Indem. Ins. Co. v. Sushi Avenue, Inc.*,
2017 WL 631547 (D. Minn. Feb. 15, 2017) ............................................ 17

*Prism Tech. LLC v. Adobe Systems, Inc.*,
2011 WL 5523389 (D. Neb. Nov. 14, 2011) ............................................ 22

*Roth v. AON Corp.*,
254 F.R.D. 538 (N.D. Ill. 2009)................................................................ 21

*Sedco Int'l, S. A. v. Cory*,
683 F.2d 1201 (8th Cir. 1982) ................................................................. 25

*Simon v. G.D. Searle & Co.*,
816 F.2d 397 (8th Cir. 1987) ............................................................. 15, 17

*Sky Angel U.S., LLC v. Discovery Commc'ns., LLC*,
28 F. Supp. 3d 465 (D. Md. 2014) .......................................................... 12

*SmithKline Beecham Corp. v. Apotex Corp.*,
232 F.R.D. 467 (E.D. Pa. 2005)............................................................... 13

*U.S. Inspection Servs., Inc. v. NL Engineered Sols., LLC*,
268 F.R.D. 614 (N.D. Cal. 2010)......................................................... 26, 27

**Page(s)**

*U.S. v. Bouchard Transp.*,
  2010 WL 1529248 (E.D.N.Y. 2010)............................................................22

*Rabushka ex rel. United States v. Crane Co.*,
  122 F.3d 559 (8th Cir. 1997) ....................................................................11

*United States v. Davita, Inc.*,
  301 F.R.D. 676 (N.D. Ga. 2014)...............................................................20

*Unity Healthcare, Inc. v. Cty. of Hennepin*,
  2015 WL 12977022 (D. Minn. Sep. 16, 2015) .........................................7, 8

*Upjohn Co. v. U.S.*,
  449 U.S. 383 (1981)...................................................................................25

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
  250 F.R.D. 251 (D. Md. 2008)...................................................................23

*Williams v. Sprint/United Mgmt. Co.*,
  238 F.R.D. 633 (D. Kan. 2006)..................................................................22

*Wilson v. Corning, Inc*.,
  2014 WL 12600838 ...............................................................................18, 20

*Wilson v. Corning, Inc*.,
  2014 WL 12610210 (D. Minn. Nov. 18, 2014) ......................................13, 14

**Statutes**

Minn. Stat. § 595.02 subd. 1(b) .................................................................15, 17

**Rules**

Fed. R. Civ. P. 26....................................................................11, 12, 22, 23, 30

Fed. R. Civ. P. 37..........................................................................................6, 11, 14

Local Rule 7.1(a) .........................................................................................6, 11, 14

Minn. R. Civ. P. 26.02(f)(1) .........................................................................12

## INTRODUCTION

Plaintiffs' motion to compel should never have been filed.  (Doc. Nos. 158, 160.) As an initial matter, plaintiffs failed to complete the meet and confer as required by Federal Rule of Civil Procedure 37(a)(1) and Local Rule 7.1(a), which resulted in plaintiffs prematurely moving forward with a motion to compel that seeks many documents that Polaris has already agreed to produce.  But more importantly, plaintiffs' motion raises a number of issues that were never once raised with Polaris before the motion to compel was filed.  Putting aside that much of plaintiffs' motion is therefore moot and/or premature, the balance of what plaintiffs seek is either protected by the attorney-client privilege and/or work product doctrine, or is irrelevant material regarding pre-production vehicles with completely different exhaust systems and architecture from the vehicles at issue in this case.  In any event, plaintiffs are not entitled to any of the withheld materials.  Polaris respectfully requests that the Court deny plaintiffs' motion in its entirety.

## I.     PLAINTIFFS SEEK DOCUMENTS POLARIS AGREED TO PRODUCE AND RAISE ISSUES NEVER ADDRESSED IN A MEET AND CONFER.

Plaintiffs' motion seeks a number of documents that Polaris has already produced or agreed to produce, and raises a number of issues for the first time that the parties never previously discussed.   The meet and confer requirements of Federal Rule of Civil Procedure 37(a)(1) and Local Rule 7.1(a) are designed precisely to discourage the type of premature and unnecessary motion practice at issue here.  The meet and confer requirement "is not a meaningless procedural hurdle attorneys should simply check off their lists before filing a motion." *Icenhower v. Total Auto., Inc.*, 2014 WL 4055784, at *2 (D. Minn. Aug.

15, 2014).   Rather, it is an important procedural safeguard designed to "mak[e] the Local Rules effective and efficient for practice in this District."   *Id.*   Plaintiffs here, however, having secured a hearing date for a motion to compel, moved forward with their motion, notwithstanding their meet and confer obligations and Polaris' agreement to produce much of the requested materials.   As this Court has previously instructed, "[t]his is not how non-dispositive motion practice is supposed to work.   Parties are only supposed to engage the Court *after* they are unable to resolve their disputes regarding specific discovery requests that are at issue in the case, and it should come on the heels of a more cooperative effort than the parties engaged in here."   *Unity Healthcare, Inc. v. Cty. of Hennepin*, 2015 WL 12977022, at *3 (D. Minn. Sep. 16, 2015) (emphasis in original).[1]

### A. Polaris Has Agreed to Produce Requested Non-Privileged Testing and Data and Supplement its CRM/Warranty Data Production.

