UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| RILEY JOHANNESSOHN, DANIEL C. BADILLA, JAMES KELLEY, RONALD KRANS, KEVIN R. WONDERS, WILLIAM BATES, JAMES PINION, individually and on behalf of others similarly situated,<br><br>　　　　　Plaintiffs,<br>v.<br><br>POLARIS INDUSTRIES INC.,<br><br>　　　　　Defendant. | Case No.: 0:16-cv-03348-PJS-LIB |

## DECLARATION OF PAUL VITRANO

I, Paul Vitrano, hereby declare as follows in accordance with 28 U.S.C. § 1746:

1.　My name is Paul Vitrano. I am over the age of 18. I make this Declaration of my own personal knowledge and, if called to testify, could and would competently testify hereto.

2.　I am employed by Polaris Industries Inc. ("Polaris"), as Senior Assistant General Counsel, and have served in that position since June 2018. Since March 2014 and continuing through today, I also have served as Vice President, Global Government Relations for Polaris.

3.　As Vice President, Global Government Relations, a key part of my role is to provide legal advice as an attorney to my client, Polaris.

4.　On August 25, 2015, Polaris received supplemental requests for information and documents from the Consumer Product Safety Commission ("CPSC") concerning alleged or reported thermal issues in certain off-road vehicles manufactured by Polaris.

5.　I was personally involved in and assisted in managing Polaris' response to the CPSC's document requests and inquires, providing legal advice to various Polaris employees engaged to assist in gathering and reviewing appropriate responsive information, preparing the company's written responses, and drafting and revising documents created during the course of preparing those responses. Together with the General Counsel of Polaris and other counsel in the Legal Department, I also provided updates to senior business leaders and the Board of Directors at Polaris regarding the ongoing discussions with CPSC over the scope of these

requests and responsive information and our impressions of the information being gathered as well as potential litigation arising therefrom.

6.  Between 2015 and 2017, Polaris and the CPSC communicated frequently with respect to the CPSC's inquiries related to potential thermal issues in certain Polaris off-road vehicles. Those exchanges included written communications in the form of both electronic correspondence and presentations, as well as in-person meetings between Polaris employees and the CPSC. In preparation for those communications and meetings, I and/or one of my colleagues in the Polaris Legal Department, Stacy Bogart (former Polaris General Counsel) or Jeffrey Eyres (current Senior Assistant General Counsel), would provide legal advice or guidance. Additionally, I, or one of my Polaris Legal Department colleagues, directed certain Polaris employees to conduct work in response to CPSC's inquiries. I describe these legally-directed projects in more detail below.

7.  In connection with responding to the CPSC's document requests and inquiries, Polaris and its internal and external counsel drafted documents subject to the attorney-client privilege and/or which were created in anticipation of litigation with the CPSC or others.

8.  The communications and materials related to Polaris' response to the CPSC's document requests and inquiries were at all times known to be and treated as confidential and privileged within Polaris.

9.  The CPSC requests for information were extremely broad and requested information for many different types of vehicles over a period of more than eight years. The CPSC requests included documents and information relating to the development and testing of these vehicles, the materials used to assemble these vehicles, and post-sale reports relating to these vehicles. To gather, review, and process this information appropriately, the Polaris Legal Department requested and received assistance from many different Polaris employees (who in turn expended thousands of hours to gather, review, and analyze hundreds of thousands of documents).

10. Specifically, Polaris employee Ryan Bigot reported to me from approximately January 2016 to September 2016, and from January 2017 through June 2018. During the first time frame, I managed and I and/or other lawyers in the Polaris Legal Department directed Ryan in his role as Manager, Product Safety & Claims. During the second time frame, I managed and I and/or other lawyers in the Polaris Legal Department directed Ryan in his role as Manager, Regulatory Affairs. From September 2016 through December 2016, Ryan's role was Manager, Product Safety in the Global Product Safety & Quality organization, but he regularly was directed by me or other lawyers in the Polaris Legal Department to assist us in providing legal advice in connection with the CPSC document requests and potential litigation arising therefrom.

11. On October 4, 2016, plaintiffs Riley Johannessohn, Daniel C. Badilla, James Kelley, Ronald Krans, Kevin R. Wonders, William Bates, and James Pinion, individually, and on behalf of all others similarly situated (*Johannessohn*), filed the above-captioned proposed class action lawsuit alleging that all Polaris Model Year 2009 through 2016 Sportsman 570/850/1000 all-terrain vehicles have an "exhaust heat defect."

12. Since the filing of the *Johannessohn* lawsuit, the Polaris Legal Department, including Polaris' legal staff of paralegals and legal assistants, have been engaged with outside counsel and certain Polaris employees to vigorously defend against the *Johannessohn* plaintiffs' allegations and claims.

