UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Riley Johannessohn, et al.,                                    Court File No. 16-cv-3348 (PJS/LIB)

                    Plaintiffs,

          v.                                                                      **ORDER**

Polaris Industries, Inc.,

                    Defendant.

          This matter comes before the undersigned United States Magistrate Judge pursuant to a

general assignment made in accordance with the provisions of 28 U.S.C. § 636(b)(1)(A), and upon

Plaintiffs' Motion to Compel Production of Documents, [Docket No. 158].

          The Court held a Hearing on the Motion on July 13, 2018, at the end of which it ordered

Plaintiffs to file by 5:00 p.m. on July 16, 2018, on CM/ECF a copy of Defendant's Responses to

the Requests for Production of Documents relevant to the present Motion. (Minute Entry, [Docket

No. 186]). Plaintiffs filed the Supplemental Exhibits on July 16, 2018, after which the Court took

Plaintiffs' Motion to Compel, [Docket No. 158], under advisement. However, further review of

the parties' written submissions revealed that the identity of certain documents at issue was still

unclear. Therefore, on August 1, 2018, the Court ordered the parties to engage in a supplemental

meet-and-confer and file on CM/ECF by 12:00 p.m. on August 6, 2018, a Joint Letter identifying

by Bates number the particular documents withheld as privileged that remained in dispute. (Order,

[Docket No. 193]). The Court instructed the parties that Plaintiff's Motion to Compel Production

of Documents, [Docket No. 158], was no longer under advisement, but that it would be considered

resubmitted and under advisement on August 6, 2018. (Id.). The parties filed their Joint Letter on

August 6, 2018, after which the Court took Plaintiff's Motion to Compel Production of Documents,

[Docket No. 158], under advisement.

For the reasons discussed below, Plaintiffs' Motion to Compel Production of Documents,

[Docket No. 158], is **GRANTED IN PART AND DENIED IN PART**.

## I.      Background and Statement of Facts

This case arises out of an alleged design defect in four-wheel all-terrain vehicles ("ATVs") manufactured by defendant Polaris Industries, Inc. ("Polaris"). Plaintiffs [Riley Johannessohn, Daniel C. Badilla, James Kelley, Ronald Krans, Kevin R. Wonders, William Bates, and James Pinion] bring this action on behalf of themselves and a putative class of purchasers, asserting various consumer-protection claims and a claim for breach of the implied warranty of merchantability.

. . .

Polaris is a manufacturer of boats, snowmobiles, and recreational ATVs. Polaris makes several different models of ATVs sold under the name "Sportsman." Polaris has 1,800 dealers in North America. In 2015, Polaris had overall sales of $4.7 billion and net profit of $455 million.

Plaintiffs are seven individuals living, respectively, in Minnesota, California, Florida, Illinois, Missouri, New York, and North Carolina. Plaintiffs allege that they purchased new Sportsman ATVs in 2015 and 2016, and that their ATVs were manufactured between 2009 and 2016. Plaintiffs allege that their Sportsman ATVs are defectively designed because the exhaust pipe is routed next to the rider's leg and then directly under the rider's seat toward the right rear tire. As a result, plaintiffs say, riders are exposed to temperatures of up to nearly 250 degrees Fahrenheit. According to plaintiffs, the heat not only can cause injury to the rider, but also can cause components such as the seat, seat base, fender, foot well, and side covers to melt.

Plaintiffs seek to represent a nationwide class of consumers who purchased Sportsman ATVs between October 4, 2010 and October 4, 2016. Alternatively if the Court finds that Minnesota law does not apply to all purchases of Sportsman ATVs in the United States, plaintiffs seek to represent seven subclasses of Sportsman purchasers, one for each of their states of residence.

(Order on Motion to Dismiss, [Docket No. 42], 1-3 (citations omitted)).

Plaintiffs initiated the present case on October 4, 2016, by filing their Complaint with this Court. [Docket No. 1]. On December 30, 2016, Polaris filed a Motion to Dismiss. [Docket No. 30]. United States District Judge Patrick J. Schiltz held a hearing on the Motion to Dismiss, and, on June 27, 2017, Judge Schiltz granted the Motion to Dismiss in part and denied it in part. [Dockets No. 40 and 42].

On July 18, 2017, Plaintiffs served Polaris with Plaintiffs' First Set of Requests for Production. (Mem. in Supp., [Docket No. 164], 3; Plfs. Exh. 2, [Docket No. 164-3]). Polaris produced documents and ESI responsive to those Requests. (Mem. in Supp., [Docket No. 164], 3-4).

On April 13, 2018, Polaris provided to Plaintiffs its initial Privilege Log. (Id. at 6; Plfs. Exh. 7, [Docket No. 164-8]). As a result of subsequent discussions between the parties' counsel, in May 2018, Polaris produced additional documents it had originally identified as being withheld as privileged. (Mem. in Supp., [Docket No. 164], 6-7).

