UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Riley Johannessohn, et al., | Court File No. 16-cv-3348 (NEB/LIB) |
| Plaintiffs, | |
| v. | **ORDER** |
| Polaris Industries, Inc., | |
| Defendant. | |

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment made in accordance with the provisions of 28 U.S.C. § 636, and upon Plaintiffs' Motion for Leave to Amend the Second Amended Complaint to Add Punitive Damages (hereinafter "Motion to Amend"). [Docket No. 208]. The Court held a Motions Hearing regarding the present Motion on November 26, 2018, at the end of which the Court took Plaintiffs' Motion to Amend under advisement. (Minutes [Docket No. 294]).

For the reasons discussed below, Plaintiffs' Motion to Amend, [Docket No. 208], is **DENIED without prejudice**.

I. **Background**

>This case arises out of an alleged design defect in four-wheel all-terrain vehicles ("ATVs") manufactured by defendant Polaris Industries, Inc. ("Polaris"). Plaintiffs [Riley Johannessohn, Daniel C. Badilla, James Kelley, Kevin R. Wonders, William Bates, and James Pinion] bring this action on behalf of themselves and a putative class of purchasers, asserting various consumer-protection claims and a claim for breach of the implied warranty of merchantability.
>
>. . .
>
>Polaris is a manufacturer of boats, snowmobiles, and recreational ATVs. Polaris makes several different models of ATVs sold under the name "Sportsman." Polaris

> has 1,800 dealers in North America. In 2015, Polaris had overall sales of $4.7 billion and net profit of $455 million.
>
> Plaintiffs are seven individuals living, respectively, in Minnesota, California, Florida, Illinois, Missouri, New York, and North Carolina. Plaintiffs allege that they purchased new Sportsman ATVs in 2015 and 2016, and that their ATVs were manufactured between 2009 and 2016. Plaintiffs allege that their Sportsman ATVs are defectively designed because the exhaust pipe is routed next to the rider's leg and then directly under the rider's seat toward the right rear tire. As a result, plaintiffs say, riders are exposed to temperatures of up to nearly 250 degrees Fahrenheit. According to plaintiffs, the heat not only can cause injury to the rider, but also can cause components such as the seat, seat base, fender, foot well, and side covers to melt.
>
> Plaintiffs seek to represent a nationwide class of consumers who purchased Sportsman ATVs between October 4, 2010 and October 4, 2016. Alternatively if the Court finds that Minnesota law does not apply to all purchases of Sportsman ATVs in the United States, plaintiffs seek to represent seven subclasses of Sportsman purchasers, one for each of their states of residence.

(Order on Motion to Dismiss, [Docket No. 42], at 1–3 (citations omitted)).

Plaintiffs initiated the present case on October 4, 2016, by filing their Complaint with this Court. [Docket No. 1]. On November 16, 2016, Plaintiffs filed their Amended Complaint. [Docket No. 23].

On December 30, 2016, Polaris filed a Motion to Dismiss. [Docket No. 30]. United States District Judge Patrick J. Schiltz[1] held a hearing on the Motion to Dismiss, and, on June 27, 2017, Judge Schiltz granted the Motion to Dismiss in part and denied it in part. [Docket No. 42]. Thereafter, on August 18, 2017, Plaintiffs filed the now operative Corrected Second Amended Class Action Complaint. [Docket No. 66].

---

[1] The present case was initially assigned to the Honorable Patrick J. Schiltz; however, on September 19, 2018, the present case was reassigned to the Honorable Nancy E. Brasel. (Text Only Entry [Docket No. 205]).

On February 26, 2018, Judge Schiltz, pursuant to a stipulation of the parties, dismissed Ronald Krans' as a named Plaintiff, as well as, all allegations and claims related to Mr. Krans and Illinois law. (Order [Docket No. 143]).

