UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Riley Johannessohn, et al., | Case No. 16-cv-3348 (NEB/LIB) |
| Plaintiffs, | |
| v. | **ORDER** |
| Polaris Industries, Inc., | |
| Defendant. | |

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment made in accordance with the provisions of 28 U.S.C. § 636, and upon Defendant Polaris Industries, Inc.'s (hereinafter "Defendant") Motions for Further Consideration of Sealing. [Docket Nos. 430, 436, 442]. The Court took Defendant's Motions under advisement on Defendant's written submissions. (Order [Docket No. 448]).

For the reasons discussed below, Defendant's Motion for Further Consideration of Sealing, [Docket No. 430], is **GRANTED**; Defendant's Motion for Further Consideration of Sealing, [Docket No. 436], is **GRANTED**; and Defendant's Motion for Further Consideration of Sealing, [Docket No. 442], is **GRANTED**.

**I.   Background**

As this Court has previously explained,

> [t]his case arises out of an alleged design defect in four-wheel all-terrain vehicles ("ATVs") manufactured by defendant Polaris Industries, Inc. ("Polaris"). Plaintiffs [Riley Johannessohn, Daniel C. Badilla, James Kelley, Kevin R. Wonders, William Bates, and James Pinion] bring this action on behalf of themselves and a putative class of purchasers, asserting various consumer-protection claims and a claim for breach of the implied warranty of merchantability.
>
> . . .

> Polaris is a manufacturer of boats, snowmobiles, and recreational ATVs. Polaris makes several different models of ATVs sold under the name "Sportsman." Polaris has 1,800 dealers in North America. In 2015, Polaris had overall sales of $4.7 billion and net profit of $455 million.
>
> Plaintiffs are seven individuals living, respectively, in Minnesota, California, Florida, Illinois, Missouri, New York, and North Carolina. Plaintiffs allege that they purchased new Sportsman ATVs in 2015 and 2016, and that their ATVs were manufactured between 2009 and 2016. Plaintiffs allege that their Sportsman ATVs are defectively designed because the exhaust pipe is routed next to the rider's leg and then directly under the rider's seat toward the right rear tire. As a result, plaintiffs say, riders are exposed to temperatures of up to nearly 250 degrees Fahrenheit. According to plaintiffs, the heat not only can cause injury to the rider, but also can cause components such as the seat, seat base, fender, foot well, and side covers to melt.
>
> Plaintiffs seek to represent a nationwide class of consumers who purchased Sportsman ATVs between October 4, 2010 and October 4, 2016. Alternatively if the Court finds that Minnesota law does not apply to all purchases of Sportsman ATVs in the United States, plaintiffs seek to represent seven subclasses of Sportsman purchasers, one for each of their states of residence.

(Order on Motion to Dismiss, [Docket No. 42], at 1–3) (citations omitted).

Plaintiffs initiated the present case on October 4, 2016, by filing their Complaint with this Court. [Docket No. 1]. On November 16, 2016, Plaintiffs filed their Amended Complaint. [Docket No. 23].

On December 13, 2016, Polaris filed a Motion to Dismiss. [Docket No. 30]. United States District Judge Patrick J. Schiltz[1] held a hearing on the Motion to Dismiss, and, on June 27, 2017, Judge Schiltz granted the Motion to Dismiss in part and denied it in part. [Docket No. 42]. Thereafter, on August 18, 2017, Plaintiffs filed the now operative Corrected Second Amended Class Action Complaint. [Docket No. 66].

---

[1] The present case was initially assigned to the Honorable Patrick J. Schiltz; however, on September 19, 2018, the present case was reassigned to the Honorable Nancy E. Brasel. (Text Only Entry [Docket No. 205]).

2

On April 26, 2019, Plaintiffs filed their Motion to Certify Class. [Docket No. 332]. In the motion practice surrounding Plaintiffs' Motion to Certify Class, the parties filed several documents under temporary seal.