Plaintiffs claim that Polaris has refused to produce responsive testing for Sportsman ATVs at issue in plaintiffs' complaint or to supplement its production of data from its CRM and warranty databases.   (Doc. No. 164 ("Pls. Mot.") at 3 n.2 (citing to Plaintiff's RFP Nos. 7, 10, 16, 20, and 21); 5-6.)   That is not true.   Plaintiffs first raised the issue of testing data on June 14, 2018, demanding in an email that Polaris produce "underlying data and charts for testing conducted by Polaris."[2]   At that time, plaintiffs identified two produced

---

[1]   *See also, e.g., Franklin for Estate of Franklin v. Peterson*, 2015 WL 13484483, at *1 (D. Minn., Aug. 21, 2015) ("[M]any, if not all, of the issues raised by plaintiff's motion could have been resolved had the robust meet and confer contemplated by the Local Rule taken place.").

[2]   *See* Ex. 1, June 14, 2018 Email Exchange between E. Kafka and A. Pixton.

tests for which plaintiffs claimed they could not locate the underlying testing data.  On June 29, 2018, prior to the filing of plaintiffs' motion, Polaris agreed to conduct a reasonable search and provide test data relating to the requested tests by the July 29, 2018 date chosen by the plaintiffs.[3]  Polaris further agreed to perform a reasonable search to identify and produce any non-privileged developmental testing data related to the Sportsman ATV exhaust system responsive to plaintiffs' RFPs.[4]  Indeed, plaintiffs even concede in their motion that Polaris began producing these materials just days after plaintiffs requested them.[5]

Given that Polaris has already agreed to produce these requested materials, plaintiffs' motion creates unnecessary work for the Court and for Polaris.  In their motion, plaintiffs refer to specific data in a "heat testing folder" discussed by Polaris employee Jason Fields at his June 29, 2018 deposition, but they do not mention that this deposition took place mere hours before plaintiffs filed their motion.[6]  Had plaintiffs engaged in a meet and confer regarding this newly-identified test data, Polaris could have informed plaintiffs it will produce any non-privileged data from this folder that is responsive to plaintiffs' document requests.  Instead, in an effort "to have as much addressed at the . . . hearing date as possible," plaintiffs filed their motion.  *Unity Healthcare, Inc.,* 2015 WL 12977022 at *3.  As this Court has recognized, "[t]hreatening to bring a motion is not the

---

[3]   *See* Ex. 2, June 29, 2018 A. Pixton Ltr. to D. McNamara and E. Kafka at 2.

[4]   *Id.*

[5]   *See* Pls. Mot. at 13.

[6]   *See id.*

sort of 'good faith effort to resolve the issues' of a potential motion that is contemplated by the Rule." *Damgaard v. Avera Health*, 2015 WL 1608209, at *9 (D. Minn. Apr. 10, 2015).

Relatedly, plaintiffs first requested that Polaris supplement its CRM/warranty data production on June 25, 2018—four days before filing their motion to compel.[7]  Polaris did not decline plaintiffs' request, but informed plaintiffs that it was determining whether such additional data exists, and if so, when it could produce such data.  In Polaris's June 29, 2018 letter, and during the parties' telephone call that evening,[8] counsel for Polaris again requested a small amount of additional time to confirm that it could provide the supplementation, and noted the issue was not ripe for the Court's attention.[9]  Once again, even though Polaris was reviewing plaintiff's request, plaintiffs declined to engage in a good faith meet and confer and instead moved to compel.  In any event, Polaris has informed plaintiffs that it will produce the requested supplemental CRM and warranty data.

In sum, plaintiffs' motion is moot on these points, as Polaris has agreed to produce any non-privileged, responsive testing data it identifies and to supplement its CRM/warranty data production through May 31, 2018 by July 29, 2018—the date

---

[7]  *See* Ex. 3, June 25, 2018 Letter from E. Kafka to A. Pixton at 2-3.

[8]  Plaintiffs' statements about the parties' June 29, 2018 telephone call are at best inaccurate.  Plaintiffs' counsel called counsel for Polaris unannounced after the close of business, and did not engage in any substantive conversation.  Rather, plaintiffs' counsel stated without any discussion that they intended to file their motion to compel. When counsel for Polaris requested that plaintiffs to engage in a good faith meet and confer, plaintiffs responded that they would not wait to file their motion.

[9]  *See* Ex. 2, June 29, 2018 A. Pixton Ltr. to D. McNamara and E. Kafka at 3.

requested by plaintiffs.  The Court should deny the motion as moot as to these documents.

**B.**     **Polaris Has Produced Many of the Challenged Privilege Log Documents.**

Plaintiffs' motion paints an inaccurate and misleading picture regarding the issues and dispute concerning Polaris' privilege log.  Shortly after filing notices of appearance in this case, Polaris' new counsel engaged in a rigorous review of Polaris' privilege log and diligently worked to revise and update the log even before plaintiffs raised any issues with the log's content.[10]  As part of that process, Polaris' new counsel informed plaintiffs that it appeared that some documents withheld by Polaris' previous counsel had been inadvertently omitted from the privilege log, and that through a document coding error other documents appeared to contain inaccurate descriptions.  In June 2018, Polaris produced more than 600 documents that had been withheld by its previous counsel.