13. In connection with the *Johannessohn* defense, the Polaris Legal Department, including Polaris' legal staff of paralegals and legal assistants, would communicate with certain Polaris employees at the direction of outside counsel, and create and share documents subject to the attorney-client privilege and/or which were created in response to the litigation.

14. I am familiar with the First Amended Privilege Log served by Polaris on June 5, 2018, and understand that the *Johannessohn* plaintiffs have filed a Motion to Compel certain privileged and/or attorney work product materials contained therein.

15. I have reviewed each of the emails and documents ("Disputed Entries") that are the subject of the *Johannessohn* plaintiffs' Motion to Compel.

16. With respect to Disputed Entries PRIV2_00232, PRIV2_00784, PRIV2_00786, PRIV2_00943, PRIV2_00945, PRIV2_00946, PRIV2_00949, PRIV2_00956, PRIV2_00991, PRIV2_00993, I was not a party to these communications. However, I have reviewed these communications and believe them to be communications between certain Polaris employees and/or members of the Polaris Legal Department, including Polaris' legal staff of paralegals and legal assistants, and/or Polaris' outside counsel Bowman & Brooke, issued in connection with Polaris' defense against the *Johannessohn* plaintiffs' allegations and claims in pending litigations.

17. I am referenced as a party to communications in the *To*, *From*, or *CC* metadata fields of 34 of the Disputed Entries, and these communications attach an additional 46 Disputed Entries as attachments.

18. With respect to the 34 Disputed Entries to which I am a party, each of those entries is either a confidential communication (i) requesting, providing, or reflecting legal advice, or (ii) requesting, compiling, or providing information for the purpose of facilitating legal advice in connection with Polaris' response to the CPSC's documents requests and inquiries and potential litigation arising therefrom.

19. The requests made of me in the Disputed Entries to which I am a party sought my legal advice or provided me with information I requested to facilitate my provision of legal advice to Polaris, and any legal advice I provided in response was done in my capacity as VP, Global Government Relations.

20. Certain of the Disputed Entries contain or reference information created, compiled, or analyzed by Exponent, a consulting firm retained by Polaris' outside counsel Bowman & Brooke LLP to assist Polaris' in-house and outside counsel with data review and analysis in connection with the CPSC's document requests and inquiries, as well as both ongoing and anticipated litigation.

21. With the exception of Exponent, it is my understanding that no communications with or references to third parties may be found on any of the Disputed Entries.

22. With respect to the Disputed Entries to which I am not a party, each of those entries appear to be either a confidential communication with Polaris' in-house counsel, or a confidential communication between two or more Polaris employees (i) requesting, providing, or reflecting legal advice, or (ii) requesting, compiling, or providing information for the purpose of facilitating legal advice, in connection with Polaris' response to the CPSC's documents requests and inquiries or pending or potential litigation arising therefrom.

23. With respect to the Disputed Entries that are not communications, each of those entries is or appears to be a draft presentation (certain of which contain embedded files), a draft spreadsheet, or a draft document created at the direction of in-house counsel, intended for review by in-house counsel for the purpose of use in response to the CPSC's document requests and inquires or in assessing pending or potential litigation arising therefrom.

24. The requests I made of Polaris employees in communications that are Disputed Entries were for the purpose of obtaining information to facilitate my provision of legal advice to Polaris.

25. With respect to the categories for Disputed Entries identified in Exhibit 5 to Polaris' Opposition to Plaintiffs' Motion to Compel, I can confirm that the documents are or appear to be as follows:

    (a) the documents identified as Category 1 are confidential communications containing or reflecting Polaris's legal strategy and position regarding its response to the CPSC's document requests and inquiries, including the content of document productions to the CPSC;

    (b) the documents identified as Category 2 are confidential communications among non-attorney Polaris employees reflecting and conveying legal advice of Polaris' in-house counsel in furtherance of work done at the direction of such counsel to respond to the CPSC's document request and inquiries;

    (c) the documents identified as Category 3 are confidential draft documents reflecting legal advice of counsel and work created at the direction of counsel in anticipation of litigation and for counsel review in advance of presentation to the CPSC; and

    (d) the documents identified as Category 4 are communications between Polaris non-attorney employees seeking or relaying documents and information requested by in-house or outside counsel in connection with responding to CPSC inquiries or pending litigation.

26. I am aware of no intentional action taken with regard to any of Disputed Entries that would waive the attorney-client privilege or work product protection against disclosure.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 10, 2018, in Medina, MN.

_____
Paul Vitrano