On June 5, 2018, Polaris provided to Plaintiffs its First Amended Privilege Log, which identified additional documents being withheld, deleted the initially withheld documents that were subsequently produced, and altered the descriptions of some of the documents still being withheld. (Id. at 7; Exh. 11, [Docket No. 164-12]).[1] Thereafter, pursuant to Plaintiffs' request, Polaris agreed

---

[1] The Court notes that Plaintiffs have filed the First Amended Privilege Log under temporary seal pursuant to Local Rule 5.6. As the purpose of a Privilege Log is to provide non-privileged information regarding documents whose contents are asserted to be privileged, the justification for such sealing, even temporary though it may be, is unclear. See, Novo Nordisk A/S v. Sanofi-Aventis U.S. LLC, Civ. Action No. 07-3206 (MLC), 2008 WL 323611, *2 (D. N.J. Feb. 4, 2008) (holding that a "privilege log itself does not reveal the substance of any of the privileged communications and therefore should not be sealed"). Moreover, a preliminary review of the privilege log does not reveal the sort of information that would justify permanent sealing. See, in contrast, Trujilio v. Jacquez, No. C-10-05183-YGR (DMR), 2014 WL 4072062, *6 (N.D. Cal. Aug. 15, 2014) (allowing permanent sealing of privilege log that contained information identifying adverse employment actions against defendant corrections officers, which could, if made public, "be detrimental in the prison atmosphere given the unique relationship between inmates and staff"). The parties in the present case are cautioned that they should not seek to file documents on the public docket under temporary seal without a good-faith belief that such documents warrant permanent sealing in contravention of the public's recognized right to access the Court's docket.

to produce additional documents that had been identified on the First Amended Privilege Log as withheld. (Mem. in Supp., [Docket No. 164], 8). However, there remained documents on the First Amended Privilege Log that Plaintiffs sought but Polaris declined to produce. (Id.).

Also in June 2018, while preparing for an upcoming deposition of Nathan Dahl, Plaintiff realized that Mr. Dahl had "created summaries of testing conducted on the 100/850 recall kit and 570/450 service advisory kit, but that Polaris had not produced underlying testing data and charts" related to those summaries. (Mem. in Supp., [Docket No. 164], 5). Plaintiffs asked Polaris to produce "all the underlying testing data and charts for its testing of Sportsman ATVs related to exhaust heat issues," but Polaris declined to commit to such production as of the meet-and-confer on June 29, 2018. (Id. at 5-6).

Later that same day, June 29, 2018, Plaintiffs filed the present Motion to Compel. [Docket No. 158]. As originally filed, Plaintiffs first sought "screenshots of five additional Incident Report summaries" related to Sportsman 570 models. (Mem. in Supp., [Docket No. 164], 11  n. 3). "Incident Reports" are used by Polaris "to document incidents the company identifies during the development and testing of new products." (Fields Dec., [Docket No. 181], 2 (filed under temporary seal)). Plaintiffs also sought customer complaints and warranty claims received by Polaris from April 2017 to the present; all testing data regarding "testing of Sportsman ATVs for exhaust heat issues, including its testing of the recall kit and service advisory kit"; and documents Plaintiffs' assert have been wrongfully withheld on privilege grounds. (Mem. in Supp., [Docket No. 164], 1-2).

The morning of July 13, 2018, prior to the scheduled Motion Hearing, the parties filed a Joint Stipulation on CM/ECF further narrowing the scope of the issues before the Court. [Docket No. 185]. In addition, at an in-person supplemental meet-and-confer just prior to the Motion

Hearing, counsel for the parties were able to further limit the issues before the Court, as clarified during the Motion Hearing, to the following three general areas:  (1) production of Incident Reports No. 22522, 22689, 22979, and 23066; (2) Polaris' testing data related to exhaust heat issues, Polaris' recall kit, and Polaris' service advisory kit; and (3) 99 documents withheld under an assertion of attorney-client privilege and/or attorney work product. (July 13, 2018, Motion Hearing, Digital Record, 2:26-2:30, 2:39-43, 2:54-56, 2:58-3:00). After the Motion Hearing, on July 16, 2018, Plaintiffs informed the Court by way of a filing on CM/ECF that as to the third area in dispute (allegedly privileged documents), they now further restrict their present Motion to Compel, [Docket No. 158], to documents identified in 44 entries on the Second Amended Privilege Log. [Docket No. 187].

## II.   PLAINTIFFS' MOTION TO COMPEL, [DOCKET NO. 158]

### A.  Standards of Review

Federal Rule of Civil Procedure 26(b)(1) states:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Courts generally have construed Rule 26(b)(1) broadly. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); see also, Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992) (Rule 26 "is liberal in scope and interpretation, extending to those matters which are relevant"). However, "discovery may not be had on matters irrelevant to the subject matter involved in the pending action." Miscellaneous Docket Matter #1 v. Miscellaneous Docket Matter #2, 197 F.3d 922, 925 (8th Cir. 1999). The required threshold showing of relevance "is met if the information

sought is 'relevant to the subject matter involved in the pending action.'" <u>Orduno v. Pietrzak</u>, No. 14-cv-1393 (ADM/JSM), 2016 WL 5853723, *3 (D. Minn. Oct. 5, 2016) (quoting <u>Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minn.</u>, 187 F.R.D. 578, 579 (D. Minn. 1999)). The party seeking discovery is responsible for making the threshold showing of relevance before production of information is required. <u>See</u>, <u>Hofer</u>, 981 F.3d at 380. If that threshold showing is made, the party resisting production then bears the burden of establishing a lack of relevancy or undue burden. <u>See</u>, <u>Mallak v. Aitkin County</u>, No. 13-cv-2119 (DWF/LIB), 2016 WL 9088760. *5 (D. Minn. Dec. 22, 2016).