Although Plaintiffs seek to represent a nationwide class of consumers who purchased Sportsman ATVs between October 4, 2010, and October 4, 2016, or in the alternative subclasses of Sportsman purchasers by state, no such class has yet been certified. In fact, no motion to certify a class has yet even been filed.

## II.   Plaintiffs' Motion to Amend. [Docket No. 208].

Plaintiffs' Motion to Amend, [Docket No. 208], seeks leave of this Court to amend Plaintiffs' Corrected Second Amended Complaint "to add claims for punitive damages under Minnesota Law and/or the law of states covered by the" Corrected Second Amended Complaint "where punitive damages are available."

Plaintiffs believe that Minnesota law controls the present matter, and therefore, all Plaintiffs (apparently whether named or presently unnamed) should be allowed to plead a claim for punitive damages under Minnesota law. (See, November 26, 2018, Motions Hearing, Digital Record at 3:06–3:08).

In their Memorandum in support of the present Motion, Plaintiffs generically suggest that in addition to seeking to add claims for punitive damages on behalf of the nationwide class under Minnesota law, Plaintiffs also seek to "include[] punitive damages claims under the state laws of those Plaintiffs where such claims are permitted" in the event that subclasses are certified "[b]ecause it has not been determined if Minnesota law applies." (Plfs.' Mem., [Docket No. 214], at 2 n. 1). However, although Plaintiffs assert that they wish to add alternative punitive damages claims on behalf of the state subclasses in addition to the nationwide class based claims under

Minnesota law, Plaintiffs' analysis on their being able to assert punitive damages claims on behalf of state subclasses is largely perfunctory. (See, Plfs.' Mem., [Docket No. 214], at 31–35). Plaintiffs do not attempt to discuss how Defendant's conduct applies to any group of plaintiffs in a particular state. (See, Plfs.' Mem., [Docket No. 214], at 31–35).[2] In any event, it is evident to the Court, Plaintiff's Motion to Amend really seeks predominately to assert only nationwide class based punitive damages claims under Minnesota law.

Moreover, Plaintiffs' Motion to Amend, [Docket No. 208], does not seek to assert punitive damages claims on behalf of any of the currently named Plaintiffs individually. This is evident by Plaintiffs Memorandum in support of the present Motion which discusses the assertion of punitive damages claims solely in the context of class claims. (See, Plfs.' Mem. [Docket No. 214]). Plaintiffs Memorandum does not discuss the allegations related to any specific named Plaintiff as applied to any standard by which a Plaintiff may plead a claim for punitive damages; rather, Plaintiffs' Memorandum principally discusses Defendants' conduct in relation to the putative nationwide class as a whole. (Id.).

In seeking to assert a claim for punitive damages on behalf of a prospective nationwide class, Plaintiffs are asking the undersigned to now assume a nationwide class will be certified and to further assume Minnesota state law will apply. These are assumptions the undersigned cannot properly make.

---

[2] For example, in asserting that Plaintiff may plead a punitive damages claim under California's Consumer Legal Remedies Act, Plaintiffs merely provide the Court with the standard of law by which such a claim may be asserted and three sentences which simply refer back to the discussion of Defendant's conduct in relation to the putative class as a whole under Minnesota law. (See, Id.).

4

If the undersigned were to assume[3] Minnesota law were to be applied, assume that a nationwide class will be certified, and grant Plaintiffs leave to amend their Complaint to assert a nationwide class based punitive damages claim, it would lead to potentially untenable results if a motion to certify a class is eventually made and Judge Brasel issued a decision declining to certify a nationwide class or finding that Minnesota law does not apply to all plaintiffs. For example, named Plaintiff James Pinion is a citizen and resident of North Carolina who, in addition to being included in the putative nationwide class, is asserting North Carolina state law claims which, Plaintiffs acknowledges, do not allow for punitive damages recovery; however, Plaintiffs seek to include named Plaintiff Pinion in the nationwide class based punitive damages claim. (See, Plfs.' Mot. [Docket No. 208]; November 26, 2018, Motions Hearing, Digital Record at 3:06–3:08). If the undersigned allowed a nationwide class based punitive damages claim on behalf of all plaintiffs, but no such class was certified, then the complaint in the present case would contain plaintiffs (such as Plaintiff Pinion) with asserted punitive damages claims based on other state law which does not allow for punitive damages.