On June 19, 2019, Defendant filed its Motion for Summary Judgment. [Docket No. 356]. In the motion practice surrounding Defendant's Motion for Summary Judgment, the parties filed several documents under temporary seal.

On June 21, 2019, Defendant filed its "Motion to Exclude Expert Report Testimony of Sarah Butler and Richard J Eichmann Under Rule 702 and Daubert" (hereinafter "Motion to Exclude Expert Testimony"). [Docket No. 371]. In the motion practice surrounding Defendant's Motion to Exclude Expert Testimony, the parties filed several documents under temporary seal.

On August 9, 2019, the parties filed their Joint Motion Regarding Continued Sealing, [Docket No. 412], regarding the documents the parties again filed under temporary seal in the motion practice surrounding Plaintiffs' Motion to Certify Class.

On August 14, 2019, the parties filed their Joint Motion Regarding Continued Sealing, [Docket No. 413], regarding the documents the parties filed under temporary seal in the motion practice regarding Defendant's Motion for Summary Judgment.

On August 22, 2019, the parties filed their Joint Motion Regarding Continued Sealing, [Docket No. 414], regarding the documents the parties filed under temporary seal in the motion practice regarding Defendant's Motion to Exclude Expert Testimony.

Thereafter, the Court ordered that all the documents at issue in the parties three Joint Motions Regarding Continued Sealing, [Docket Nos. 412, 413, 414], be unsealed.

On October 23, 2019, the Honorable Nancy E. Brasel, the District Court Judge assigned to the present case, held a motions hearing at which she heard oral arguments on Plaintiffs'

Motion to Certify Class, [Docket No. 332]; Defendant's Motion for Summary Judgment, [Docket No. 356]; and Defendant's Motion to Exclude Expert Testimony. [Docket No. 371]. At the conclusion of said hearing, Judge Brasel took the parties' dispositive motions under advisement. Judge Brasel has not yet issue an Order resolving this Motions.

## II.     The Documents at Issue

Defendant's Motion for Further Consideration of Sealing, [Docket No. 430], seeks to maintain under continued seal the following documents: Docket Nos. 334, 337-1, 337-2, 337-3, 337-4, 337-5, 337-11, 337-12, 337-13, 339-4, 339-6, 339-11, 339-12, 339-15, 339-16, 339-18, 339-19, 339-20, 339-21, 339-22, 339-23, 339-25, 365, 368, 368-1, 368-3, 368-5, 368-9, 368-10, 368-11, 368-12, 368-13, 368-14, 368-17, 368-18, 368-19, 368-20, 368-22, 368-23, 368-24, 368-25, 368-26, and 368-27. These documents fall into four categories: (1) Defendant's product design and testing procedures and the analysis resulting from those procedures; (2) Defendant's competitive benchmark testing and analysis; (3) Defendant's financial and market analysis data; and (4) proprietary data Defendant obtained from J.D. Power. These documents were filed in the motion practice surrounding Plaintiffs' Motion to Certify Class.

Defendant's Motion for Further Consideration of Sealing, [Docket No. 436], seeks to maintain under continued seal the following documents: Docket Nos. 373, 376, 376-2, 376-4, 376-5, 376-10, 376-11, 397-2, 408, 408-1, 408-4, 409, and 411. These documents fall into three categories: (1) Defendant's competitive benchmark testing and analysis; (2) Defendant's financial and market analysis data; and (3) proprietary data Defendant obtained from J.D. Power. These documents were filed in the motions practice surrounding Defendant's Motion to Exclude Expert Testimony.

Defendant's Motion for Further Consideration of Sealing, [Docket No. 442], seeks to maintain under continued seal the following documents: Docket Nos. 360-1, 360-2, 360-3, 360-5, and 381. These documents fall into two categories: (1) Defendant's product testing procedures and the analysis resulting from those procedures and (2) Defendant's financial and market analysis data. These documents were filed in the motions practice surrounding Defendant's Motion for Summary Judgment.