Additionally, in response to plaintiffs' June 26, 2018 email identifying 192 logged documents that plaintiffs intended to challenge,[11] Polaris informed plaintiffs on June 29, 2018—*prior* to the filing of plaintiffs' motion—that on July 2, 2018 Polaris would produce

---

[10]  Polaris served a Privilege Log on April 13, 2018.  Polaris served a First Amended Privilege Log on June 5, 2018.

[11]  Plaintiffs' motion challenges 192 entries on Polaris' privilege log, reflecting 150 actual documents.  There are more entries than actual documents because some documents contain embedded objects, which are processed separately and listed as distinct entries on a privilege log.  (For example, a data chart pasted from a spreadsheet into a presentation may be extracted by the document review platform into a separate file. While the user who generated the presentation treated the presentation as a single document, and in fact usually never sees the extracted object outside the presentation, there would be two separate entries on the privilege log.)  Of the 150 actual documents, 51 documents have been downgraded by Polaris' newly-appearing counsel and were produced to plaintiffs on July 2, 2018, leaving 99 actual documents in dispute.

4

70 additional documents from the First Amended Privilege Log (some with privilege redactions) as plaintiffs had requested, including 51 documents from the 192 sought in plaintiffs' motion.[12]  Polaris produced the documents as promised, and plaintiffs have not identified any issues with the produced documents or the associated redaction log.

### C.    Plaintiffs' Motion Raises Issues and Arguments that Plaintiffs Never Raised in the Parties' Meet and Confer.

Plaintiffs raise a number of issues for the first time in their motion to compel.  As such, these issues have never been the subject of a meet and confer under Rule 37(a)(1) and Local Rule 7.1(a), are not ripe for the Court's consideration, and are moot regardless.

#### 1.    Plaintiffs' Request for Additional Metadata Fields.

Plaintiffs raise in this motion for the first time the issue of authors and dates created for certain email attachments.  Notwithstanding plaintiffs' failure to raise this issue before filing their motion, Polaris will amend its privilege log to include author names and dates created for email attachments, where such data is available.

#### 2.    Fed. R. Civ. P. 26 Contains No Affidavit Requirement.

Plaintiffs incorrectly imply that Rule 26 requires an affidavit in support of a privilege log, relying on *Rabushka ex rel. United States v. Crane Co.*, 122 F.3d 559, 565 (8th Cir. 1997).  *Rabushka*, however, is inapposite—the only reason the general counsel in that case submitted an affidavit was to distinguish "when he was acting in his capacity as corporate secretary," as opposed to "as an attorney."  *Id.*

Indeed, there is nothing in the Federal Rules that mandates the submission of an

---

[12]  *See* Ex. 2, June 29, 2018 A. Pixton Ltr. to D. McNamara and E. Kafka at 2-3.

attorney affidavit with the filing of a privilege log.  Procedurally, when a party withholds information from discovery on the basis of attorney-client privilege or the work-product protection, the party is required to: (1) "expressly make the claim"; and (2) "describe the nature of the documents, communications, or tangible things not produced or disclosed— and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(i)-(ii).[13] "A party can sustain this burden through a properly prepared privilege log that identifies each document withheld, and contains information regarding the nature of the privilege/protection claimed, the name of the person making/receiving the communication, the date and place of the communication, and the document's general subject matter." *Sky Angel U.S., LLC v. Discovery Commc'ns., LLC*, 28 F. Supp. 3d 465, 483 (D. Md. 2014). "[A]lthough a party can satisfy Rule 26(b)(5)(A) by producing a detailed privilege log stating the basis of the claimed privilege for each document in question, together with an accompanying explanatory affidavit of its general counsel, there is no *requirement* to do so." *BreathableBaby, LLC v. Crown Crafts, Inc.*, 2013 WL 3350594, at *11 (D. Minn. May 31, 2013) (internal citation omitted) (emphasis in original).

Regardless, in further support of its privilege and work product assertions, Polaris is submitting to the Court a supporting declaration from Polaris counsel addressing certain of the disputed documents, filed at Doc. 180. *See Bowne of N.Y. City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993) (noting that a privilege log typically provides

---

[13] *See also* Minn. R. Civ. P. 26.02(f)(1).

sufficient detail to determine "whether the document is at least potentially protected from disclosure" and "[o]ther required information" is "then typically supplied by affidavit or deposition testimony"); *see also SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 478 (E.D. Pa. 2005) (finding privilege log descriptions sufficient where they were supported by counsel's affidavit stating that the communications were made for the purpose of securing or providing legal services and/or legal advice).

3. Polaris Did Not Waive Privilege over Documents Sent to Non-Attorney Employees Identified by Plaintiffs.

Plaintiffs raise for the first time the issue of certain non-attorney individuals on challenged log entries, suggesting that the presence of Polaris employees on select communications vitiates Polaris' privilege immunities. As an initial matter, plaintiffs' unsupported assertion that "privilege was waived" is simply incorrect. Plaintiffs cite *Nat'l Credit Union Admin. Bd. v. CUMIS Ins. Soc'y, Inc.* for the purported proposition that "[f]ailure to appropriately identify an individual in the log, [sic] leads to waiver." 2017 WL 4898500, at *5-6 (D. Minn. Sept. 28, 2017). But the Court's holding in *Nat'l Credit Union* was not nearly so broad. The producing party in *Nat'l Credit Union* was subject to a motion to compel and declined to supplement its log, or offer to do so, to cure deficiencies despite having six weeks prior to the Court's ruling to attempt such remedies. *Id.*