### B.  Analysis

#### 1. Incident Reports

As set forth above, and as clarified at the July 13, 2018, Motion Hearing, Plaintiffs seek an Order compelling Polaris to produce Incident Reports No. 22522, 22689, 22979, and 23066 (hereinafter referred to as "the Incident Reports"). Polaris represented at the July 13, 2018, Motion Hearing that the Incident Reports relate only to a "preproduction model 570 that had a completely redesigned heat shield [and a] completely redesigned exhaust system." (July 13, 2018, Motion Hearing Transcript, [Docket No. 192], 8). Polaris further advised the Court that by the use of the term "preproduction," Polaris intended to indicate that the 570 models discussed in the Incident Reports were developmental versions of the 570 that Polaris never sold or offered in the market. (<u>Id.</u> at 10-11).

Plaintiffs argue that the Incident Reports are nevertheless relevant. First, Plaintiffs allege that the Incident Reports are relevant to the claims and defenses in this case as a result of certain testimony given at a deposition of Polaris employee Jason Fields. (<u>Id.</u> at 5-6; Mem. in Supp., [Docket No. 164], 13). In their Memorandum in Support of the present Motion to Compel and at

the July 13, 2018, Motion Hearing, Plaintiffs generally characterized the nature of this testimony as involving "changed test procedures" at Polaris and whether the changes in design of the ATVs was related to the models' heat issues, and they cited to Mr. Fields' deposition, a transcript of which they represent is "forthcoming." (Id.; July 13, 2018, Motion Hearing Transcript, [Docket No. 192], 6). However, no such transcript has ever been provided to the Court, and it is Plaintiffs' responsibility, as the parties seeking production of discovery, to make the threshold showing of relevance. See, Hofer, 981 F.3d at 380. Plaintiffs' relevancy argument based on the present record necessarily fails.

Second, at the July 13, 2018, Motion Hearing, Plaintiffs also argued that the Incident Reports are relevant to determine whether "changes in the later models decreased exhaust heat problems or intended to" do so, because such information relates to the adequacy of the recall and repair efforts Polaris took with respect to the allegedly defective Sportsman ATV models at issue in the present case. (July 13, 2018, Motion Hearing Transcript, [Docket No. 192], 6).

However, the record before the Court includes a Declaration from Mr. Fields in which he states that the Incident Reports now in dispute relate only to ATV models that "have difference exhaust system design, body styling, and heat management configurations" than the allegedly defective models now at issue in the present litigation, and the Incident Reports "do not relate to or implicate performance, thermal, or heat issues involving" the models that underlie the present litigation. (Fields Dec., [Docket No. 181], 4 (filed under seal)). Polaris similarly represented at the July 13, 2018, Motion Hearing that the preproduction models to which the Incident Reports are related are models that had "a completely redesigned engine for a different purpose." (July 13, 2018, Motion Hearing Transcript, [Docket No. 192], 9).

The record now before the Court supports a conclusion that the Incident Reports Plaintiffs seek through the present Motion to Compel relate only to preproduction ATV models never sold in the market and which have a completely different design, body style, engine, exhaust system, and heat management configuration than the ATV models at the heart of the present case; a representation which Plaintiffs do not dispute.

The Court finds that based upon the complete change in platform between the model years at the heart of this litigation and the preproduction models referred to in the four Incident Reports, the Incident Reports are not relevant to any claim or defense in the present case. The systemic changes in the design and engineering of the preproduction models in the Incident Reports further prevents the possibility that any reasonable inference could be drawn therefrom regarding the former designs that led to the present litigation.

Accordingly, to the extent that Plaintiffs seek an Order directing Polaris to produce Incident Reports No. 22522, 22689, 22979, and 23066, the Motion to Compel, [Docket No. 158], is **denied**.

### 2. Testing Data and Charts

As set forth above, in June 2018, at Plaintiffs' request, Polaris produced "some" underlying testing data and charts, and Polaris agreed to produce additional "underlying testing for two specific tests," but would not commit to produce by June 29, 2018, "all the underlying testing data and charts for its testing of Sportsman ATVs related to exhaust heat issues." (Mem. in Supp., [Docket No. 164], 5-6). In its initial Motion to Compel and Memorandum in Support thereof, Plaintiffs sought "underlying data and charts for its testing of Sportsman ATVs related to exhaust heat issues." (Mem. in Supp., [Docket No. 164], 5).

On July 10, 2018, Polaris filed its Memorandum in Opposition to the present Motion to Compel, in which it argued that Plaintiffs' request for an Order compelling testing data and charts

was moot, as "Polaris has agreed to produce any non-privileged, responsive testing data it identifies . . . by July 29, 2018—the date requested by plaintiffs." (Mem. in Opp., [Docket No. 174], 10-11 (filed under seal)).