Likewise, if the undersigned were to grant Plaintiffs' broader request to assert both a nationwide class based punitive damages claim, as well as, state subclass based punitive damages claims,[4] it would also potentially result in conflicting circumstances where the operative complaint

---

[3] The undersigned makes the assumptions contained in the present Order solely for the sake of argument. Making these assumptions solely for the sake of argument should not be construed as the undersigned expressing any opinion on the merit of class certification in the present case nor any opinion on the state law which will control.

[4] To the extent Plaintiffs assert that they can make such an assertion here in the alternative to their nationwide class based punitive damages claim, that issue has in fact not been properly placed before the Court. In their Memorandum, Plaintiffs' discussion of Defendant's conduct as related to the nationwide class as a whole is inapplicable to the individualized plaintiffs or to the plaintiffs as categorized by state. For example, Plaintiffs' Memorandum fails to discuss Defendant's conduct specific to the various ATV Sportsman models at issue in the present case. An analysis of a punitive damages claim relative to an individual Plaintiff and their individual state would necessary require a discussion of the model purchased by said Plaintiff relative to Defendant's conduct. No such discussion is contained within or implied by Plaintiffs' Memorandum. (See, Plfs.' Mem. [Docket No. 214]).

would include non-operative, non-compliant state subclass based punitive damages claims or non-operative, non-compliant nationwide class based punitive damages claims depending on how Judge Brasel may or may not grant any as yet unfiled motion to certify a class or state subclasses.

These are any number of other potential, and therefore, at present speculative, scenarios which would require Plaintiffs to once again move to amend their Complaint or require Defendant to move to strike the noncompliant portions of the Complaint. In the alternative, the Court would be required to reconsider any prior Order on the present Motion to correct any claims allowed that should not have been allowed. While such a situation would be correctable, it is not a judicial or efficient way to manage this litigation at present.

The undersigned can do no more than speculate and make assumptions as to what law will apply to the present case and whether or not a class (of any type) will be certified in the present case because, in the present case, choice of law questions and class certification motions are in the first instance reserved for Judge Brasel, the District Court Judge assigned to the present case. See, 28 U.S.C. § 636; LR 72.1. Deciding whether or not a nationwide class based punitive damages claim—or even a state based subclass punitive damages claim—may be asserted in the present case necessarily requires deciding the state law to be applicable to the present claims, as well as, whether or not any class of any type will be certified in the present case; the undersigned is not presently empowered to make those threshold decisions in this case.

Put simply, in the present case and at the present time, there are too many variables underlying the assertion of any class based claims for punitive damages for the Court to make an informed decision as to whether or not such claims may be plead.

Therefore, Plaintiffs' Motion to Amend, [Docket No. 208], is denied without prejudice as premature. The denial of Plaintiffs' Motion is without prejudice because Plaintiffs remain free to

renew their motion to assert a claim for punitive damages in front of the undersigned after decisions on class certification and related choice of law issues are issued if a motion to certify a class is actually timely made at some point in the future in the present case. If Plaintiffs choose to renew their motion, their renewed motion to assert punitive damages must be filed and the hearing thereon scheduled within thirty (30) days after the issuance of any decision on a class certification motion in the present case.

### III.  Conclusion

For the foregoing reasons, and based on all of the files, records, and proceedings herein,

**IT IS HEREBY ORDERED THAT** Plaintiffs' Motion to Amend, [Docket No. 208], is **DENIED without prejudice as premature**.

Dated: December 14, 2018              s/Leo I. Brisbois
                                     Leo I. Brisbois
                                     U.S. MAGISTRATE JUDGE