### III.   Analysis

Motions for further consideration of sealing are governed by Local Rule 5.6(d)(3). Although Local Rule 5.6 does not explicitly set forth a standard of proof which parties must meet in order for the Court to change the prior sealing determinations made in the context of a joint motion regarding continued sealing under Local Rule 5.6(d)(2), the 2017 Advisory Committee Note to Rule 5.6 provides guidance regarding what must be shown in order for a document to be sealed under Local Rule 5.6. It states, in relevant part:

> [P]arties have been filing too much information under seal in civil cases . . . . As a general matter, the public does not have a right of access to information exchanged in discovery; thus, protective orders are often quite broad, covering entire documents or sets of documents produced during discovery, even when most or all of the contents are not particularly sensitive. But the public does have a qualified right of access to information that is filed with the court. Even if such information is covered by a protective order, that information should not be kept under seal unless a judge determines that a party or nonparty's need for confidentiality outweighs the public's right of access.

Although Local Rule 5.6 is relatively new, in addition to the undersigned several other United States Magistrate Judge for the District of Minnesota, and at least two District Court Judge for the District of Minnesota, have applied to a motion for further consideration of sealing certain well-established legal standards regarding sealing documents that have been filed with a Federal Court. See, e.g., In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig., No.

5

15-mdl-2666 (JNE/FLN), 2018 WL 3019901 (D. Minn. June 18, 2018); Blu Dot Design & Manufacturing, Inc. v. Stitch Industries, Inc., 17-cv-3208 (PJS/KMM), 2018 WL 1370533 (D. Minn. March 16, 2018); Feinwachs v. Minn. Hosp. Ass'n, No. 11-cv-8 (JRT/SER), 2018 WL 882808, at *3 (D. Minn. Feb. 13, 2018).

As the Eighth Circuit Court of Appeals has held:

> There is a common-law right of access to judicial records . . . . This right of access bolsters public confidence in the judicial system by allowing citizens to evaluate the reasonableness and fairness of judicial proceedings, and "to keep a watchful eye on the workings of public agencies." It also provides a measure of accountability to the public at large, which pays for the courts.

IDT Corp. v. eBay, 709 F.3d 1220, 1222 (8th Cir. 2013). "This right of access is not absolute, but requires a weighing of competing interests." Feinwachs, 2018 WL 882808, at *3 (quoting Webster Groves Sch. Dist. v. Pulitzer Pub. Co., 898 F.2d 1371, 1376 (8th Cir. 1990)). Even more specifically:

> Where the common-law right of access is implicated, the court must consider the degree to which sealing a judicial record would interfere with the interests served by the common-law right of access and balance that interference against the salutary interests served by maintaining confidentiality of the information sought to be sealed. . . . "[T]he decision as to access is one best left to the sound discretion of the trial court . . . in light of the relevant facts and circumstances of the particular case."

IDT Corp., 709 F.3d at 1223 (citations omitted); see, Feinwachs, 2018 WL 882808, at *3 (partially quoting the same). "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and resultant value of such information to those monitoring the federal courts." IDT Corp., 709 F.3d at 1224 (citations omitted).

Determining whether a document should remain sealed under Local Rule 5.6 "requires a weighing of competing interests." Feinwachs, 2018 WL 882808, at *3 (quoting Webster Groves

Sch. Dist. v. Pulitzer Pub. Co., 898 F.2d 1371, 1376 (8th Cir. 1990)). The more relevant information is to resolution by the Court of the dispute then at issue, the greater weight to be assigned to the public's right to access that information. See, IDT Corp., 709 F.3d at 1224.