Notably, the Court in *Nat'l Credit Union* cited to *Wilson v. Corning, Inc.*, a similar case in which the court found that an insufficient privilege log did not constitute a waiver of privilege because the party claiming privilege supplemented the privilege log when the opposing party raised concerns about its sufficiency. *Wilson v. Corning, Inc.*, 2014 WL

7

12610210, *2-3 (D. Minn. Nov. 18, 2014); *see also Luminara Worldwide LLC v. Liown Electronics Co. Ltd.*, 2015 WL 9861106, at *4 (D. Minn. Oct. 2, 2015) (denying motion to find privilege waiver when producing party provided amended privilege log following hearing on motion to compel).  Given that plaintiffs have never once raised this issue previously and thus Polaris has had no opportunity to cure any alleged deficiencies in connection with a Federal Rule 37(a)(1)/Local Rule 7.1(a) conference, plaintiffs' reliance on *Nat'l Credit Union* as supporting a waiver of privilege is improper.  The Court should deny their motion to the extent it requires a finding of waiver because of purported deficiencies in the privilege log.

The documents that remain at issue reference 36 Polaris non-attorney employees.[14] Contrary to the impression given by plaintiffs' motion, these individuals are not copied on all, or even many, of the communications at issue.  In addition, these employees operating at the direction of counsel are individuals with relevant engineering, technical and other knowledge necessary to assist Polaris' counsel in responding to the CPSC's investigation and requests.[15]  For the Court's benefit, the name, job title, and a brief description of the legal basis for the inclusion of these employees on the contested privileged communication

---

[14]  Of these 36 employees, plaintiffs have deposed four, and plaintiffs' assertions of ignorance as to the employees' roles and plaintiffs' resulting inability to determine the validity of Polaris' claims of privilege strain credulity.

[15]  For example, taking just the non-attorney recipients on the first challenged email (PRIV2_00036): Michael Trihey is a sender or recipient of just one challenged email, Don Frost two, Roger Hapka six, Cory Knudtson seven, and David Goulet eight. Plaintiffs' insinuation that Polaris routinely copied many non-attorneys who did not need to be included on such confidential communications is unfounded and incorrect.

8

is included in Exhibit 4 to this memorandum.  Polaris' privilege log and the accompanying declaration of Polaris in-house counsel Paul Vitrano establish that Polaris circulated draft documents to and communicated with these employees only as needed, to provide input to the legal department and/or receive the legal advice and strategies formulated by counsel. The declaration also confirms that each intended recipient was instructed to keep confidential the documents' contents, and as such it is clear that no document was "disseminated beyond those persons who, because of the corporate structure, need[ed] to know its contents." *See Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 609 (8th Cir. 1977) (en banc).

## II.    PLAINTIFFS INAPPROPRIATELY SEEK TO INVADE THE ATTORNEY CLIENT PRIVILEGE AND WORK PRODUCT PROTECTION.

Polaris has appropriately withheld documents protected by the attorney-client privilege and attorney work product doctrine.  As such, plaintiffs' motion to compel should be denied.  Under Minnesota law, documents are protected from discovery disclosure where they reflect confidential communications between lawyer and client (or an agent acting in furtherance of the legal representation) for purposes of giving or receiving legal advice. *See* Minn. Stat. § 595.02 subd. 1(b); *see also Simon v. G.D. Searle & Co*., 816 F.2d 397, 404 (8th Cir. 1987) (quotations omitted) (applying Minnesota law).  In the Eighth Circuit, information is protected from disclosure by the attorney work product doctrine where it is generated by or at the direction of an attorney in anticipation of litigation. *See, e.g., Columbia Ins. Co. v. Tibbott*, 2012 WL 13027067, at *5 (D. Minn. June 21, 2012) (citing *In re Murphy*, 560 F.2d 326, 337 (8th Cir. 1977)).

The 99 remaining documents at issue here (*see* note 10, *supra*) are appropriately described on Polaris' log.  (*See* Ex. 5, an excerpt of June 5, 2018 1st Am. Privilege Log, with a column included to indicate into which of the four categories described below the document falls).  Polaris has not included on its log any document disseminated or provided to the CPSC or any other third party.

Plaintiffs' assertion that the narrative descriptions for these 99 are "nebulous" is unsupported by law.  Indeed, plaintiffs have never even issued a privilege log for their own documents (despite repeated requests), much less one as detailed as Polaris' log.[16]

### A.    Polaris Has Properly Withheld Only Privileged Documents

Although plaintiffs generalize their complaints about Polaris' privilege assertions, the remaining 99 documents at issue in plaintiffs' motion fall into four categories.

### 1.    Documents in Category 1 Are Privileged Communications

Category 1 consists of 43 documents reflecting communications to or from Polaris in-house counsel conveying legal advice by counsel or requesting legal advice from counsel concerning draft materials to be presented to the Consumer Product Safety Commission ("CPSC") or presented internally for the purpose of responding to CPSC inquiries.[17]  Such documents are privileged under well-established principles of attorney-client privilege.  *See Kobluk v. Univ. of Minnesota*, 574 N.W.2d 436, 445 (Minn. 1998).

---

[16]   *See, e.g.,* Ex. 6, June 15, 2018 A. Pixton Ltr. to D. McNamara and E. Kafka; Ex. 2, June 29, 2018 A. Pixton Ltr. to D. McNamara and E. Kafka at 3.