In the Joint Stipulation filed by the Parties the morning of the scheduled Motion Hearing, the parties represented again that "Polaris has agreed to conduct a reasonable search for and produce non-privileged testing data and charts related to the Sportsman [Model Year] 2009-2019 570 and [Model Year] 2009-2016 850/1000 ATV exhaust heat issues by July 29, 2018. The parties continue to disagree over whether the testing data and charts for the remaining models and years should be produced." ([Docket No. 185], 1). After conducting a supplemental meet-and-confer immediately prior to the July 13, 2018, Motion Hearing to clarify the issues that remained before the Court, the parties advised the Court that Plaintiffs seek an Order directing Polaris to produce the following three categories of testing data and charts:  (1) "pre-production 570s"; (2) "[Model Year] 2017-2019 850/1000s"; and (3) "All other Sportsman ATVs developed since 2009 whether sold or not." (July 13, 2018, Motion Hearing Transcript, [Docket No. 192], 12).

As the Court noted on the record at the July 13, 2018, Motion Hearing, the three categories identified by Plaintiffs for the first time on that date appeared to differ from the production sought in the initial Motion to Compel as served by Plaintiffs and responded to by Polaris. (Id. at 12-13). For the first time at the July 13, 2018, Motion Hearing, Plaintiffs asserted that the testing data and charts they now seek are responsive to Document Requests No. 6 and 7 of their First Set of Requests for Production of Documents and, as such, should have been produced already. (Id. at 14).

In their First Set of Requests for Production of Documents, Plaintiffs defined "Sportsman ATV" as "any ATV sold by Polaris under the brand name Sportsman." (Plf. Exh. 2, [Docket No.

164-3], 5). Moreover, Plaintiffs stated therein: "Unless otherwise specified, the time period applicable to each interrogatory [*sic*] below is from January 1, 2008, to the present." (Id. at 6). Document Requests No. 6 and 7 and Polaris' subsequent answers are as follows:

> **REQUEST NO. 6:** Produce all documents, summaries, and analysis related to any Failure Mode and Effects Analysis (FMEA), Design Failure Mode Analysis (DFMA) or other similar analysis performed on the design and assembly of the exhaust system of the Sportsman ATVs.
>
> **RESPONSE TO REQUEST NO. 6:**
> Subject to and without waiving its objections, Polaris refers plaintiff to engineering analysis presentations related to the 2015-2016 Sportsman 850/1000 thermal protection issues and related documents produced previously as [list of Bates numbers].
> Polaris will produce engineering analysis presentations related to the [Model Year] 2014-2017 Sportsman 570 ATV heat-management issues.
> To the extent plaintiffs seek more, Polaris objects to this request as vague, ambiguous, and overly broad in its use of the term "all" and the phrase "the exhaust system of the Sportsman ATVs." Asking for "all" documents is overly broad, vague and unacceptable. As noted [in Polaris' general objections to Plaintiffs' First Set of Requests for Production], Plaintiffs' proposed class includes at least 28 models over a span of seven model years. These models differ materially in ways directly related to exhaust heat, including with respect to the design of various models' exhaust systems. As such, this request seeks information that is not relevant and not proportional to the needs of this case. Finally, Polaris does not interpret these requests for production to ask for information [that is protected by any applicable privilege]. Polaris further objects to the request for "all documents" and "other similar analysis" as not describing the request with reasonable particularity.
>
> **REQUEST NO. 7:** Produce all documents, including all developmental testing data, testing indexes [*sic*], reviews, analyses, presentations, and memoranda regarding all preproduction testing and validation of Sportsman ATVs' exhaust system.
>
> **RESPONSE TO REQUEST NO. 7:**
> Subject to and without waiving its objections, Polaris produces exhaust emission standards and validation testing of the Sportsman 570 and 850/1000 model ATVs as [Bates numbers]. Polaris produces sound and spark arrestor test reports as [Bates numbers]. Polaris refers to testing discussed in engineering analysis presentations identified by Bates number previously in response to Request No. 6. Finally, Polaris continues to search for additional testing documents relevant to thermal protection and heat-management, and will produce them, if any are located.

To the extent plaintiffs seek more, Polaris objects to this request as failing to describe with reasonable particularity each item or category of items requested. The use of the term "all" and the phrase "Sportsman ATVs' exhaust system" is vague, ambiguous, and overly broad. Asking for "all" documents is overly broad, vague, and unacceptable. Plaintiffs' proposed class includes at least 28 models over a span of seven model years. These models differ materially in ways directly related to exhaust heat, including with respect to the design of various models' exhaust systems. Polaris further objects to this request as seeking information that is not relevant and not proportional to the needs of this case.

(Plfs. Supp. Exh. 1, [Docket No. 187-1], 9-12) (citations omitted).