As noted above, Defendant, through its three present Motions for Consideration of Continued Sealing, seeks an Order of this Court maintaining Docket Nos. 334, 337-1, 337-2, 337-3, 337-4, 337-5, 337-11, 337-12, 337-13, 339-4, 339-6, 339-11, 339-12, 339-15, 339-16, 339-18, 339-19, 339-20, 339-21, 339-22, 339-23, 339-25, 365, 368, 368-1, 368-3, 368-5, 368-9, 368-10, 368-11, 368-12, 368-13, 368-14, 368-17, 368-18, 368-19, 368-20, 368-22, 368-23, 368-24, 368-25, 368-26, 368-27, 373, 376, 376-2, 376-4, 376-5, 376-10, 376-11, 397-2, 408, 408-1, 408-4, 409, 411, 360-1, 360-2, 360-3, 360-5, and 381 under continued seal. As previously observed, all of these documents collectively fall into four categories: (1) Defendant's product design and testing procedures and the analysis resulting from those procedures; (2) Defendant's competitive benchmark testing and analysis; (3) Defendant's financial and market analysis data; and (4) proprietary data Defendant obtained from J.D. Power.[2] Plaintiffs do not oppose Defendant's request that these documents remain under continued seal.

As to the first category, the documents containing Defendant's product design and testing procedures, as well as, the analysis resulting from those procedures are Docket Nos. 334, 337-1, 337-2, 337-3, 337-4, 337-5, 337-11, 337-12, 339-4, 339-6, 339-11, 339-12, 339-15, 339-16, 339-18, 339-19, 339-20, 339-21, 339-22, 339-23, 339-25, 368, 368-1, 368-3, 368-5, 368-9, 368-10, 368-11, 368-12, 368-13, 368-14, 368-17, 368-18, 368-19, 368-20, 373, 376-10, 360-1, 360-2, 360-3, and 381.

---

[2] To the extent documents presently at issue can be categorized into more than one of these categories, the Court discusses those overlapping documents only once.

The Court's review of Docket Nos. 337-1, 337-2, 337-4, 337-5, 337-12, 339-15, 339-16, 339-18, 339-19, 339-20, 339-22, 339-23, 368-9, 368-10, 368-11, 368-12, 368-14, 368-18, 368-19, 368-20, 376-10, 360-2, and 360-3 finds that each of these documents contains a detailed description of Defendant's internal procedure for testing its various products with the resulting data and analysis, internal opinions on possible future solution to issues identified in the testing procedures, possible design alterations which could be made to future models, or some combination thereof.

Defendant's Senior Vehicle Architect, Jason Fields, submitted a sworn declaration in support of the present Motions asserting that Defendant expends significant resources developing these procedures; "goes to great lengths to protect the confidentiality" of the information contained in these documents; and does not share the information with the public. (Fields Decl. [Docket No. 433-1]). Mr. Fields further asserts that Defendant would suffer significant competitive disadvantage if the proprietary information in these documents was to be released to the public because Defendant's competitors would be given access to confidential, valuable information about Defendant's product development, validation, testing, and design. (Id.).

The Court's review of the record now before the Court demonstrates that Defendant as established at least some articulable privacy interest in Docket Nos. 337-1, 337-2, 337-4, 337-5, 337-12, 339-15, 339-16, 339-18, 339-19, 339-20, 339-22, 339-23, 368-9, 368-10, 368-11, 368-12, 368-14, 368-18, 368-19, 368-20, 376-10, 360-2, and 360-3. Defendant's demonstration of at least some articulable privacy interest in these initial documents also creates at least a minimal, articulable privacy interest in Docket Nos. 337-3, 339-4, 339-11, 368-1, 368-3, 368-5, and 360-1 because these are deposition in which the deponents discusses the information in the initial documents; a minimally articulable privacy interest in Docket Nos. 339-6, 339-12, and 339-25

because these are the expert reports in which the parties' experts discuss, and provide quotations of, the information in the initial documents; at least some articulable privacy interest in Docket Nos. 337-11, 339-21, 368-13, and 368-17 because these are internal discussions by Defendant's employees regarding the information in the initial documents; at least some articulable privacy interest in Docket No. 368 because it is a declaration which provides a detail explanation of large portions of the information contained in the initial documents, as well as, additional information of a proprietary nature; and at least some minimal articulable privacy interest in Docket Nos. 334, 373, and 381 because these are the parties' memorandum which provide discussion of the data in the initial documents.