[17]   Polaris was notified of the CPSC inquiry in August 2014.  The CPSC inquiry stemmed from reports involving exhaust and heat management issues with Polaris ATVs.  The purpose of the CPSC inquiry was "to determine preliminarily whether a defect is present in a product and, if so, whether that defect rises to the level of a substantial

For the attorney-client privilege to apply to a given communication, the attorney must be acting in his or her capacity as legal counsel. *See* Minn. Stat. § 595.02 subd. 1(b). Further, the communication must be confidential and must be made for the purpose of seeking or providing legal advice. *See Marvin Lumber and Cedar Co. v. PPG Ind. Inc.*, 168 F.R.D. 641, 644 (D. Minn. 1996) (applying Minnesota law). Client communications "intended to keep the attorney apprised of business matters may be privileged if they embody an implied request for legal advice." *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 404 (8th Cir. 1987) (internal quotation marks omitted).

Although Minnesota has not explicitly adopted a test for the application of attorney-client privilege in a corporate setting, the test established by the Eighth Circuit in *Diversified Indus. Inc. v. Meredith* is widely cited in this Court. 572 F.2d 596, 609 (8th Cir. 1977).[18]   The five-factor *Diversified Industries* test provides that attorney-client privilege is applicable to an employee's communication if (1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his [or her] corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate

---

product hazard under 15(a) of CPSA." (*See* Exhibit 7, Aug. 17, 2014 CPSC Ltr.)

[18]   *See, e.g., Peerless Indem. Ins. Co. v. Sushi Avenue, Inc.*, 2017 WL 631547, at *3 (D. Minn. Feb. 15, 2017) (citing *Leer v. Chi. Milwaukee, St. Paul & Pac. Ry. Co.*, 308 N.W.2d 305, 309 (Minn. 1981)) (quoting *Diversified Indus.* 572 F.2d at 609).

structure, need to know its contents. *Id.*

Here, all of the challenged communications in this category are between Polaris in-house counsel Jeffrey Eyres (Senior Assistant General Counsel), Paul Vitrano (an attorney then serving as Vice President of Government Relations), or Stacy Bogart (then General Counsel) and certain Polaris employees, and reflect either requests for legal advice (to counsel), reveal legal advice rendered (by counsel), or are requests for information required to render legal advice in connection with the CPSC investigation.

### 2.    Documents in Category 2 Are Privileged Communications

Category 2 consists of six documents reflecting communications between non-attorney Polaris employees concerning draft materials (PowerPoints, Excels, Word documents) that they are creating, drafting, or revising at the request of in-house or outside counsel in anticipation of litigation, as well as communications between non-attorneys conveying legal advice obtained from in-house or outside counsel. Such documents are protected by both the attorney-client privilege and by the work product doctrine.

Communications among non-attorneys in a corporation are privileged if made at the direction of counsel, to gather information to aid counsel in providing legal services. *See Wilson*, 2014 WL 12600838, at *2. *See also Apsley v. Boeing Co.*, 2008 WL 5211001, at *1 (D. Kan. Dec. 9, 2008) (attorney-client privilege is not lost merely because employee conveys the legal communication to another employee); *Baptiste v. Cushman & Wakefield, Inc.*, 2004 WL 330235, at *2 (S.D.N.Y. Feb. 20, 2004) (email from non-lawyer corporate employee to other non-lawyer employees with responsibility for subject matter disseminating information and advice provided by lawyer did not lose privileged status).

Additionally, this Court has routinely held that work compiled or conducted by or at the direction of counsel in direct response to a government or regulatory investigation is work product because it is created in anticipation of litigation. *See, e.g., Escamilla v. SMS Holdings Corp.*, 2011 WL 13243580, at *21 (D. Minn. June 28, 2011) (documents created in investigation related to EEOC charge are work product created in anticipation of litigation); *Mission Nat'l Ins. Co. v. Lilly*, 112 F.R.D. 160, 164 (D. Minn. 1986) (holding that if preparation for litigation was any part of motivation for producing a report, then report is work product).

Several of the entries cited by plaintiffs reflect correspondence prompted after Polaris' in-house counsel sought to provide legal advice to the company concerning its response to CPSC investigation requests, beginning with Request PI140024 on August 17, 2014. To assist its legal team in understanding and analysis of the issues, Polaris in-house counsel enlisted certain Polaris employees (such as engineers and regulatory affairs managers). Polaris' in-house counsel's legal analysis was subsequently shared with a small, select group of Polaris non-attorney employees with the explicit instructions that the information should not be disseminated further without discussion with legal counsel. (*See* Decl. of Paul Vitrano, Doc. No. 180 at ¶¶ 9-10.) This type of internal circulation of privileged or work product material within a corporation does not impair the privilege. *See, e.g., High Point SARL*, 2012 WL 234024, at *13 (D. Kan. May 4, 2012) (holding privilege protects documents prepared by outside experts at direction of in-house counsel if prepared to assist counsel in providing legal advice); *see also F.T.C. v. GlaxoSmithKline*, 294 F.3d

13

141, 147-48 (D.C. Cir. 2002) (holding privileged documents distributed within corporation retained privilege where documents related to employees' corporate duties).