### a.  Testing Data regarding "Pre-Production 570s"

After an independent review of Plaintiffs' First Set of Requests for Production of Documents, the Court agrees with Plaintiffs that at least Document Request No. 7 from Plaintiffs' First Set of Document Requests can reasonably be read to encompass data regarding preproduction testing of 570 models. However, despite Plaintiffs' assertion at the July 13, 2018, Motion Hearing that this category remains in dispute, the representations to the Court show otherwise. Specifically, in the Joint Stipulation filed on July 13, 2018, prior to the Motion Hearing, Polaris agreed to "produce non-privileged testing data and charts related to the Sportsman [Model Year] 2009-2019 570." ([Docket No. 185], 1). From the record now before the Court, this is the information Plaintiffs seek in their first category as described at the July 13, 2018, Motion Hearing.

Accordingly, as Polaris has agreed to produce the information sought, to the extent that Plaintiffs seek an Order directing Polaris to produce testing data and charts regarding prep-production 570s, Plaintiffs' Motion to Compel, [Docket No. 158], is **granted**.

### b.  Testing Data regarding "[Model Year] 2017-2019 850/1000s"

At the July 13, 2018, Motion Hearing, Polaris asserted that the production of testing data related to 850/1000s from model years 2017 through 2019 was specifically requested by Plaintiffs for the first time at the supplemental meet and confer immediately prior to the Motion Hearing.

11

(July 13, 2018, Motion Hearing Transcript, [Docket No. 192], 19-20). When asked whether this representation was accurate, as already noted, Plaintiffs' counsel directed the Court to Document Requests Nos. 6 and 7 from Plaintiffs' First Set of Requests for Production of Documents, asserting that the requested information is encompassed therein. (July 13, 2018, Motion Hearing Transcript, [Docket No. 192], 21-22). The Court has independently reviewed Document Requests Nos. 6 and 7 and Polaris' Responses thereto, which were only provided to the Court after the July 13, 2018, Motion Hearing.[2]

Polaris' Responses to Document Request Nos. 6 and 7 make clear that Polaris did not contemplate that responsive information thereto included production of testing data related to 850/1000s from model years 2017 through 2019. First, in its Response to Document Request No. 6, with regard to the Sportsman 850/1000s, Polaris "refer[red] plaintiff[s] to engineering analysis presentations related to the 2015-2016 Sportsman 850/1000 thermal protection issues and related documents produced previously," which it identified by Bates number. (Plfs. Supp. Exh. 1, [Docket No. 187-1], 9). Moreover, Polaris continued by specifically objecting to Document Request No. 6—as it also did to Document Request No. 7—to the extent that it sought additional information, asserting that the Document Request was overbroad for seeking "all" information related to all Sportsman models, which "includes at least 28 models over a span of seven model

---

[2] Local Rule 37.1 requires that any motion brought under Federal Rule of Civil Procedure 37—such as the present Motion to Compel, [Docket No. 158]—"must contain, either in the motion itself or in the accompanying memorandum . . . (c) the text (which may appear in an exhibit to which the motion or memorandum refers) of any interrogatory, request, question, or notice in dispute, together with each answer, response, or objection to any such interrogatory, request, question, or notice." Plaintiffs attached their First Set of Requests for Production of Documents to their Memorandum in Support. (See, Plfs. Exh. 2, [Docket No. 164-3]). However, in doing so, Plaintiffs violated Local Rule 7.1(l), which mandates:  "Parties must not file affidavits or exhibits as attachments to a memorandum they support. Instead, such affidavits and exhibits must be filed separately. Exhibits must be accompanied by an index . . . that identifies the exhibits." In addition, Plaintiffs did not provide the Court with Polaris' Responses to the relevant Document Requests, as required by Local Rule 37.1(c), until after the July 13, 2018, Motion Hearing, when they did so only at the Court's direction. (See, Kafka Dec., [Docket No. 187], 1; Plfs. Supp. Exh. 1, [Docket No. 187-1]). Finally, to the extent that Plaintiffs included additional argument in their supplemental exhibits, that argument is not considered, as the Court did not grant Plaintiffs leave to further supplement their argument, post-hearing.

years." (Id. at 9-12). These specific objections by Polaris, combined with the specificity of its Response to Document Request No. 6, undermine Plaintiffs' argument that until the meet-and-confer just prior to the July 13, 2018, Motion Hearing, Plaintiffs had no way of knowing that Polaris was withholding testing data related to 850/1000s from model years 2017 through 2019 because Polaris "would not state what data they were [sic] withholding [or] the basis for the objections." (July 13, 2018, Motion Hearing Transcript, [Docket No. 192], 21).

However, despite Polaris' Responses to the Document Requests quoted herein, Plaintiffs did not specifically identify testing data related to model year 2017 to 2019 850/1000s as a subject of their present Motion to Compel, [Docket No. 158], in any of Plaintiffs' written submissions to the Court. As a result, the issue was not fully briefed, it is untimely, and Polaris did not have adequate opportunity to formulate a response to the request for an Order compelling production of the information. Thus, the Court will not consider the argument at this time. See, Halsne v. Avera Health, No. 12-cv-2409 (SRN/JJG), 2013 WL 12151523, *3 (D. Minn. Feb. 14, 2013) (declining to consider argument raised for first time at the hearing on the motion), affirmed at 2013 WL 3088588 (D. Minn. June 18, 2013); Anspach v. United of Omaha Life Ins. Co., Civ. No. 10-5080-JLV, 2011 WL 3862267, *2 n.2 (D. S.D. Aug. 31, 2011) (declining to address untimely arguments regarding discovery and noting that "[a]ny other approach would encourage parties to continually change the issues at each new stage of a discovery dispute"); see, also, Berbig v. Sears Roebuck & Co., 568 F. Supp. 2d 1033, 1040 n.10 (D. Minn. 2008) ("Generally, the Court does not consider arguments raised for the first time in a Reply").