The second category of documents, containing Defendant's competitive benchmark testing and analysis, are found at Docket Nos. 334, 337-3, 368-1, 337-13, 339-19, 365, 368-17, 368-22, 368-23, 373, and 376-10. The Court's review of Docket Nos. 337-13, 339-19, 368-17, 368-22, and 376-10 demonstrates that each of these documents contains a detailed description of the procedure Defendant uses in its benchmark testing, the data resulting from that testing, an analysis of that data, possible issues identified in the testing, possible solutions to any issues identified, possible manners in which to implement the identified solutions into future models, or some combination thereof.

Defendant's Senior Vehicle Architect, Jason Fields, submitted a sworn declaration in support of the present Motions asserting that "[t]he purpose of the testing was to analyze potential product improvement and performance for future model year ORVs." (Fields Decl. [Docket No. 433-1]). Mr. Fields also asserts Defendant expends significant resources developing these procedures, and Defendant has not shared the testing or its results with its competitors or the general public. (Fields Decl. [Docket No. 433-1]). Mr. Fields further asserts that Defendant

would suffer significant competitive disadvantage if the "competitively sensitive" information in these documents was to be released to the public because then Defendant's competitors would be given access to confidential, valuable information about Defendant's product development, validation, testing, and design. (Id.).

The Court's review of the record now before the Court demonstrates that Defendant has demonstrated at least some articulable privacy interest in Docket Nos. 337-13, 339-19, 368-17, 368-22, and 376-10. Defendant's demonstration of at least some privacy interest in these initial set of documents creates at least a minimal privacy interest in Docket Nos. 337-3, 368-1, and 368-23 because these three documents are transcripts of depositions in which the deponent discusses the benchmark testing information contained in the initial set of documents from this second category. Further, Defendant's demonstration of at least some privacy interest in these initial set of documents from the second category creates at least a minimal articulable privacy interest in Docket Nos. 334, 365, and 373 because these are the parties' memorandums in which the parties discuss the benchmark testing data.

The third category of documents, containing Defendant's financial and market analysis data, is found at Docket Nos. 368-24, 368-25, 368-26, 368-27, 376, 376-2, 376-4, 376-5, 376-11, 397-2, 408, 408-1, 408-4, 409, 411, and 360-5. The Court's review of Docket No. 368-27 finds that Docket No. 368-27 is a detailed internal market and financial report containing a detailed description of how that market and financial data was collected, as well as, an analysis of said data, including how that data will affect Defendant's yet to be released future models. Docket Nos. 368-24, 368-25, 376, 376-4, 376-5, 376-11, 408, 408-1, 408-4, 409, and 411 are the expert reports of the parties' experts which containing detailed discussions of Defendant's financial information, Defendant's internal market analysis, or a combination of the two. Docket Nos.

10

376-2, 397-2, and 360-5 are transcripts from deposition in which the deponents discuss Defendant's financial information, internal market analysis, or a combination of the two.

Defendant's Vice President of Finance, William Au-Yeung, submitted a sworn declaration in support of the present Motions asserting that Defendant does not publicly share the financial and market information contained in this third category of documents. (Au-Yeung Decl. [Docket No. 433-2]). Mr. Au-Yeung further asserts that if said information were to be released to the public, then Defendant's competitors would gain an unfair advantage by being able to inform their marketing efforts to counteract Defendant's efforts. (Id.).

The Court's review of the record now before it demonstrates that Defendant has established at least some articulable privacy interest in Docket Nos. 368-24, 368-25, 368-26, 368-27, 376, 376-2, 376-4, 376-5, 376-11, 397-2, 408, 408-1, 408-4, 409, 411, and 360-5.[3]

In summary, the Court finds that Defendant has demonstrated at least some articulable privacy interest in all of the documents Defendant now seeks to maintain under continued seal, i.e., Docket Nos. 334, 337-1, 337-2, 337-3, 337-4, 337-5, 337-11, 337-12, 337-13, 339-4, 339-6, 339-11, 339-12, 339-15, 339-16, 339-18, 339-19, 339-20, 339-21, 339-22, 339-23, 339-25, 365, 368, 368-1, 368-3, 368-5, 368-9, 368-10, 368-11, 368-12, 368-13, 368-14, 368-17, 368-18, 368-19, 368-20, 368-22, 368-23, 368-24, 368-25, 368-26, 368-27, 373, 376, 376-2, 376-4, 376-5, 376-10, 376-11, 397-2, 408, 408-1, 408-4, 409, 411, 360-1, 360-2, 360-3, 360-5, and 381.