Additionally, communications between non-attorney employees that reflect or are based on legal advice from counsel are privileged.  *See N. Valley Commc'ns, L.L.C. v. Qwest Commc'ns Corp.*, 2010 WL 3672233, at *8 (D.S.D. Sept. 10, 2010) (denying motion to compel production of communications between non-attorneys made in internal investigation related to potential litigation).  Polaris is mindful that privileged communications between non-attorneys should be "done at the direction and control of counsel." *Wilson v. Corning, Inc.*, 2014 WL 12600838, at *1–2.  Accordingly, Polaris has only withheld communications between non-attorneys where the specific communication was the result of in-house or outside counsel guidance and direction.

### 3.    Documents in Category 3 Are Privileged Documents

Category 3 consists of 44 draft PowerPoint slides (including embedded spreadsheets) created at the request of Polaris in-house counsel for its review in advance of presentation to the CPSC.  As noted with respect to Category 2, above, such documents are privileged work product.  *See, e.g.*, *United States v. Davita, Inc.*, 301 F.R.D. 676, 683 (N.D. Ga. 2014) (attorney-client privilege generally applies to "confidential, non-public drafts of documents which were prepared by an attorney at the request of the client")*; see also Escamilla*, 2011 WL 13243580 at *21 (collecting cases where documents prepared in anticipation of litigation were protected work product); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2018 WL 1162552, at *7 (E.D.N.Y. Feb. 26, 2018)

14

(holding documents prepared by employee "within the framework" of project initiated by counsel for litigation purposes were protected work product).

Importantly, the work product doctrine applies even where legal advice is provided during the drafting of documents that are intended to be made public eventually, such as corporate disclosures to regulatory bodies, press releases, or other external communications. Such advice is "precisely the type of day-to-day guidance for which a corporation would likely rely on counsel," and is, therefore, at the heart of the attorney-client privilege. *Roth v. AON Corp.*, 254 F.R.D. 538, 541 (N.D. Ill. 2009). "[E]ven when a final product is disclosed to the public, the underlying privilege attached to drafts of the final product remains intact." *Roth*, 254 F.R.D. at 541; *see also In re New York Renu with Moistureloc Prod. Liab. Litig.*, 2008 WL 2338552, *4 (D. S.C. May 8, 2008) (same); *Holland v. Island Creek Corp.*, 885 F. Supp. 4, 8 (D.D.C. 1995) (same). The fact that some documents in this category ultimately may have been shown to third parties in their final form does not waive the privilege protecting the drafts.

### 4.     Documents in Category 4 Are Privileged Documents

Category 4 consists of six communications between Polaris non-attorney employees seeking documents and information requested by in-house or outside counsel in connection with responding to CPSC inquiries or pending litigation. Such documents are protected by both the attorney-client privilege and the work product doctrine.[19]  *See Escamilla*, 2011

---

[19]   For any documents in Categories 2 or 4 related to this or other pending litigation, Polaris is willing to submit documents for *in camera* review should the court request it. *See Prism Tech. LLC v. Adobe Systems, Inc.*, 2011 WL 5523389, at *2 (D. Neb. Nov. 14, 2011) (entering protective order stating communications with counsel after litigation

WL 13243580, at *21; *see also Williams v. Sprint/United Mgmt. Co.*, 238 F.R.D. 633, 638-39 (D. Kan. 2006) (collecting cases supporting rule that communications among corporate personnel for the purpose of gathering information to "ensure that the attorney's advice is based on full knowledge of all relevant facts" protected by attorney-client privilege); *Lintz v. American General Finance, Inc.*, 1999 WL 450197 at *4 (D. Kan. June 24, 1999) (holding document distributed between non-attorney employees privileged because conveyed advice of counsel).   Because the documents at issue were gathered or created to assist Polaris attorneys in the CPSC investigation and thus in anticipation of litigation, they are protected by the attorney-client privilege and the work product doctrine.   *See Bituminous Cas. Corp. v. Tonka Corp.*, 140 F.R.D. 381, 386 (D. Minn. 1992); *Escamilla*, 2011 WL 13243580, at *21.

### B.   Polaris's Privilege Log Entries More Than Satisfy FRCP 26(b)(5).

#### 1.   Polaris' Privilege Log Entries Are Entirely Proper.

Contrary to plaintiffs' unsupported assertions, Polaris's log provides sufficiently detailed narrative descriptions of the documents that go well beyond rote recitations of "magic words."   To meet the standards required under FRCP Rule 26(b)(5)(ii), a party must "must set forth specific facts which, taken as true, establish the elements of the privilege for each document for which privilege is claimed.   A privilege log meets this

---

began were privileged); *see also U.S. v. Bouchard Transp.*, 2010 WL 1529248, at *2 (E.D.N.Y. 2010) ("[P]rivilege logs are commonly limited to documents created before the date litigation was initiated.... [I]n many situations, it can be assumed that all documents created after ... a lawsuit has been filed and withheld on the grounds of privilege were created 'because of' that pending litigation.").

standard if it identifies 'the nature of each document, the date of its transmission or creation, the author and recipients, the subject, and the privilege asserted.'" *Clark v. Unum Life Ins. Co. of Am.*, 799 F. Supp. 2d 527, 536 (D. Md. 2011) (quoting *NLRB v. Interbake Foods, LLC*, 637 F.3d 492, 502 (4th Cir. 2011)) (citation and footnote omitted); *see also Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 264 (D. Md. 2008) (noting that privilege logs typically require "information regarding the nature of the privilege/protection claimed, the name of the person making/receiving the communication, the date and place of the communication, and the document's general subject matter.") Ultimately, a privilege log must strike a balance between, on the one hand, providing too little or indecipherable information, and on the other, providing too much information that reveals the substance of protected communications. *See Johnson v. Ford Motor Co.*, 2016 WL 1241538 (S.D. W. Va. Mar. 28, 2016).