Accordingly, because Plaintiffs' Motion to Compel and written documents filed in support thereof did not seek an Order compelling the production of testing data related to Model Year 2017

to 2019 850/1000s, to the extent that Plaintiffs now seek to request such an Order through the present Motion to Compel, [Docket No. 158], that request is **denied**.

### c.   Testing Data regarding "[a]ll other Sportsman ATVs developed since 2009 whether sold or not"

Similarly, Plaintiffs' request for testing data regarding "[a]ll other Sportsman ATVs developed since 2009 whether sold or not" was not specifically articulated in Plaintiffs' Motion to Compel, [Docket No. 158], or the written submissions in support thereof. Moreover, Polaris' Responses to Plaintiffs' Document Request Nos. 6 and 7 clearly objected to those Requests on the ground that they were overbroad to the extent that they sought "all" documents related to all Sportsman ATVs. (Plfs. Supp. Exh. 1, [Docket No. 187-1], 9-12). For the reasons already stated above, Plaintiffs' attempt to seek this information through the present Motion to Compel yet identifying it only for the first time on the day of the July 13, 2018, Motion Hearing is inappropriate.

Moreover, the Court agrees with Polaris that, as written, a request for testing data regarding "[a]ll Sportsman ATVs developed since 2009 whether sold or not" is overbroad and seeks irrelevant information. According to Polaris, such a request would include all testing data for "at least 28 models over a span of [at least] seven model years." (Plfs. Supp. Exh. 1, [Docket No. 187-1], 9-12). It would include testing results related to models which were never sold to the public, models which are not presently at issue in this litigation, and models with materially different heating and exhaust systems than the models that underlie the present litigation.

Accordingly, to the extent that Plaintiffs now seek an Order directing production of "[a]ll Sportsman ATV's developed since 2009 whether sold or not" through their Motion to Compel, [Docket No. 158], that request is **denied**.

### 3. Documents withheld as Privileged

As clarified by the parties' August 6, 2018, Joint Letter, Plaintiffs challenge 44 documents as being improperly withheld. (Joint Letter, [Docket No. 196], 1; Exh. 1, [Docket No. 196-1]). As initially described by Polaris, these documents "consist of 44 draft PowerPoint slides (including embedded spreadsheets) created at the request of Polaris' in-house counsel for its review in advance of presentation to the [Consumer Product Safety Commission ('CPSC')]." (Mem. in Opp., [Docket No. 174], 21) (filed under temporary seal).

In the August 6, 2018, Joint Letter, Polaris states that the 44 documents in question "consist of Microsoft PowerPoint presentations, Microsoft Outlook notes, Microsoft Excel spreadsheets, Microsoft Word documents, and Adobe PDF documents." ([Docket No. 196], 1). Attached to the August 6, 2018, Joint Letter is an excerpt of the "June 5, 2018, First Amended Privilege Log of Defendant Polaris Industries, Inc." that purportedly identifies "[t]he 44 withheld documents still remaining at issue." (See, Aug. 6, 2018, Joint Letter, [Docket No. 196-1], 1; Exh. 1, [Docket No. 196-1], 1). Unfortunately, as the parties are aware, the June 5, 2018, First Amended Privilege Log is neither the most recent privilege log, nor was it the operative privilege log at the time of the July 13, 2018, Motion Hearing. Polaris produced a "Revised First Amended Privilege" on July 9, 2018, which was submitted to the Court at the July 13, 2018, Motion Hearing and later filed on CM/ECF. (See, July 13, 2018, Motion Hearing Transcript, 25; Kafka Exh. 4, [Docket No. 187-4]). It is unclear to the Court why the parties, in their most recent submission, have reverted to providing excerpts of a now-inoperative privilege log.

However, the Court has undertaken an independent comparison of the excerpts most recently provided by the parties and the July 9, 2018, Revised First Amended Privilege Log, and

it therefore analyzes the most current iteration of the privilege log, identifying the entries in dispute by way of the Bates numbers as listed in the attachment to the parties' August 6, 2018, letter.

In Polaris' Memorandum in Opposition to the present Motion to Compel Production of Documents, it argued that the documents it designated as belonging to Category 3 "are privileged work product." (Mem. in Opp., [Docket No. 174], 21-22) (filed under temporary seal). Moreover, at the July 13, 2018, Motion Hearing, Polaris argued that the documents in Category 3 were being withheld from production on the basis of the attorney work product doctrine. (July 13, 2018, Motion Hearing Transcript, [Docket No. 192], 36-39). Accordingly, in all of its representations to the Court concerning the present motion, Polaris has indicated that the documents now at issue were being withheld on the basis of their designation as attorney work product, and not on the basis of attorney-client privilege.