On the other hand, the Court cannot currently determine the weight of the public interest in Docket Nos. 334, 337-1, 337-2, 337-3, 337-4, 337-5, 337-11, 337-12, 337-13, 339-4, 339-6,

---

[3] Docket Nos. 368-24, 376-4, 397-2, 408-4, and 411 also contain proprietary data Defendant obtained from J.D. Power pursuant to a license agreement, and these five documents consist of the entirety of the fourth category of documents. Defendant asserts that the license agreement through which it obtained the data from J.D. Power specifically provides that the data is "confidential and proprietary information protected by copyright and trade secret laws," and it was created at "great time and expense." (Def.'s Mem., [Docket No. 438], at 9–10). Defendant further asserts that J.D. Power has informed Defendant that it "requests Polaris to pursue this Motion for Further Consideration of Sealing of their proprietary data." (Id. at 10). On this basis, Defendant has demonstrated an articulable privacy interest in Docket Nos. 368-24, 376-4, 397-2, 408-4, and 411.

339-11, 339-12, 339-15, 339-16, 339-18, 339-19, 339-20, 339-21, 339-22, 339-23, 339-25, 365, 368, 368-1, 368-3, 368-5, 368-9, 368-10, 368-11, 368-12, 368-13, 368-14, 368-17, 368-18, 368-19, 368-20, 368-22, 368-23, 368-24, 368-25, 368-26, 368-27, 373, 376, 376-2, 376-4, 376-5, 376-10, 376-11, 397-2, 408, 408-1, 408-4, 409, 411, 360-1, 360-2, 360-3, 360-5, and 381. As previously noted, these documents were filed under temporary seal in the motion practice surrounding Plaintiffs' Motion to Certify Class, [Docket No. 332]; Defendant's Motion for Summary Judgment, [Docket No. 356]; and Defendant's Motion to Exclude Expert Testimony. [Docket No. 371].

The Court cannot, at this time, determine the public's interest in these documents because a decision has not yet issued on the underlying Motions to which these documents relate. Because the Court has not yet reached a decision on the issues contained in Plaintiffs' Motion to Certify Class, [Docket No. 332]; Defendant's Motion for Summary Judgment, [Docket No. 356]; or Defendant's Motion to Exclude Expert Testimony, [Docket No. 371], the undersigned cannot determine the resultant value the documents presently at issue will take in the Court's exercise of its judicial authority in resolving the issues within Plaintiffs' Motion to Certify Class, [Docket No. 332]; Defendant's Motion for Summary Judgment, [Docket No. 356]; and Defendant's Motion to Exclude Expert Testimony. [Docket No. 371].

As previously observed, determining whether a document should remain sealed under Local Rule 5.6 "requires a weighing of competing interests." Feinwachs, 2018 WL 882808, at *3 (quoting Webster Groves Sch. Dist., 898 F.2d at 1376). The more relevant information is to resolution by the Court of the dispute then at issue the greater weight to be assigned to the public's right to access that information. See, IDT Corp., 709 F.3d at 1224.

Because the Court cannot presently determine how relevant the information contained in the documents at issue will be to resolution by the Court of the disputes contained within Plaintiffs' Motion to Certify Class, [Docket No. 332]; Defendant's Motion for Summary Judgment, [Docket No. 356]; and Defendant's Motion to Exclude Expert Testimony, [Docket No. 371], the Court cannot determine the weight to be assigned the public's right to access the information contained in those documents. On the other hand, however, the privacy interest of Defendant as identified and embodied in the documents at issue is of at least some appreciable nature. Thus, in weighing the competing interest, the Court finds that the privacy interest in these documents outweighs the public's right to access the information contained in that same docket entry.