Polaris has more than satisfied the legal requirements for a privilege log.  Indeed, had Polaris not stated in its narrative descriptions that, for example, a client was requesting legal advice from a lawyer, or that a document was part of an attorney's work product, plaintiffs would complain that Polaris had not sufficiently articulated the privilege basis that it wished to claim.  The sufficient detail of Polaris's log is illustrated by the log entries plaintiffs highlighted in their motion to compel:

> **PRIV2_00036:** "This email attaches draft documents provided to counsel for the purpose of obtaining legal advice related to the CPSC investigation re Sportsman heat management."

> **PRIV2_00037:** "This draft presentation reflects legal advice of in-house counsel related to a CPSC investigation."[20]

(Pls. Mot. at 18.)  Short of revealing the privileged information at issue, the log entry could not provide more detail about the documents.  While the general nature of the CPSC investigation of certain Polaris vehicles is publicly known today, the specific topics addressed by Polaris's attorneys and the engineers working at their direction are properly protected from disclosure.  *Cf. Bartholomew v. Avalon Capital Grp., Inc.*, 278 F.R.D. 441, 447 (D. Minn. 2011) (privilege logs adequate where, as here, they included categories for: "Author/Source, Recipient(s), CC(s), Date, Description, Privilege Asserted, and Beginning of Bates Number of Produced Version," and "whether named individuals are attorneys"); *BreathableBaby, LLC v. Crown Crafts, Inc.*, 2013 WL 3350594, at *9 (D. Minn. May 31, 2013) (privilege log sufficient where it included: "Document ID, Bates Number, Date, Document Type, From, Recipient(s), CC(s), Privilege Claim, and Description."), report and recommendation adopted, 2013 WL 3349999 (D. Minn. July 1, 2013).

### C.     Polaris Has Not Claimed Privilege over "Business Advice"

Polaris has not withheld documents reflecting only business advice, notwithstanding plaintiffs' claims to the contrary.  Rather, Polaris' new counsel has reviewed the original privilege log (producing non-privileged portions of communications with privilege redactions) and has withheld content containing or reflecting legal advice on the basis of attorney-client privilege. Documents (or portions of documents) containing or reflecting

---

[20]  Plaintiffs' motion erroneously repeats the privilege entry for PRIV2_00036 for both documents, claiming that the entries are identical.  They are not.  This memorandum states the correct entry for PRIV2_00037.

only business advice have been produced.  Plaintiffs identify only one log entry that they

claim "seems to" refer to business activities, as opposed to legal advice.  Plaintiffs are

incorrect.  Specifically, the entry at issue is as follows:

> **PRIV2_00365** This document provides information to in-house counsel for the
> purpose of obtaining legal advice regarding claims analysis.[21]

It is well established (and plaintiffs cite themselves authority that so holds) that in-

house counsel may play a dual role of both legal advisor and business advisor, and an

assertion of privilege is appropriate if a communication's primary purpose is to gain or

provide legal advice.  *See Cardenas v. Prudential Ins. Co. v. Am.,* 2004 WL 234404, at *2

(D. Minn. Jan. 30, 2004) (citing *Kramer v. Raymond Corp.,* 1992 WL 122856 (E.D. Pa.

1992)); *see also Sedco Int'l, S. A. v. Cory*, 683 F.2d 1201, 1205–06 (8th Cir. 1982)

(concluding that legal advice by attorney related to a routine transaction was privileged).

Company attorneys routinely provide legal advice related to ordinary business activities,

but that is the specific role of in-house counsel and does not in any way render such advice

unprotected.  Indeed, an attorney advising a client on how to ensure that an ordinary

business activity (such as claims analysis) is compliant with applicable laws is a

quintessential example of providing privileged legal advice.  *See Upjohn Co. v. U.S.*, 449

U.S. 383, 393 (1981) (discussing need to protect counsel's communications with non-

attorney employees in order to ensure company's compliance with law).  As with the other

---

[21] This particular entry happens to contain an inadvertent error, as it mistakenly contains
the description of a different document; Polaris has issued an amended privilege log
correcting the error.  However, because other documents on the privilege log correctly
have this description, and plaintiffs may make similar assertions with respect to other
documents, Polaris addresses plaintiffs' objection.

documents challenged by plaintiffs, Polaris cannot provide additional information with respect to such documents without divulging the substance of the request for legal advice and/or the legal advice itself, which the law obviously does not require.

> **D.    Documents Created in Connection with the CPSC Investigation Are Protected Under The Attorney Work Product Doctrine.**

The attorney work product doctrine extends to documents created in connection with investigations like the one conducted by the CPSC at issue here.  *See Othon v. Bonton Dep't Stores, Inc*., 2013 WL 12085170, at *2 (S.D. Iowa Apr. 3, 2013), report and recommendation adopted sub nom. at *Othon v. The Bon-Ton Dep't Stores, Inc.*, 2013 WL 12085467 (S.D. Iowa June 14, 2013) (testing in connection with CPSC investigation and recall is work product in anticipation of litigation even when such testing in the absence of CPSC was not work product; also denying that there is substantial need and undue hardship requiring production).  In fact, documents created in connection with a regulatory agency's investigation and any associated anticipated litigation remain protected even if they may have been created in a substantially similar form in the absence of such an investigation. *See U.S. Inspection Servs., Inc. v. NL Engineered Sols., LLC*, 268 F.R.D. 614, 621 (N.D. Cal. 2010) (citing *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.*), 357 F.3d 900, 908 (9th Cir. 2004)).