Nevertheless, the July 9, 2018, Revised First Amended Privilege Log and the excerpts of the June 5, 2018, First Amended Privilege Log provided in the August 6, 2018, letter designate four of the documents now in dispute as being withheld only on the basis of attorney-client privilege. (See, [Docket No. 196-1], 4; see, also, [Docket No. 187-4], 19-20). These documents— PRIV2_00407, 00414, 00421, and 00427—have not been designated on any privilege log submitted to this Court as being withheld as privileged attorney work product. Accordingly, because Polaris has not presented any argument to the Court regarding withholding the documents now at issue other than the attorney work product doctrine, Polaris has failed to meet its burden to show that PRIV2_00407, 00414, 00421, and 00427 are being properly withheld. Thus, to the extent that Plaintiffs seek an Order compelling the production of PRIV2_00407, 00414, 00421, and 00427, Plaintiffs' Motion to Compel Production of Documents, [Docket No. 158], is **granted**.

Polaris argues that the remaining documents are privileged work product and, as such, need not be disclosed. (Mem. in Opp., [Docket No. 174], 21) (filed under temporary seal); July 13, 2018, Motion Hearing Transcript, [Docket No. 192], 36-39). For their part, Plaintiffs contend that the documents are not privileged because, standing alone, the privilege log entries for these documents do not reflect that they include an attorney's mental impressions, advice, or legal strategy.[3] (July 13, 2018, Motion Hearing Transcript, [Docket No. 192], 37).

"The work product doctrine 'is designed to promote the operation of the adversary system by ensuring that a party cannot obtain materials that his opponent has prepared in anticipation of litigation.'" Kushner v. Buhta, 322 F.R.D. 494, 498 (D. Minn. 2017) (citation omitted). Federal Rule of Civil Procedure 26(B)(3) provides:

> **(A)** Ordinarily, a party may not discover documents . . . that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . . But, subject to Rule 26(b)(4), those materials may be discovered if:
> > **(i)** they are otherwise discoverable under Rule 26(b)(1); and
> > **(ii)** the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

The question before the Court is whether Polaris' Privilege Log sufficiently establishes that the disputed documents are protected from production in discovery as attorney work product. "The

---

[3] Plaintiffs also argued at the July 13, 2018, Motion Hearing that the Second Amended Privilege Log indicates that 13 of the documents were created prior to the CPSC investigation, which Plaintiffs assert belies Polaris' claim that they were created in relation to a CPSC presentation. (July 13, 2018, Motion Hearing Transcript, [Docket No. 192], 37). However, based upon the record now before the Court, Plaintiffs raised this argument for the first time at the July 13, 2018, Motion Hearing. Therefore, because the argument was not raised in the written submissions to the Court or in the meet-and-confers prior to the filing of the Motion to Compel, [Docket No. 158], or even in the supplemental meet-and-confer that occurred immediately prior to the July 13, 2018, Motion Hearing, Polaris did not have adequate opportunity to respond to this argument, and the Court will not consider it when deciding the present Motion to Compel.

party asserting work product protection bears the burden of demonstrating that the information is covered by the doctrine." Kushner, 322 F.R.D. at 498 (citation omitted).

> Federal Rule of Civil Procedure 26(b)(5)(A) mandates:
>
> When a party withholds information otherwise discoverable by claiming that the information is privileged . . . , the party must:  . . . (ii) describe the nature of the documents . . . not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable the other parties to assess the claim.

"'[T]he privilege log is a convention of modern legal practice designed to conform with the requirements of [Rule] 26(b)(5).'" Honeywell Int'l Inc. v. Furuno Elec. Co., No. 09-cv-3601 (MJD/TNL), 2013 WL 2385224, *2 (D. Minn. May 30, 2013) (citation omitted). "'[T]he opposing party should be able, from the entry in the log itself, to assess whether the claim of privilege is valid.'" Id. at *3 (citation omitted). The party withholding documents as privileged bears the burden of providing a factual basis in the privilege log that justifies the withholding. See, Triple Five of Minn., Inc. v. Simon, 212 F.R.D. 523, 527-28 (D. Minn. 2002).

The excerpts from Polaris' First Amended Privilege Log as provided to the Court for the now-disputed documents are repetitive and are addressed below in groups that share the same general descriptions. First, three documents—PRIV2_00031, 00180, and 00182—are described as follows:  "This draft presentation reflects legal advice of in-house counsel and [work conducted/work product] created at the direction of counsel related to Sportsman [thermal/heat] management." ([Docket No. 196-1], 2-3 ; [Docket No. 187-4], 3, 9). As already noted above, the work product doctrine—which is the only basis asserted to the Court for withholding currently argued by Polaris—"'ensur[es] that a party cannot obtain materials that his opponent has prepared in anticipation of litigation.'" Kushner, 322 F.R.D. at 498 (emphasis added and citation omitted). The description quoted above does not even allege that the documents so described were prepared

in anticipation of any litigation. Thus, on the face of the July 9, 2018, Revised First Amended Privilege Log, Polaris has failed to adequately allege a factual basis that justifies withholding these documents as privileged under the work product doctrine. Thus, to the extent that Plaintiffs seek an Order compelling the production of PRIV2_00031, 00180, and 00182, Plaintiffs' Motion to Compel Production of Documents, [Docket No. 158], is **granted**.