Because Defendant has demonstrated at least some articulable privacy interest in each of the documents at issue, the Court will permit the documents at issue to remain under continued seal absent further Court Order. The Court notes, however, that the documents are being permitted to remain under continued seal on a merely interim procedural basis because the Court cannot, at this time, determine the weight to be assigned to the public's right to access the information contained in the documents at issue.

Therefore, Defendant's Motion for Further Consideration of Sealing, [Docket No. 430], is **GRANTED**; Defendant's Motion for Further Consideration of Sealing, [Docket No. 436], is **GRANTED**; and Defendant's Motion for Further Consideration of Sealing, [Docket No. 442], is **GRANTED**. Docket Nos. 334, 337-1, 337-2, 337-3, 337-4, 337-5, 337-11, 337-12, 337-13, 339-4, 339-6, 339-11, 339-12, 339-15, 339-16, 339-18, 339-19, 339-20, 339-21, 339-22, 339-23, 339-25, 365, 368, 368-1, 368-3, 368-5, 368-9, 368-10, 368-11, 368-12, 368-13, 368-14, 368-17, 368-18, 368-19, 368-20, 368-22, 368-23, 368-24, 368-25, 368-26, 368-27, 373, 376, 376-2, 376-4,

376-5, 376-10, 376-11, 397-2, 408, 408-1, 408-4, 409, 411, 360-1, 360-2, 360-3, 360-5, and 381 may remain under continued seal absent further Order of this Court.

The Court cautions the parties on one additional issue. As the Court has explained, the continued sealing of the documents presently at issues is based on the inability to presently determine the resultant value these documents will have in the Court's exercise of its judicial authority in deciding the issues before it. Therefore, in an effort to safeguard the public's right to access the Court's docket, the undersigned will—upon the issuance Judge Brasel's Order resolving Plaintiffs' Motion to Certify Class, Defendant's Motion for Summary Judgment, and Defendant's Motion to Exclude Expert Testimony—if necessary, conduct a sua sponte review of the documents presently at issue to determine whether or not the balancing of the relevant factors then weighs in favor of unsealing any of the documents at issue.

Moreover, because of the nature of the relevant balancing test the parties should not view the present Order as a basis upon which to file the documents presently at issue under seal if these documents are again filed in future motion practice as the balancing of any potential privacy interest and the public's right to access the docket will then necessarily be given a different context for the submission to and consideration of the material by the Court. Similarly, the parties should not view the present Order as a basis upon which to argue the documents presently at issue should remain under seal if any party or non-party later moves the Court to unseal any of said documents.

### IV.     Conclusion

Therefore, for the foregoing reasons, and based on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Defendant's Motion for Further Consideration of Sealing, [Docket No. 430], is **GRANTED**;

2. Defendant's Motion for Further Consideration of Sealing, [Docket No. 436], is **GRANTED**;

3. Defendant's Motion for Further Consideration of Sealing, [Docket No. 442], is **GRANTED**; and

4. Docket Nos. 334, 337-1, 337-2, 337-3, 337-4, 337-5, 337-11, 337-12, 337-13, 339-4, 339-6, 339-11, 339-12, 339-15, 339-16, 339-18, 339-19, 339-20, 339-21, 339-22, 339-23, 339-25, 365, 368, 368-1, 368-3, 368-5, 368-9, 368-10, 368-11, 368-12, 368-13, 368-14, 368-17, 368-18, 368-19, 368-20, 368-22, 368-23, 368-24, 368-25, 368-26, 368-27, 373, 376, 376-2, 376-4, 376-5, 376-10, 376-11, 397-2, 408, 408-1, 408-4, 409, 411, 360-1, 360-2, 360-3, 360-5, and 381 may remain under seal absent further Court Order.

Dated: January 31, 2020
s/ Leo I. Brisbois
Hon. Leo I. Brisbois
U.S. MAGISTRATE JUDGE