In *U.S. Inspection Servs.*, a case analogous to the one at bar, the court held that documents generated by non-attorney consultants in connection with a recall were still protected work product because the documents were generated in the course of the company's response to a NHTSA investigation.  *Id.*  The court found that the documents

were protected even if they would have been created for the recall at issue in the absence of NHTSA's involvement.  *Id.*  The court further found that "the protection 'cannot be decided simply by looking at one motive that contributed to a document's preparation.' Instead, the Ninth Circuit examined the totality of circumstances and whether the litigation and non-litigation purposes were 'profoundly interconnected.'"  *Id.*  In the present case, the challenged documents were created to respond to the CPSC's investigation and some of those documents related to Polaris' ensuing recalls that were announced during that investigation.  Because the recalls and the investigation were "profoundly interconnected," these documents are protected work product.

### E.   Plaintiffs Have Not Shown a Substantial Need for Polaris' Work Product.

Plaintiffs' assertion that they have a substantial need for work product created by Polaris's attorneys and their designees is entirely unsupported.  Specifically, plaintiffs claim that they "need to know how Polaris selected its recall and service advisory kits, and there is no substitute for the contemporaneous written conversations."  (Pls. Mot. at 22.) Such a conclusory assertion, however, is woefully insufficient to overcome the stringent protections of the work product doctrine, as is demonstrated by several cases, including *Bituminous Cas. Corp. v. Tonka Corp.*, 140 F.R.D. 381, 386 (D. Minn. 1992). In *Bituminous*, this Court found that, following a regulatory investigation by the Minnesota Pollution Control Agency, "communications among Tonka, its counsel and consultants necessary to facilitate the investigative and remedial process fall under the scope of counsel's investigative endeavor" and were thus protected from disclosure. *Id.* at 389.  The

Court also found that the requesting party had failed to show a substantial need for "each document … withheld from discovery." *Id.* at 390.  Here, plaintiffs here have not attempted to demonstrate a particular and substantial need for any, let alone each, document protected by the work product doctrine.

Other courts have also found that substantial need is an extraordinarily high bar to clear when privileged work product is requested.  In *Othon v. Bon-ton Dep't Stores, Inc.,* for example, plaintiffs sought the production of testing video created at the direction of counsel due to, as in the case at bar, an investigation by CPSC.  2013 WL 12085170, (S.D. Iowa Apr. 3, 2013), *report and recommendation adopted sub nom. Othon v. The Bon-Ton Dep't Stores, Inc.*, 2013 WL 12085467 (S.D. Iowa June 14, 2013).  Plaintiffs there contended they had a substantial need for the testing video to determine scope and timing of defendant's knowledge regarding certain key issues in the case.  *Id.* at 2.  The court denied the motion on the grounds that plaintiffs could question defendant witnesses regarding these issues at their depositions.  *Id.*  Plaintiffs in this case have the same alternative avenues for obtaining this information as the plaintiffs in *Othon* and have already taken advantage of those avenues: plaintiffs have deposed Polaris employees about how Polaris selected its recall and service advisory kits and those deponents have provided detailed testimony on the subject.  (*See, e.g.,* Ex. 8, N. Dahl Dep. Tr. at 26:1-28:10; 125:24-128:4, 171:12-177:1; 182:20-188:22, 199:23-214:13.)  In particular, two of the topics for plaintiffs' 30(b)(6) deposition of Polaris employee Robin Stroot were specifically about the recall kits.  (*See* Ex. 9, R. Stroot Dep. Notice at 4, Topics 2, 3; R. Stroot Dep. Tr. at 105:11-107:13, 121:4-215:4.)  Plaintiffs have not demonstrated (or even attempted to

demonstrate) a substantial need for Polaris's work product.

III.   **THE FOUR INCIDENT REPORTS REGARDING REDESIGNED PRE-PRODUCTION VEHICLES ARE IRRELEVANT.**





███████████████████████████████████

███████████████████████████████

## CONCLUSION

For the foregoing reasons, Polaris respectfully requests that the Court deny plaintiffs' motion and grant Polaris any other relief as the Court finds appropriate.

Dated:   July 10, 2018

/s/ R. Allan Pixton
Richard C. Godfrey, P.C.
Andrew B. Bloomer, P.C.
Paul Collier
R. Allan Pixton
KIRKLAND & ELLIS LLP
300 North LaSalle St
Chicago, IL 60654
Tel:  (312) 862-2000
Fax:  (312) 862-2200
richard.godfrey@kirkland.com
abloomer@kirkland.com
paul.collier@kirkland.com
allan.pixton@kirkland.com

/s/ Wendy J. Wildung
Wendy J. Wildung
Faegre Baker Daniels LLP
2200 Wells Fargo Center, 90 S. 7th St.
Minneapolis, MN 55402
Tel:  (612) 766-7759
wendy.wildung@FaegreBD.com

*Attorneys for Defendant Polaris Industries Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2018, I served the foregoing **POLARIS**

**INDUSTRIES INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**

through CM/ECF to all parties of record.


*/s/ R. Allan Pixton*
R. Allan Pixton