Second: one document—PRIV2_00945—is described as a "draft document [that] reveals legal advice and is work product created at the direction of counsel concerning the pending litigation." ([Docket No. 196-1], 4; [Docket No. 187-4], 41). While more detail regarding or identifying "the pending litigation" would have been helpful, in the context of the other entries, it is a minimally sufficient description of the document that alleges the requirements for withholding a document as privileged work product.

Third: the wording of the remaining entries on the July 9, 2018, Revised First Amended Privilege Log varies somewhat, but they all indicate that the documents described therein reflect or contain work of counsel or materials created at the direction of counsel in anticipation of or in conjunction with a CPSC investigation and proceedings. ([Docket No. 196-1], 2-4; [Docket No. 187-4], 3-5, 7-10, 12-14, 17, 22, 25, 31, 33, 36, 41). Although neither this Court nor the Eighth Circuit has spoken directly to whether proceedings involving the CPSC constitute "litigation" for purposes of the work-product doctrine, at least one other Federal Court has so held. See, Othon v. The Bon-ton Dept. Stores, Inc., No 4:11-CV-00379-SMR-CFB, 2013 WL 12085170, *2 (S.D. Ia. April 3, 2013). Moreover, Plaintiffs do not argue to the contrary. Therefore, because the remaining entries on the July 9, 2018, Revised First Amended Privilege Log indicate that they reflect the work of legal counsel regarding the CPSC investigation and proceedings or they are draft

documents that were prepared in anticipation of or conjunction with the CPSC investigation and proceedings, Polaris has met its burden with respect to withholding these documents.

However, it needs be observed that even where documents are protected from discovery by the work-product doctrine, the Court may still order them produced in discovery if "they are otherwise discoverable under Rule 26(b)(1)" and Plaintiffs show that they have "substantial need for the materials to prepare [their] case and cannot, without undue hardship, obtain [the materials'] substantial equivalent by other means." See, Fed. R. Civ. P. 26(b)(3)(A).

In the present case, Plaintiffs make no assertion or showing of substantial need with respect to one document, PRIV2_00945, asserted as being withheld under the work product doctrine because it was prepared in anticipation of the present litigation. Accordingly, to the extent that the present motion seeks production of the document described on the July 9, 2018, Revised First Amended Privilege Log as PRIV2_00945, Plaintiffs' Motion to Compel, [Docket No. 158], is **denied.**

With respect to the other documents withheld as privileged work product created in anticipation of the CPSC proceedings and investigation, Plaintiffs believe that the withheld documents "predominately relate[] to Polaris' recall and service advisory," but Plaintiffs merely conclusorily assert their need for the information and their inability to secure the equivalent of the materials without undue hardship. (Mem. in Supp., [Docket No. 160], 22). However, Plaintiffs do not in any way further develop this argument. Instead, they state only that they "need to know how Polaris selected its recall and service advisory kits, and there is no substitute for the contemporaneous written conversations." (Id.). This single statement is insufficient to meet Plaintiffs' burden to show that they have substantial need for the withheld attorney work product documents and cannot obtain their "substantial equivalent" by other means without suffering

undue hardship. Accordingly, to the extent that it seeks production of the remainder of the documents now in dispute,[4] Plaintiffs' Motion to Compel, [Docket No. 158], is **denied.**

### III.   Conclusion

For the foregoing reasons, and based on all of the files, records, and proceedings herein,

**IT IS HEREBY ORDERED:**

**A.** That Plaintiffs' Motion to Compel, [Docket No. 158], is **GRANTED IN PART AND DENIED IN PART**, as follows:

1. With respect to testing data and charts regarding prep-production 570s, Plaintiffs' Motion to Compel, [Docket No. 158], is **granted**;

2. With respect to the documents identified on the July 9, 2018, Revised First Amended Privilege Log as PRIV2__00031, PRIV2_00180, PRIV2__182, PRIV2_00407, PRIV2_00414, PRIV2_00421, and PRIV2_00427, Plaintiffs' Motion to Compel, [Docket No. 158], is **granted**; and

3. In all other respects, Plaintiffs' Motion to Compel, [Docket No. 158], is **denied**.

Dated: August 15, 2018                          s/Leo I. Brisbois
                                                Leo I. Brisbois
                                                U.S. MAGISTRATE JUDGE

---

[4] These documents are identified by the parties and on the various privilege logs as PRIV2_00037, 0042, 00043, 00049, 00055, 00060, 00065, 00071, 00077, 00072, 00088, 00119, 00120, 00149, 00151, 00154, 00156, 00157, 00159, 00162, 00165, 00170, 00183, 00199, 00247, 00250, 00277, 00280, 00307, 00365, 00483, 00547, 00712, 00748, 00750, 00815, and 00945. (See, [Docket No. 196-1]).